```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -x
UNITED STATES OF AMERICA,             :

                Plaintiff,            :

        - v. -                        :   11 Civ. 2564 (LBS)

POKERSTARS; FULL TILT POKER;          :
ABSOLUTE POKER; ULTIMATE BET;
OLDFORD GROUP LTD.; RATIONAL          :
ENTERTAINMENT ENTERPRISES LTD.;
PYR SOFTWARE LTD.; STELEKRAM LTD.;    :
SPHENE INTERNATIONAL LTD.;
TILTWARE LLC; KOLYMA CORPORATION      :
A.V.V.; POCKET KINGS LTD.; POCKET
KINGS CONSULTING LTD.; FILCO LTD.;    :
VANTAGE LTD.; RANSTON LTD.; MAIL
MEDIA LTD.; FULL TILT POKER LTD.;     :
SGS SYSTEMS INC.; TRUST SERVICES
LTD; FIDUCIA EXCHANGE LTD.; BLUE      :
WATER SERVICES LTD.; ABSOLUTE
ENTERTAINMENT, S.A.; and BLANCA       :
GAMES, INC. OF ANTIGUA;
                                      :
                Defendants;
                                      :
ALL RIGHT, TITLE AND INTEREST IN
THE ASSETS OF POKERSTARS; FULL        :
TILT POKER; ABSOLUTE POKER;
ULTIMATE BET; OLDFORD GROUP LTD.;     :
RATIONAL ENTERTAINMENT ENTERPRISES
LTD.; PYR SOFTWARE LTD.; STELEKRAM    :
LTD.; SPHENE INTERNATIONAL LTD.;
TILTWARE LLC; KOLYMA CORPORATION      :
A.V.V.; POCKET KINGS LTD.; POCKET
KINGS CONSULTING LTD.; FILCO LTD.;    :
VANTAGE LTD.; RANSTON LTD.; MAIL
MEDIA LTD.; FULL TILT POKER LTD.;     :
SGS SYSTEMS INC.; TRUST SERVICES
LTD; FIDUCIA EXCHANGE LTD.; BLUE      :
WATER SERVICES LTD.; ABSOLUTE
ENTERTAINMENT, S.A.; and BLANCA       :
GAMES, INC. OF ANTIGUA; INCLUDING
BUT NOT LIMITED TO THE PROPERTIES     :
LISTED IN SCHEDULE A, SUCH AS BUT
NOT LIMITED TO THE DOMAIN NAMES       :
POKERSTARS.COM; FULLTILTPOKER.COM;
ABSOLUTEPOKER.COM;                    :
```

```
ULTIMATEBET.COM; and UB.COM; and        :
ALL RIGHT, TITLE, AND INTEREST IN
THE PROPERTIES LISTED IN SCHEDULE       :
B;
                                        :
           Defendants-in-rem.
- - - - - - - - - - - - - - - - - - - -x
```

NOTICE OF AGREEMENT BETWEEN THE UNITED STATES ATTORNEY'S
OFFICE AND ABSOLUTE POKER/ULTIMATE BET REGARDING
<u>ABSOLUTEPOKER/ULTIMATE BET'S RETURN OF FUNDS TO U.S. PLAYERS</u>

| | |
|---|---|
| PREET BHARARA<br>United States Attorney for the<br>Southern District of New York<br>Attorney for the United States<br>of America | BLANK ROME LLP |
| One St. Andrew's Plaza<br>New York, New York 10007<br>(212) 637-1060/2193/2479<br>Fax: (212) 637-0421 | 405 Lexington Avenue<br>New York, New York 10174-0208<br>(212) 885-5000<br>Fax: (212) 885-5001 |
| SHARON COHEN LEVIN<br>MICHAEL LOCKARD<br>JASON COWLEY<br>Assistant United States<br>Attorneys | JERRY D. BERNSTEIN, ESQ.<br>MARC ROTHENBERG, ESQ.<br>Attorneys for Absolute<br>Poker/Ultimate Bet |



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

May 4, 2011

**Via Federal Express**
Jerry D. Bernstein
Marc Rothenberg
Blank Rome LLP
405 Lexington Avenue
New York, NY 10174-0208

      Re:    Absolute Poker - Return of Funds to U.S. Players;
               *United States v. Pokerstars, et. al.*, 11 Civ. 2564 (LBS)

Gentlemen:

      Pursuant to our discussions and written exchanges, the United States Attorney's Office for the Southern District of New York ("this Office") and the defendant Absolute Poker/Ultimate Bet ("Absolute Poker"), hereby enter into this agreement (the "Agreement") in which this Office agrees to facilitate Absolute Poker's return of funds to poker players in the United States.[1]

### Absolute Poker's Cessation of Real Money Poker Play in the United States

      1.    Absolute Poker hereby agrees that for the duration of the Agreement, it will not allow for, facilitate, or provide the ability for players located in the United States to engage in playing online poker for "real money" or any other thing of value. This prohibition applies to all domain names, sub-domain names, websites, or other Internet-based means of communication under the control of Absolute Poker. Among other things, Absolute Poker will utilize geographic blocking technology relating to I.P. addresses and analysis of source information for financial transactions, subject to verification as discussed below, to comply with the provisions of the Agreement. Absolute Poker agrees to monitor regularly the effectiveness of its procedures and controls designed to comply with the provisions of the Agreement and Absolute Poker will revise and update its procedures and controls as necessary to achieve such compliance.

---

[1] The term "Absolute Poker" includes all affiliated and subsidiary companies.

