```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - -x
UNITED STATES OF AMERICA,          :

              Plaintiff,           :

         - v. -                    :     11 Civ. 2564 (LBS)

POKERSTARS; FULL TILT POKER;       :
ABSOLUTE POKER; ULTIMATE BET;
OLDFORD GROUP LTD.; RATIONAL       :
ENTERTAINMENT ENTERPRISES LTD.;
PYR SOFTWARE LTD.; STELEKRAM LTD.; :
SPHENE INTERNATIONAL LTD.;
TILTWARE LLC; KOLYMA CORPORATION   :
A.V.V.; POCKET KINGS LTD.; POCKET
KINGS CONSULTING LTD.; FILCO LTD.; :
VANTAGE LTD.; RANSTON LTD.; MAIL
MEDIA LTD.; FULL TILT POKER LTD.;  :
SGS SYSTEMS INC.; TRUST SERVICES
LTD; FIDUCIA EXCHANGE LTD.; BLUE   :
WATER SERVICES LTD.; ABSOLUTE
ENTERTAINMENT, S.A.; and BLANCA    :
GAMES, INC. OF ANTIGUA;
                                   :
              Defendants;
                                   :
ALL RIGHT, TITLE AND INTEREST IN
THE ASSETS OF POKERSTARS; FULL     :
TILT POKER; ABSOLUTE POKER;
ULTIMATE BET; OLDFORD GROUP LTD.;  :
RATIONAL ENTERTAINMENT ENTERPRISES
LTD.; PYR SOFTWARE LTD.; STELEKRAM :
LTD.; SPHENE INTERNATIONAL LTD.;
TILTWARE LLC; KOLYMA CORPORATION   :
A.V.V.; POCKET KINGS LTD.; POCKET
KINGS CONSULTING LTD.; FILCO LTD.; :
VANTAGE LTD.; RANSTON LTD.; MAIL
MEDIA LTD.; FULL TILT POKER LTD.;  :
SGS SYSTEMS INC.; TRUST SERVICES
LTD; FIDUCIA EXCHANGE LTD.; BLUE   :
WATER SERVICES LTD.; ABSOLUTE
ENTERTAINMENT, S.A.; and BLANCA    :
GAMES, INC. OF ANTIGUA; INCLUDING
BUT NOT LIMITED TO THE PROPERTIES  :
LISTED IN SCHEDULE A, SUCH AS BUT
NOT LIMITED TO THE DOMAIN NAMES    :
POKERSTARS.COM; FULLTILTPOKER.COM;
ABSOLUTEPOKER.COM;                 :
```

ULTIMATEBET.COM; and UB.COM; and  :
ALL RIGHT, TITLE, AND INTEREST IN
THE PROPERTIES LISTED IN SCHEDULE  :
B;

                                    :
             Defendants-in-rem.
                                    :
- - - - - - - - - - - - - - - - - -x


          NOTICE OF AGREEMENT BETWEEN THE UNITED STATES ATTORNEY'S
                    OFFICE AND POKERSTARS REGARDING
                    <u>USE OF DOMAIN NAME POKERSTARS.COM</u>


PREET BHARARA                       SKADDEN, ARPS, MEAGHER & FLOM
United States Attorney for the      LLP
Southern District of New York
Attorney for the United States
of America

One St. Andrew's Plaza              Four Times Square
New York, New York 10007            New York, NY 10036
(212) 637-1060/2193/2479            (212) 735-3000
Fax: (212) 637-0421                 Fax: (866) 735-2000

SHARON COHEN LEVIN                  DAVID M. ZORROW
MICHAEL LOCKARD                     JOHN K. CARROL
JASON COWLEY                        ANAND S. RAMAN
Assistant United States             Attorneys for PokerStars
Attorneys



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

April 19, 2011

**Via Federal Express**
David M. Zornow
John K. Carroll
Anand S. Raman
Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square
New York, NY 10036

        Re:    PokerStars - Use of Pokerstars.com Domain Name;
                 *United States v. Pokerstars, et. al.*, 11 Civ. 2564 (LBS)

Gentlemen:

