UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - x
UNITED STATES OF AMERICA,       :

        Plaintiff,       :
                               11 Civ. 2564 (LBS)
      - v. -          :

POKERSTARS, et al.        :

        Defendants;      :

ALL RIGHT, TITLE AND INTEREST IN THE  :
ASSETS OF POKERSTARS, et al.;
                             :
        Defendants-in-rem.
                             :
- - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OF LAW IN SUPPORT OF
## THE GOVERNMENT'S MOTION TO STRIKE
## <u>THE CLAIM AND DISMISS THE COUNTER CLAIM OF ADAM WEBB</u>

PREET BHARARA,
United States Attorney for the
Southern District of New York

Sharon Cohen Levin
Jason H. Cowley
Michael D. Lockard
Assistant United States Attorneys

- of counsel -

# Table of Contents

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . 1

BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A.    The Criminal Indictment of Isai Scheinberg and
           Others for various gambling, fraud, and money
           laundering offenses . . . . . . . . . . . . . . . . . . 2

    B.    The In Rem Forfeiture and Civil Money Laundering
           Complaint . . . . . . . . . . . . . . . . . . . . . . 5

    C.    Webb's Claim, Answer and Counter Claim . . . . . . . . 6

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

I.   WEBB LACKS STANDING TO FILE A CLAIM . . . . . . . . . . . 7

    A.    Relevant Law . . . . . . . . . . . . . . . . . . . . . 7

    B.    Discussion . . . . . . . . . . . . . . . . . . . . . . 9

II.  THE COUNTER CLAIM SHOULD BE DISMISSED . . . . . . . . . . 14

    A.    Relevant Law . . . . . . . . . . . . . . . . . . . . . 14

    B.    Discussion . . . . . . . . . . . . . . . . . . . . . . 16

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

## PRELIMINARY STATEMENT

The Government respectfully submits this memorandum of law in support of its motion, pursuant to Rule 12(b) of the Federal Rules of Civil Procedure and Rule G(8)(c) of the Supplemental Rules for Admiralty and Maritime Claims, to strike the claim and to dismiss the counter claim filed in this in rem forfeiture action by Adam Webb ("Webb" or "Claimant").  The defendants-in-rem in this matter include, among others, all right title and interest in the assets of several online gambling businesses, including numerous overseas bank accounts controlled by Full Tilt Poker and Absolute Poker (collectively, "the Defendant Property").

Webb filed a claim on July 15, 2011, contesting the forfeiture of certain funds he alleges to be part of the Defendant Property and asserting an interest in "$58,917.90 in the possession of Full Tilt Poker and of $36,531.73 in the possession of Absolute Poker."  Claim at 1.  On August 4, 2011, Webb filed an answer to the in rem portion of the Complaint in this matter as well as a counter claim for costs, pre- and post-judgment interest and attorneys' fees.

Webb's claim should be stricken because Webb lacks standing to assert a claim for the defendants-in-rem in this action.  Webb has no legal interest in any assets of Full Tilt Poker and Absolute Poker, nor the third-party payment processors involved.  Webb also has no interest in, or authority over, the

bank accounts controlled by these poker companies or their third-party payment processors.  While Webb may have a claim against the poker companies for the payment of the amount of money credited to his online gambling account, this does not confer standing on Webb in this in rem forfeiture action to file a claim for any of the specific assets of Full Tilt Poker or Absolute Poker or their payment processors.  In his claim, Webb does little more than assert a debt allegedly owed to him by Full Tilt Poker and Absolute Poker, rather than any specific or cognizable interest in the specific property sought to be forfeited. Additionally, even assuming that Webb did somehow have standing to file a claim in this matter, his counter claim has no basis in law and is barred by sovereign immunity.

