UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
UNITED STATES OF AMERICA,

                Plaintiff,

- against -

POKERSTARS; FULL TILT POKER;
ABSOLUTE POWER; ULTIMATE BET, *et al.*,

                Defendants.

ALL RIGHT, TITLE AND INTEREST IN THE
ASSETS OF POKERSTARS; FULL TILT
POKER; ABSOLUTE POKER;
ULTIMATE BET, *et al.*,

                Defendants-in-rem.
------------------------------------------------------------x

11 Civ. 2564 (LBS)

# MEMORANDUM OF LAW OF CLAIMANT ADAM WEBB IN FURTHER OPPOSITION TO GOVERNMENT'S MOTION TO STRIKE CLAIM AND DISMISS COUNTERCLAIM

Steven L. Kessler
LAW OFFICES OF STEVEN L. KESSLER
122 East 42nd Street Suite 606
New York, N.Y. 10168-0699
(212) 661-1500

*Attorneys for Claimant Adam Webb*

This Memorandum of Law is submitted pursuant to the Court's ruling on the motion of Claimant Adam Webb ("Claimant") to strike the government's oversized Reply brief in this civil forfeiture proceeding.  As the Court will recall, the Court denied Claimant's motion but granted Claimant leave to file up to a seven-page response to the government's Reply, to reflect the excessive pages in the government's submission.  As set forth below, the additional space hardly helped the government.  The government continues to rely on cases that are easily distinguishable from the instant matter.  Equally important, the government avoids, and implicitly concedes, the central legal and factual contentions in Claimant's opposing memorandum.

**The Government's Allegedly 'Analogous' Case Law Is Not, In Fact, Analogous**

Claimant's opposition demonstrated that no case cited by the government actually established that Claimant lacked standing, but instead merely constituted the government's opinion that these cases were sufficiently 'analogous' to this one to compel a similar result.  Faced with Claimant's response, the government's Reply fares no better.  Its reliance on *Khan* is misplaced, as in that case, the bailee was a "money remitter" whose specific task was to *remit* the claimants' funds to a third party.  That constituted an obvious relinquishment of control over the funds.  Worse, the government attempts to read *United States v. Khan* as holding that "signatory authority" is the test for standing in all forfeiture cases. Gov. Rep. at 8.  In reality, this was simply a factor cited by the Court, unique to the facts of that case, that contributed to the outcome.  It is not the test, in this or any other Circuit, for Article III standing in a forfeiture case.

The government's attempt to analogize the Oregon decision in *United States v. 47 10-Ounce Gold Bars* is equally unavailing.  The government cites this case to show that a company's use of the term "account" for its customers – as the poker companies did here – does

not cede possession or control of the funds to those customers. Gov. Rep. at 10. The government's attempted analogy, however, is so inapposite as to border on the absurd. The property in issue was *gold bars*, not money. None of the gold bars *ever* belonged to *any* of the customers. The customers bought *shares* in the bars. That was the nature of the service offered. Here, the money is Claimant's.

The government's analogy to corporate *loans* is equally flawed. See Gov. Rep. at 11 (citing *US v. Mazza Alaluf*). Obviously, when one *lends* funds to a third party, one cedes possession and control over them. The purpose of a loan to a company is to permit the company to use the funds for corporate purposes, not for the customer to use the funds for their own benefit. Indeed, a *lender* is the very definition of a *creditor*. As even the government concedes, and the Amended Complaint alleges, the online gambling companies here specifically represented that customers' funds were *not* loans by promising that the funds would be kept segregated from the companies' operating capital.

In sum, the government's analogies are fatally flawed. There is no case that actually supports the government's position. The closest analogy, as Claimant has demonstrated, is to poker chips purchased at a bricks and mortar casino, which are clearly specific property. Significantly, the government avoids responding to that analogy. The government's deafening silence on that central contention concedes that Claimant, as an online gambling customer under these facts, has a sufficiently specific property interest in his seized funds to confer standing in a civil forfeiture case.

**The Government Has Failed to Rebut Claimant's Showing of Article III Standing**

The government's Reply fails to engage Claimant's showing regarding Article III

standing. As Mr. Webb has demonstrated, Article III requires only that a claimant have an "actual stake in the outcome," with "palpable injury" "both real and immediate, not conjectural or hypothetical," involving a violation of "rights protected by the common law of property, contract, torts and restitution," where the injury is "fairly traceable to the defendant's unlawful conduct and likely to be redressed by the requested relief." See Cl. Mem. at 6-9 & cases cited therein.

Article III is satisfied so long as the claimant's interest is "arguably within the zone of interests to be protected or regulated by the statute" and that zone is particularly "expansive" in the context of the "innocent owner provision" of the civil forfeiture law. *Torres v. $36,256.80 U.S. Currency*, 25 F.3d 1154, 1157 (2d Cir. 1994); *see United States v. 5 S 351 Tuthill Road, Naperville, Ill.*, 233 F.3d 1017, 1023 (7th Cir. 2000) (same); *United States v. U.S. Currency $81,000*, 189 F.3d 28, 34-35 (1st Cir. 1999) (same). In short, Claimant has more than established that he has a "facially colorable interest in the proceedings sufficient to satisfy the case-or-controversy requirement." *Torres*, 25 F.3d at 1158.