2. The Agreement does not prohibit, and, in fact, expressly allows for, Absolute Poker to provide for, and facilitate, players outside of the United States to engage in playing online poker for real money through any domain name, sub-domain names, websites, or Internet-based means of communication under the control of Absolute Poker.[2]

### Records Preservation

3. Absolute Poker hereby agrees to retain in relation to its business in the United States and its facilitation of "real money" poker playing (or for anything else of value) in the United States: (1) all records relating to all of its financial transactions; (2) all records relating to Absolute Poker website databases; (3) all internal Absolute Poker email correspondence; and (4) all Absolute Poker business records generally.

### Appointment of a Monitor

4. Beginning on a date solely within the discretion of this Office, Absolute Poker shall retain, at its own expense, the services of a firm (the "Monitor") approved by this Office to monitor Absolute Poker's compliance with the terms of the Agreement. The Monitor's duties and responsibilities shall be limited to monitoring compliance with this Agreement. Absolute Poker shall have the ability to recommend possible monitors. Absolute Poker agrees to continue to retain the services of the Monitor to monitor Absolute Poker's compliance with Absolute Poker's obligations under this Agreement as follows: (i) forty-five (45) days after the appointment of the Monitor, the Monitor will issue an initial Compliance Report assessing whether Absolute Poker has complied with the terms of the Agreement; (ii) subsequent compliance reports shall be issued by the Monitor every forty-five (45) days thereafter for the duration of this Agreement unless this Office, in its sole discretion, determines subsequent reports should be issued in a different manner; (iii) where a Compliance Report identifies a defect in Absolute Poker's internal controls regarding its obligations under this Agreement, Absolute Poker shall have ten (10) calendar days to cure the defect from the date that the Compliance Report is provided to this Office and Absolute Poker, or such other time as is reasonably necessary to cure the defect, and Absolute Poker shall retain the Monitor to assess Absolute Poker's success at remediating the identified defect and to provide a supplementary report to this Office within fifteen (15) calendar days describing its assessment of the efficacy of such remediation; (iv) Absolute Poker shall, on a timely basis, provide the Monitor with, or access to, any information, documents, or other records, including electronic records, as are reasonably necessary for the Monitor to prepare and provide the Compliance Reports to this Office; and (v) Absolute Poker shall use its best efforts to make available to the Monitor, on a timely basis, such employees as are reasonably necessary to assist and provide information to the Monitor to permit the Monitor to perform the work necessary to provide the Compliance

---

[2] Absolute Poker expressly understands that under this Agreement, the domains names absolutepoker.com, ub.com, and ultimatebet.com are still seized and Absolute Poker hereby waives any right to challenge such seizure during the pendency of this Agreement.

Reports, and any supplementary report. If the Monitor requests access to any information, document, or other record that Absolute Poker may reasonably believe to be protected by the attorney-client privilege or work-product doctrine, Absolute Poker shall in good faith consider and respond to that request, taking into account whether providing access to the requested material is necessary for the Monitor in performing its duties under the Agreement. This Agreement expressly does not require that Absolute Poker waive its attorney-client or work-product privileges. It shall be a condition of the Monitor's retention that the Monitor is independent of (*i.e.* stands at arm's length to) Absolute Poker and that no attorney-client or work product relationship shall be formed between them.

### Facilitation of the Return of U.S. Players' Funds

5. In consideration of the obligations and understandings of Absolute Poker as set forth herein, this Office shall provide all necessary assurances to Absolute Poker, and any third-party entities engaged by Absolute Poker in its efforts to return funds to U.S. players, that these parties may work with Absolute Poker to facilitate its return of funds to players located in the United States. While withdrawal of funds by U.S. players is expressly permitted, the deposit of funds by U.S. players is expressly prohibited. Absolute Poker agrees that any financial transactions with players located in the United States shall be strictly limited to the return of those players' funds held in account with Absolute Poker.

### Duration of Agreement

6. This Agreement shall remain in place until: (i) the conclusion of the litigation in *United States v. PokerStars, et. al.*, 11 Civ. 2564 (LBS) in the United States District Court for the Southern District of New York; (ii) a superseding Agreement is reached between this Office and Absolute Poker; or (iii) this Office and Absolute Poker mutually agree to terminate the Agreement.

### Determination of Breach

7. It is further agreed that this Office, in its sole discretion, may determine if Absolute Poker has violated any provision of this Agreement, including Absolute Poker's failure to meet its obligations under this Agreement. Absolute Poker expressly understands and acknowledges that the Office is the sole decision-maker regarding whether a breach has occurred and that no appeal to any court is available regarding such a determination. Should this Office determine that Absolute Poker has violated this Agreement, this Office shall provide notice to Absolute Poker of that determination and provide Absolute Poker with an opportunity to make a presentation to this Office to demonstrate that no violation occurred. In the event that this Office adheres to its determination that a breach has occurred, this Agreement shall terminate.

### No Admission of Liability or Jurisdiction

8.  This Agreement does not constitute an admission of liability as to any matter nor a consent to jurisdiction.

### Public Filing

9.  Absolute Poker and this Office agree that this Agreement shall be filed publicly in the proceedings regarding *United States v. PokerStars, et. al.*, 11 Civ. 2564 (LBS) in the United States District Court for the Southern District of New York.

4

**Integration Clause**

10. This Agreement sets forth all the terms of the agreement between Absolute Poker and this Office. No modifications or additions to this Agreement shall be valid unless they are in writing and signed by this Office, Absolute Poker's attorneys, and a duly authorized representative of Absolute Poker.

PREET BHARARA
United States Attorney
Southern District of New York

By: _____
Sharon Cohen Levin
Michael Lockard
Jason Cowley
Assistant United States Attorneys

Accepted and agreed to:

_____
Jerry D. Bernstein
Marc Rothenberg
Blank Rome LLP
*Counsel to Absolute Poker*

5