        Pursuant to our discussions and written exchanges, the United States Attorney's Office for the Southern District of New York ("this Office") and the defendant PokerStars, hereby enter into this agreement (the "Agreement") in which this Office agrees to grant PokerStars access to, and use of, the defendant-*in-rem* domain name pokerstars.com (the "Domain") for certain limited purposes as established herein.[1]

### PokerStars' Cessation of Real Money Poker Play in the United States

        1.    PokerStars hereby agrees that for the duration of the Agreement, it will not allow for, facilitate, or provide the ability for players located in the United States to engage in playing online poker for "real money" or any other thing of value. This prohibition applies to the Domain as well as any other domain names, sub-domain names, websites, or other Internet-based means of communication under the control of PokerStars. Among other things, PokerStars will utilize geographic blocking technology relating to I.P. addresses and analysis of source information for financial transactions, subject to verification as discussed below, to comply with the provisions of the Agreement. PokerStars agrees to monitor regularly the effectiveness of its procedures and controls designed to comply with the provisions of the Agreement and PokerStars will revise and update its procedures and controls as necessary to achieve such compliance.

---

[1] The term "PokerStars" includes all affiliated and subsidiary companies.

2. The Agreement does not prohibit, and, in fact, expressly allows for, PokerStars to provide for, and facilitate, players outside of the United States to engage in playing online poker for real money through the Domain, or any other domain names, sub-domain names, websites, or Internet-based means of communication under the control of PokerStars.

3. This Agreement does not prohibit, and, in fact, expressly allows for, PokerStars to utilize the Domain (and any other forms of communication) to facilitate the withdrawal of U.S. players' funds held in account with PokerStars. While withdrawal of funds is expressly permitted, the deposit of funds by U.S. players is expressly prohibited. PokerStars agrees that any financial transactions with players located in the United States shall be strictly limited to the return of those players' funds held in account with PokerStars.

### Records Preservation

4. PokerStars hereby agrees to retain in relation to its business in the United States and its facilitation of "real money" poker playing (or for anything else of value) in the United States: (1) all records relating to all of its financial transactions; (2) all records relating to PokerStars website databases; (3) all internal PokerStars email correspondence; and (4) all PokerStars business records generally.

### Appointment of a Monitor

5. Beginning on a date solely within the discretion of this Office, PokerStars shall retain, at its own expense, the services of a firm (the "Monitor") approved by this Office to monitor PokerStars' compliance with the terms of the Agreement. The Monitor's duties and responsibilities shall be limited to monitoring compliance with this Agreement. PokerStars shall have the ability to recommend possible monitors. PokerStars agrees to continue to retain the services of the Monitor to monitor PokerStars' compliance with PokerStars' obligations under this Agreement as follows: (i) forty-five (45) days after the appointment of the Monitor, the Monitor will issue an initial Compliance Report assessing whether PokerStars has complied with the terms of the Agreement; (ii) subsequent compliance reports shall be issued by the Monitor every forty-five (45) days thereafter for the duration of this Agreement unless this Office, in its sole discretion, determines subsequent reports should be issued in a different manner; (iii) where a Compliance Report identifies a defect in PokerStars' internal controls regarding its obligations under this Agreement, PokerStars shall have ten (10) calendar days to cure the defect from the date that the Compliance Report is provided to this Office and PokerStars, or such other time as is reasonably necessary to cure the defect, and PokerStars shall retain the Monitor to assess PokerStars' success at remediating the identified defect and to provide a supplementary report to this Office within fifteen (15) calendar days describing its assessment of the efficacy of such remediation; (iv) PokerStars shall, on a timely basis, provide the Monitor with, or access to, any information, documents, or other records, including electronic records, as are reasonably necessary for the Monitor to prepare and provide the Compliance Reports to this Office; and (v) PokerStars shall use its best efforts to make available to the Monitor, on a timely basis, such employees as are reasonably necessary to assist and provide information to the Monitor to permit

the Monitor to perform the work necessary to provide the Compliance Reports, and any supplementary report. If the Monitor requests access to any information, document, or other record that PokerStars may reasonably believe to be protected by the attorney-client privilege or work-product doctrine, PokerStars shall in good faith consider and respond to that request, taking into account whether providing access to the requested material is necessary for the Monitor in performing its duties under the Agreement. This Agreement expressly does not require that PokerStars waive its attorney-client or work-product privileges. It shall be a condition of the Monitor's retention that the Monitor is independent of (*i.e.* stands at arm's length to) PokerStars and that no attorney-client or work product relationship shall be formed between them.