**BACKGROUND**

**A.   The Criminal Indictment of Isai Scheinberg and Others for various gambling, fraud, and money laundering offenses**

On or about March 10, 2011, a superseding indictment, S3 10 Cr. 336 (LAK) (the "Indictment") was filed under seal in the Southern District of New York, charging Isai Scheinberg, Raymond Bitar, Scott Tom, Brent Beckley, Nelson Burtnick, Paul Tate, Ryan Lang, Bradley Franzen, Ira Rubin, Chad Elie, and Jason Campos with conspiring to violate the Unlawful Internet Gambling Enforcement Act ("UIGEA"), 31 U.S.C. § 5363, in violation of Title 18, United States Code, 371; violating the UIGEA; operating illegal gambling businesses, in violation of Title 18, United

States Code, Sections 1955 and 2; conspiring to commit wire fraud and bank fraud, in violation of Title 18, United States Code, Section 1349; and conspiring to launder money, in violation of Title 18, United States Code, Section 1956(h).

As set forth in the Indictment, from at least in or about November 2006, the three leading internet poker companies doing business in the United States were PokerStars, Full Tilt Poker, and Absolute Poker/Ultimate Bet (collectively, "the Poker Companies").  (Ind. ¶ 1).  PokerStars, headquartered in the Isle of Mann, provided real-money gambling through its website, pokerstars.com, to United States customers.  PokerStars did business through several privately held corporations and other entities.  (Ind. ¶ 4).  Full Tilt Poker, headquartered in Ireland, provides real-money gambling through its website, fulltiltpoker.com, to United States customers.  Full Tilt Poker did business through several privately held corporations and other entities.  (Ind. ¶ 5).  Absolute Poker, headquartered in Costa Rica, provided real-money gambling through its websites, absolutepoker.com and ultimatebet.com, to United States customers.  Absolute Poker did business through several privately held corporations and other entities.  (Ind. ¶ 6).

As described in the Indictment, because internet gambling businesses such as those operated by the Poker Companies were illegal under United States law, internet gambling

companies, including the Poker Companies, were not permitted by United States banks to open bank accounts in the United States to receive proceeds from United States gamblers.  Instead, the principals of the Poker Companies operated through various deceptive means designed to trick United States banks and financial institutions into processing gambling transactions on the Poker Companies' behalf.  (Ind. ¶ 16).

For example, as described more fully in the Indictment, the defendants, and others, worked with and directed others to deceive credit card issuers and to disguise poker payments made using credit cards so that the issuing banks would process the payments.  (Ind. ¶¶ 17-18).  These deceptive and fraudulent practices included, for example, creating phony non-gambling companies that the Poker Companies used to initiate the credit card charges (Ind. ¶ 19), and creating pre-paid cards designed for United States gamblers to use to transfer funds to the Poker Companies and other gambling companies, with the purpose of the cards disguised by fake internet web sites and phony consumer "reviews" of the cards making it appear that the cards had some other, legitimate, purpose.  (Ind. ¶ 20).

In addition, as described more fully in the Indictment, the defendants, and others, worked with and directed others to develop another method of deceiving United States banks and financial institutions into processing their respective Poker

4

Companies' internet gambling transactions through fraudulent e-check processing.  (Ind. ¶ 21).  The Poker Companies used poker processors to establish payment processing accounts at various United States banks and disguised from the banks the fact that the accounts would be used to process payments for internet poker transactions by making the transactions appear to relate to phony internet merchants.  (Ind. ¶¶ 22-26).

**B.   The In Rem Forfeiture and Civil Money Laundering Complaint**

On or about April 14, 2011, this action was commenced by the filing of a sealed in rem forfeiture and civil money laundering complaint (the "Complaint").  The Complaint sought the forfeiture of all right, title and interest in the assets of the Poker Companies, including but not limited to certain specific properties set forth in the Complaint.  As alleged in the Complaint, the defendants-in-rem are subject to forfeiture (1) pursuant to Title 18, United States Code, Section 1955(d), as properties used in violation of the provisions of Section 1955; (2) pursuant to Title 18, United States Code, Section 981(a)(1)(C), as properties constituting or derived from proceeds traceable to violations of Section 1955; (3) pursuant to Title 18, United States Code, Section 981(a)(1)(C), as properties constituting or derived from proceeds traceable to a conspiracy to commit wire fraud and bank fraud; and (4) pursuant to Title 18, United States Code, Section 981(a)(1)(A), as properties

5

involved in transactions and attempted transactions in violation of Sections 1956 and 1957, or property traceable to such property.  The Complaint also sought civil monetary penalties for money laundering against the Poker Companies and the entities that operated those companies for the conduct laid out above.