Rather than engage these fundamental legal principles, the government argues that Claimant's showing is irrelevant because Claimant is purportedly a mere general unsecured creditor of the defendants. This is a conclusory argument, however, that is contravened by the unrefuted facts and applicable law. It is uncontested that "defendants represented, and Claimant reasonably believed, that Claimant's accounts with the defendants were just that – *his* accounts," and that Claimant would enjoy the trappings of ownership, dominion and control over *his* funds, just like an online bank depositor, PayPal customer, or bricks-and-mortar gambler. Cl. Mem. at 15.

The government also avoids addressing Claimant's showing that it is not necessary to literally "own, dominate or control" property to demonstrate a "sufficient interest" in it to establish an "actual stake in the outcome." *United States v. 5 S 351 Tuthill Road, Naperville, Ill.*, 233 F.3d at 1023.

In any event, Claimant's factual contentions regarding his interest in the seized property remain unrefuted and are more than sufficient to establish an "interest in the specific property sought to be forfeited . . .." 18 U.S.C. § 983(d)(6).

**The Government Does Not Contest the Factual Validity of Claimant's Claim**

The government fails to contest Claimant's showing that his $95,449.63 is within the more than $50 million seized from the defendants, and that he has established facts supporting innocent ownership under 18 U.S.C. § 983(d) – that his funds are of legitimate source and purpose. As there is no dispute that Claimant "had some involvement with" the seized property, his interest in that property is sufficiently specific for his claim to be heard on its merits. *United States v. $515,060.42 in United States Currency*, 152 F.3d 491, 499 (6th Cir. 1998) (citing *United States v. 3340 Stallcup*, 794 F. Supp. 626, 633 (N.D. Tex. 1992)).

**The Government Fails to Address Claimant's Refutation of its Banking Law Argument**

The government made the irrelevant legal argument in its moving memorandum of law that, under New York law, a bank depositor is not deemed to be the owner of the funds in an account in the depositor's own name, but is merely a creditor of the bank for the amount of the account balance. Claimant's opposition demonstrated that this contention is not only irrelevant,

4

but is also a confusing red herring in this context because certainly the *named account holder* has Article III standing to assert a claim to that account in a civil forfeiture action. *See*, *e.g.*, *United States v. $4,224,958.57*, 392 F.3d 1002, 1005 (9th Cir. 2004). In its reply, the government blithely ignores the relevant facts and law and continues to make this argument without explaining why it should be considered in this situation. It should not.

**The Government Avoids Claimant's Showing that the Equities Favor Denial of its Motion**

The government fails to engage Claimant's showing that the equities strongly favor allowing Claimant his day in Court to litigate his claim. Claimant demonstrated that the harm he would suffer if the government's motion were granted far outweighs the slight burden of compelling the government to wait until the close of discovery to move to dismiss Claimant's claim on the merits if such a motion is warranted. The government does contend, however, that Claimant could have another bite at an apple – though clearly a much more bitter fruit – through the remission and mitigation process. With all due respect to Congress, which created the process, and the Attorney General, who administers it, it must be pointed out that, in practice, remission and mitigation are virtually worthless remedies, as there are no standards for granting or denying such applications and the statute places exclusive and sole discretion in the hands of the Attorney General, a party to the litigation. In more than two decades of forfeiture practice, this office has never seen a petition for remission or mitigation granted. Perhaps that is partly why, as the government acknowledges, the availability of remission and mitigation has been found by the Second Circuit *not* to constitute an adequate remedy at law. Gov. Rep. at 14-15. In sum, the government has failed to put a dent in Claimant's showing that the equities strongly

favor denial of its motion at this stage of the proceedings.

**The Government's Position Contravenes Public Policy as Well as Reality**

The government's avoidance of the property issues involved in maintaining internet accounts like with businesses such as PayPal and online banks is a denial of reality. In the contemporary world, legitimate, specific property interests are created, transferred and preserved on the internet. The government does not, and cannot, deny that it is well within the parameters of the civil forfeiture laws, as well as the Court's discretion, to recognize such interests to be sufficiently specific to confer Article III standing. Nor does the government explain how public policy is furthered by failing to recognize such interests, as again, it cannot. Finally, the government fails to address Claimant's cogent contention that, under the government's reading of the law, a claimant defrauded by an attorney who misused retainer funds in an IOLA account would lack standing to pursue such claims in a civil forfeiture action. Clearly, the government's position contravenes public policy.

**The Factual Basis for Claimant's Equitable Interest in his Property is Unrefuted**

Claimant also demonstrated an alternative *prima facie* equitable interest in the property through the state law doctrine of constructive trust. While the government takes issue with the legal sufficiency of Claimant's showing, it fails to engage the factual basis for Claimant's equitable claim. Accordingly, it is undisputed that defendants violated their contractual and fiduciary obligation to keep Claimant's funds segregated, that Claimant reasonably relied on that promise, and that defendants were unjustly enriched as a result.

**CONCLUSION**

For all the foregoing reasons, Claimant Adam Webb respectfully requests that plaintiff's motion to strike Claimant's claim and dismiss Claimant's counterclaim be denied in its entirety, with costs, together with such other and further relief as this Court deems just and proper.

Dated: New York, New York
November 16, 2011

                                         Respectfully submitted,

                                         LAW OFFICES OF STEVEN L. KESSLER

                         By:   *Steven L. Kessler*
                                        Steven L. Kessler
                                        *Attorneys for Claimant Adam Webb*
                                        122 East 42nd Street, Suite 606
                                        New York, N.Y.  10168-0699
                                        (212) 661-1500
                                        stevenkessler@msn.com

Eric M. Wagner, Esq.
    *On the Memorandum*