### Agreement to Presence of Seizure Banner and Posting of Notice to U.S. Players

6. PokerStars agrees that upon regaining access to, and use of, the Domain, it shall place on the homepage of the "U.S. facing" websites affiliated with the Domain a banner message, provided by the Office and with its content determined solely by this Office, relating to the seizure of the Domain. PokerStars also agrees to place on the U.S. facing websites affiliated with the Domain its own notice to players in the United States that PokerStars will not provide for, or facilitate, individuals in the United States playing poker for "real money" or any other thing of value through PokerStars. PokerStars may place on this page communications not inconsistent with this paragraph, including instructions for arranging for the return of U.S. players' funds and otherwise contacting PokerStars for customer support purposes. While the banner and notice must appear to any visitors to the site located in the United States, these items do not need to appear to visitors accessing the site from foreign jurisdictions.

### Waiver of Challenge to Seizure of Domain

7. PokerStars agrees that it shall not seek to challenge or overturn the seizure of the Domain during the duration of this Agreement, including through the filing of hardship petitions or any other mechanism that would undermine the seizure of the Domain.

### Use of Domain

8. In consideration of the obligations and understandings of PokerStars as set forth herein, this Office shall direct the registry for the Domain that it shall set the name servers (and corresponding I.P. addresses) for the Domain to those provided to this Office by PokerStars and to take any other steps necessary for PokerStars to utilize the Domain in accordance with the terms and conditions of this Agreement. This Office also agrees to take any other steps necessary for PokerStars to utilize the Domain in accordance with the terms and conditions of this Agreement. PokerStars expressly understands that under this Agreement, the Domain is still considered seized and PokerStars' access to, and use of, the Domain is only by virtue of the Agreement with this Office.

### Duration of Agreement

9.  This Agreement shall remain in place until: (i) the conclusion of the litigation in *United States v. Pokerstars, et. al.*, 11 Civ. 2564 (LBS) in the United States District Court for the Southern District of New York; (ii) a superseding Agreement is reached between this Office and PokerStars; or (iii) this Office and PokerStars mutually agree to terminate the Agreement.

### Determination of Breach

10.  It is further agreed that this Office, in its sole discretion, may determine if PokerStars has violated any provision of this Agreement, including PokerStars' failure to meet its obligations under this Agreement. PokerStars expressly understands and acknowledges that the Office is the sole decision-maker regarding whether a breach has occurred and that no appeal to any court is available regarding such a determination. PokerStars also understands that if the Office does determine a breach has occurred, this Office may terminate PokerStars' access to, and use of, the Domain. Should this Office determine that PokerStars has violated this Agreement, this Office shall provide notice to PokerStars of that determination and provide PokerStars with an opportunity to make a presentation to this Office to demonstrate that no violation occurred, or, to the extent applicable, that the violation should not result in the termination of PokerStars' use of the Domain. In the event that this Office adheres to its determination that a breach has occurred, this Agreement shall terminate.

### No Admission of Liability or Jurisdiction

11.  This Agreement does not constitute an admission of liability as to any matter nor a consent to jurisdiction.

### Public Filing

12.  PokerStars and this Office agree that this Agreement shall be filed publicly in the proceedings regarding *United States v. Pokerstars, et. al.*, 11 Civ. 2564 (LBS) in the United States District Court for the Southern District of New York.

## Integration Clause

13.  This Agreement sets forth all the terms of the agreement between PokerStars and this Office. No modifications or additions to this Agreement shall be valid unless they are in writing and signed by this Office, PokerStars' attorneys, and a duly authorized representative of PokerStars.

PREET BHARARA
United States Attorney
Southern District of New York

By: _____
Sharon Cohen Levin
Michael Lockard
Jason Cowley
Assistant United States Attorneys

Accepted and agreed to:

_____
David M. Zornow
John K. Carroll
Anand S. Raman
Skadden, Arps, Slate, Meagher & Flom LLP
*Counsel to PokerStars*

5