On or about September 21, 2011, after Webb filed his claim, answer and counter claim, the United States filed an Amended Complaint in this action, adding additional fraud allegations against Full Tilt Poker and the members of its Board of Directors.

## C.   Webb's Claim, Answer and Counter Claim

On or about July 15, 2011, Webb filed a claim with respect to the Defendant Property (the "Claim").  (Docket Entry 37).  The Claim asserts that Webb has "an interest in the defendant funds as the owner of $58,917.90 in the possession of Full Tilt Poker and of $36,531.73 in the possession of Absolute Poker."[1]  The Claim fails to identify any specific accounts or specific funds in which Webb allegedly has an ownership interest. Instead, it does little more than allege a general debt owed by these poker companies to Webb.

On or about August 4, 2011, Webb filed an answer to the

---

[1]  Claimant does not identify whether these amounts represent the value of funds that he transferred to the poker companies (through third-party payment processors), the value of winnings from online gambling transactions, or both.

Complaint, which included allegations that he labels as affirmative defenses, and a counter claim for costs, pre- and post-judgment interest and attorneys' fees.  (Docket Entry 41).

**ARGUMENT**

**I.   WEBB LACKS STANDING TO FILE A CLAIM**

      **A.   The Law**

"In order to contest a governmental forfeiture action, claimants must have both standing under the statute or statutes governing their claims and standing under Article III of the Constitution as required for any action brought in federal court."  United States v. Cambio Exacto, S.A., 166 F.3d 522, 526 (2d Cir. 1999).  Standing is a threshold issue.  If the claimant lacks standing, the court lacks jurisdiction to consider his challenge of the forfeiture.  The burden of proof to establish sufficient standing rests with the claimant.  Mercado v. U.S. Customs Service, 873 F.2d 641, 644 (2d Cir. 1989); United States v. One 1986 Volvo 750T, 765 F. Supp. 90, 91 (S.D.N.Y. 1991); United States v. One 1982 Porsche 928, 732 F. Supp. 447, 451 (S.D.N.Y. 1990) (abbreviated title).  Where the claimant's own allegations are insufficient to demonstrate standing, a motion to strike his claim should be granted.  See United States v. $38,570 U.S. Currency, 950 F.2d 1108, 1111-13 (5th Cir. 1992) ("Unless claimant can first establish his standing he has no right to put the government to its proof").

7

To have statutory standing, a claimant in a civil forfeiture proceeding must comply with the procedures laid out in Supplemental Rule G.  To have constitutional standing, however, a claimant must demonstrate an adequate "interest" in the forfeitable property.  "If the claimant cannot show a sufficient interest in the property to give him Article III standing there is no case or controversy, in the constitutional sense, capable of adjudication in the federal courts."  United States v. New Silver Palace Restaurant, Inc., 810 F. Supp. 440, 442 (E.D.N.Y. 1992) (internal quotation marks, alterations, and citations omitted).  See also United States v. U.S. Currency, $81,000.00, 189 F.3d 28, 35 (1st Cir. 1999); United States v. $9,041,598.68, 163 F.3d 238, 244-45 (5th Cir. 1998); United States v. Contents of Accounts (Friko Corporation), 971 F.2d 974, 985 (3d Cir. 1992).

Thus, "[t]o establish standing, 'the claimant must demonstrate that he has a colorable ownership, possessory or security interest in at least a portion of the defendant property.'"  United States v. One Silicon Valley Bank Account, 05 Civ. 295, 2007 WL 1594484, *2 (W.D. Mich. June 1, 2007) (quoting United States v. $38,852.00, 328 F. Supp. 2d 768, 769 (N.D. Ohio 2004)); see also United States v. Contents of Account Numbers 208-06070 and 208-06068-1-2, 847 F. Supp. 329, 333 (S.D.N.Y. 1994); One 1982 Porsche 928, 732 F. Supp. at 451.  An unsecured

8

creditor does not have a legal interest in any particular
property owned by the debtor, and does not have standing to
contest the forfeiture of the debtor's property.  Cambio Exacto,
S.A., 166 F.3d at 529 (person to whom a money transmitter owes
money lacks standing as a general creditor to contest forfeiture
of money transmitter's account).

   **B.   Discussion**

      Under these established legal principles, Claimant's
allegations are insufficient to demonstrate standing in this
matter.  By Claimant's own allegations, Full Tilt Poker and
Absolute Poker have possession of the funds he refers to in his
Claim, and the Claimant does not allege that he retained any
security interest in the deposits made to Full Tilt Poker and
Absolute Poker.  Even accepting allegations put forth in the
Claim as true, any ownership interest the Claimant had in any
particular funds transferred to the poker companies was lost, as
a matter of law for purposes of this action, once he allowed his
monies to be withdrawn from his account by a payment processor,
deposited into processor accounts, and then possibly transferred
to overseas accounts belonging to Full Tilt Poker and Absolute
Poker.

      It is well settled under the law of New York and other

9

states[2] that once someone deposits funds in a bank or investment account -- or an account held by another -- they then lack a particularized interest in those funds.  See Peoples Westchester Sav. Bank v. FDIC, 961 F.2d 327, 330 (2d Cir. 1992) (as soon as money is deposited, it is deemed to be the property of the bank, and the relationship between the bank and the depositor is that of debtor and creditor); United States v. All Fund On Deposit In the Name of Khan, 955 F. Supp. 23, 26-27 (E.D.N.Y. 1997) (abbreviated title) (under New York Law, an individual loses title to funds once the funds are deposited into an account held in the name of a third person); United States v. $79,000 at Bank of New York, No. 96 Civ. 3493 (MBM), 1996 WL 648934, *5 (S.D.N.Y. Nov. 7, 1996) (abbreviated title) (same).  Webb fails to allege in his Claim that he has any secured interest in the funds he seeks.

        Once Webb voluntarily transferred his funds to a third-party payment processor, who in turn, possibly transferred those funds to Full Tilt Poker and Absolute Poker, he became simply an unsecured creditor of these entities and lacks sufficient standing to file a Claim in this matter.  As soon as the money

---

        [2]    In analyzing the question of standing in a forfeiture action, it is appropriate to look to state law to determine the nature of the property interest involved.  United States v. Contents of Account Number 11671-8 in the Name of Latino Americana Express, 90 Civ. 8154 (MBM), 1992 WL 98840, *3 (S.D.N.Y. May 6, 1992).

was removed from Webb's account, and deposited into accounts controlled by Full Tilt Poker or Absolute Poker or their payment processors, it is deemed to be the property of the bank, and the relationship between the bank and the depositor is that of debtor and creditor, with the depositor having a contractual right to repayment of his debt on demand. Peoples Westchester Sav. Bank, 961 F.2d at 330; Swan Brewery Co. Ltd. v. U.S. Trust Co. of New York, 832 F. Supp. 714, 718 (S.D.N.Y. 1993); 1 W. Schlichting, T. Rice and J. Cooper, Banking Law § 9.05 (1983). But this contractual right belongs to the account holder; it is the account holder who has the power to exercise dominion and control over the funds in his account. See N.Y. Banking Law § 134(5); New York Trust Co. v. Braham, 126 Misc. 462, 213 N.Y.S. 678, 679 (Sup. Ct. N.Y. Co. 1926); see also 9 C.J.S., Banks and Banking § 293 (1996) ("Ordinarily, where a deposit is made by one person in the name of another, the rights with respect to such deposit belong to the person in whose name the deposit is made, even though the latter is unaware of the deposit, and the bank may not dispute his or her title or rights").

The Claimant here does not allege that he was an authorized signatory for any bank accounts of payment processors or Full Tilt Poker or Absolute Poker. Nor does he allege that he had any contractual relationship with any deposit banks of third party payment processors or the overseas deposit banks of Full

Tilt Poker or Absolute Poker in which the funds at issue were possibly held.  He fails to allege with any specificity any particular accounts over which he allegedly has an ownership interest.  Ultimately, he does little more than allege a general, unsecured debt allegedly owed to him by Full Tilt Poker and Absolute Poker.

The Claimant may very well have a claim against Full Tilt Poker and Absolute Poker for breach of an agreement he had with those entities for the payment of the amount of money identified in his claim.  This, however, is simply a general unsecured debt -- not a claim to the specific <u>res</u> before the Court.  As the Second Circuit noted, "an interest 'in' property must be an interest in a particular, specific asset, as opposed to a general interest in an entire forfeited estate or account." <u>United States</u> v. <u>Ribadeneira</u>, 105 F.3d 833, 836 (2d Cir. 1997) (per curiam).  "It is well-established that general unsecured creditors do not have standing to contest the forfeiture of their debtor's property." <u>United States</u> v. <u>105,800 Shares of Common Stock of FirstRock Bancorp, Inc.</u>, 830 F. Supp. 1101, 1117 (N.D. Ill. 1993); <u>see also</u> <u>DSI Associates, LLC</u> v. <u>United States</u>, 496 F.3d 175, 184 (2d Cir. 2007)(a general creditor does not possess a "legal right, title, or interest in the property that was forfeited as required for standing under § 853(n)(6)(A)"); <u>Cambio Exacto, S.A.</u>, 166 F.3d at 529 (person to whom a money transmitter

12

owes money lacks standing as a general creditor to contest
forfeiture of money transmitter's account); United States v. BCCI
Holdings (Luxembourg), S.A., 46 F.3d 1185, 1191 (D.C. Cir.) ("a
general creditor can never have an interest in specific forfeited
property"); United States v. Schwimmer, 968 F.2d 1570, 1581 (2d
Cir. 1992).

       In analogous circumstances, courts have dismissed
claims to funds in a bank account asserted by persons other than
the account holder, even though the funds had been promised to
the claimant or had been given to the account holder by the
claimant.  In United States v. Contents of Account Number 11671-8
in the Name of Latino Americana Express, 90 Civ. 8154 (MBM), 1992
WL 98840 (S.D.N.Y. May 6, 1992), for example, the Government
seized two bank accounts controlled by Pedro Lora on the ground
that they were property involved in illegal structuring in
violation of 31 U.S.C. § 5324.  Claimants had purchased from
Lora, with Dominican pesos, checks drawn on these accounts as a
way of acquiring U.S. dollars.  The checks, however, had not been
accepted at the time the accounts were seized.  This Court
rejected the claimants' argument that they had a possessory
interest in the bank accounts on which the checks were drawn.
"[C]laimants simply held promises by the drawer, Pedro Lora, to
pay the amount for which the checks were drawn; they did not own
portions of the defendant accounts in the amounts for which the

checks were drawn.  Therefore, claimants are not owners and have no standing to assert the innocent owner defense."  Id. at *4. Accord United States v. Ribadeneira, 920 F. Supp. 553, 554-55 (S.D.N.Y. 1996) (Sand, J.) aff'd (per curiam), 105 F.3d 833 (2d Cir. 1997) (as holders of checks drawn on seized account, as opposed to security interests, claimants were unable to assert rights to a particular asset or specified funds and hence lacked standing).

For these reasons, Webb's claim should be stricken.

## II.  The COUNTER CLAIM SHOULD BE DISMISSED

### A.   The Law

Because Webb lacks standing to file a claim in this matter, he is not a party to this action and his counter claim should also be dismissed.  Additionally, and most basically, Webb's "counter claim" fundamentally misapprehends the nature of this in rem proceeding.  It is the property of the Poker Companies, among others, that constitutes the defendants-in-rem in this action.  Webb is not a defendant.[3]  "A counterclaim is an action brought by a defendant against the plaintiff. Whatever the claimants' pleading is, it is not properly a counterclaim." United States v. $10,000.00 in U.S. Funds, 863 F. Supp. 812, 816 (S.D. Il. 1994); see also United States v. "Lady with a Parrot"

---

[3] While certain persons and entities have been named as in personam defendants in regard to civil money allegations, Webb is not among them.

14

by Nahl, 92-C-6427, 1992 WL 293287, *1 (N.D. Ill. Oct. 13, 1992)

(striking counter claim in forfeiture action as improper).

Finally, the doctrine of sovereign immunity bars Webb's

"counter claim." As this court explained in United States v. All

Right, Title and Interest in the Real Property and Buildings

Known as 228 Blair Avenue, Bronx, New York:

> It is well established that the United States
> Government has sovereign immunity and,
> consequently, can be sued only to the extent
> it consents to be sued, and only in the
> manner established by law. Thus,
> counterclaims against the United States can
> be maintained only where the Government has
> consented or waived its immunity from suit on
> that claim. . . . Initiation of a
> forfeiture action does not constitute a
> waiver of sovereign immunity.

821 F. Supp. 893, 899 (S.D.N.Y. 1993) (citing United States v.

Mitchell, 445 U.S. 535, 538 (1980)). See also United States v.

Lockheed L-188 Aircraft, 656 F.2d 390 (9th Cir. 1979) (government

did not waive sovereign immunity in filing an in rem forfeiture

action so the district court's dismissal of counterclaim asserted

under Tucker Act affirmed); United States v. 8,800 Pounds of

Powdered Egg White, 04 Civ. 76 (RWS), 2007 WL 2955571, *7 (E.D.

Mo. Oct. 5, 2007) (same); United States v. $10,000.00 in U.S.

Funds, 863 F. Supp. at 816 (S.D. Il. 1994) (court barred FTCA

counter claim stating "that the mere fact that the government is

the plaintiff and has brought the forfeiture action does not

constitute a waiver of sovereign immunity and authorize the

15

bringing of a counterclaim").

Webb's citation to the Civil Asset Forfeiture Reform Act ("CAFRA") and the Equal Access to Justice Act, 28 U.S.C. § 2412 ("EAJA") also do not provide a valid basis for Webb to assert any sort of counter claim.  CAFRA does provide for attorneys' fees and interest in cases in which a claimant is successful.  See 28 U.S.C. § 2465(b)(1).  That provision, however, does not authorize the filing of a counter claim against the United States.  See United States v. 662 Boxes of Ephedrine, 590 F. Supp. 2d 703, 705 (D.N.J. 2008) (dismissing counter claims for attorneys' fees and litigation costs "as superfluous because the CAFRA specifically provides that a prevailing party may recover those expenses by post-judgment motion").  Additionally, due to the presence of CAFRA's fee-shifting provision, the Second Circuit has explicitly held that "the EAJA and CAFRA are irreconcilably at odds" and that "CAFRA is exclusive of all other remedies."  United States v. Khan, 497 F.3d 204, 211 (2d Cir. 2007).

Finally, neither 18 U.S.C. § 983 nor the Supplemental Rules for Certain Admiralty and Maritime Claims, Rule (G), provide for counterclaims in civil forfeiture proceedings.

### B.    Discussion

Because Webb lacks Article III standing to file a claim in this matter, he is not validly a party in this action and his

16

counter claim, along with his Claim, should be dismissed. Relatedly, because Webb is not a defendant in this matter, he lacks the ability to file a counter claim.  Finally, Webb's counter-claim should also be dismissed on the basis of sovereign immunity, which has not been waived in this context.  Neither CAFRA, the EAJA or any other statutory provision provide Webb with a legal basis to assert a counter claim in this matter.

## CONCLUSION

For the foregoing reasons, the Government respectfully requests that the Court enter an order striking the claim and counter claim of Adam Webb for lack of standing and also strike his counter claim as barred by sovereign immunity and unauthorized by statute.

Dated:  New York, New York
        October 3, 2011

                          Respectfully submitted,

                          PREET BHARARA
                          United States Attorney for the
                          Southern District of New York


                  By : _____/s/_____
                          Sharon Cohen Levin
                          Michael D. Lockard
                          Jason H. Cowley
                          Assistant United States Attorney
                          (212) 637-1060/2193/2479

17