UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>      Plaintiff,<br>  v.<br><br>POKERSTARS, et al.<br><br>      Defendants.<br><br>ALL RIGHT, TITLE AND INTEREST IN THE ASSETS OF POKERSTARS, et al.<br><br>      Defendants-in-rem | 11 Civ. 2564 (LBS)<br><br>**MEMORANDUM**<br>**& ORDER** |

SAND, J.

On April 20, 2011, the United States Attorney for the Southern District of New York ("the United States" or "Government"), filed a complaint ("the Complaint") against PokerStars, Full Tilt Poker, Absolute Poker, Ultimate Bet and affiliated companies ("the Poker Companies" or "Defendants"). In the Complaint, the United States accused the Poker Companies—at the time, the leading internet poker companies operating in the United States—of engaging in an elaborate money laundering scheme. It sought the imposition of civil monetary penalties, as well as the forfeiture of all rights, title and interest in Defendants' assets.

On July 15, 2011, Claimant Adam Webb ("Webb") filed a claim, pursuant to Rule G of the Supplemental Rules for Certain Admiralty and Maritime Claims, in which he asserted an ownership interest in $95,449.63 seized from Defendants Full Tilt Poker and Absolute Poker in connection with the United States' civil *in rem* forfeiture and money laundering action. Webb also filed an Answer to the Complaint on August 4, 2011. In his Answer, Webb asserted a counterclaim against the United States under the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), Pub. L. No. 106-185, 114 Stat. 202, 18 U.S.C. § 983, and the Equal Access to

1

Justice Act ("EAJA"), 28 U.S.C. § 2412, and demanded the payment of his costs, pre- and post-judgment interest and attorneys' fees.

The United States has moved this Court to strike Webb's claim for lack of standing and to dismiss Webb's counterclaim as barred by sovereign immunity and unauthorized by statute. For the reasons provided below, the motions are granted.

## I.   Discussion

Forfeiture actions *in rem* are governed by Rule G of the Supplemental Rules for Admiralty or Maritime Claims & Asset Forfeiture Actions (the "Supplemental Rules"). Supplemental Rule G(8)(c) provides that, "at any time before trial, the government may move to strike a claim or answer...for failing to comply with Rule G(5) or (6)...or because the claimant lacks standing." Supp. R. G(8)(c)(i)(A) and (B). In the instant case, the government has moved to strike Webb's claim for lack of standing.

"Whether a claimant has standing is 'the threshold question in every federal case, determining the power of the court to entertain the suit.'" *United States v. Cambio Exacto, S.A.*, 166 F.3d 522, 526 (2d Cir. 1999) (quoting *In re Gucci*, 126 F.3d 380, 387–88 (2d Cir. 1997)). "In order to contest a governmental forfeiture action, claimants must have both standing under the statute or statutes governing their claims and standing under Article III of the Constitution as required for any action brought in federal court." *United States v. Cambio Exacto, S.A.*, 166 F.3d 522, 526 (2d Cir. 1999). The burden is on the claimant to demonstrate to the Court's satisfaction his statutory and constitutional standing. *Mercado v. United States Customs Service*, 873 F.2d 641, 644 (2d Cir. 1989).

The government does not contest Webb's compliance with the procedures laid down in Rule G(5) of the Supplemental Rules and therefore his statutory standing to contest the

2

forfeiture. Instead, it challenges his standing under Article III. "To demonstrate standing under Article III . . . a litigant must allege a distinct and palpable injury to himself that is the direct result of the putatively illegal conduct of the adverse party and likely to be redressed by the requested relief." *Cambio Exacto*, 166 F.3d at 527 (internal citations and punctuation omitted). Generally, what is required in order to establish standing of this kind in civil forfeiture actions is demonstration of an ownership or possessory interest in the seized or forfeited property. *Id.* Ownership and possessory interests are in turn defined by state law. *Ciambriello v. County of Nassau*, 292 F.3d 307, 313 (2d Cir. 2002); *United States v. 485 N. Rd.*, 857 F. Supp. 22, 23 (D. Vt. 1994).

Webb argues that he possess the requisite ownership interest in the seized property to have standing under Article III because, at the time of the seizure of Full Tilt Poker and Absolute Poker's assets, $ 58,917,90 remained in his Full Tilt Poker online player account and $ 36,531.73 remained in his Absolute Poker player account. Much like the holder of a bank account, the money he placed in his online player accounts, Webb argues, grants him an ownership interest in Defendants' assets that suffices to establish his constitutional standing to contest their seizure.

We disagree. As a threshold matter, we note that under New York law it is not generally the case, as Webb suggests, that bank depositors retain ownership of the funds they deposit with the bank and therefore have standing to challenge the civil forfeiture of the bank assets. Instead, it is only in those exceptional cases in which depositors open up a "special" as opposed to a "general account" that they retain ownership in the funds they deposit with the bank and, with it, standing to challenge the forfeiture of bank assets. *See Peoples Westchester Sav. Bank v. Federal Deposit Ins. Corp.*, 961 F.2d 327, 330-332 (2d Cir. 1992) (distinguishing special accounts—in which money is deposited with a bank to be used for a specific purpose and for which the bank is

3

separately compensated—with general accounts—in which money is deposited for the bank's general use, with the depositor retaining only the right to demand the refund of his money at any time); *United States v. Ribadeneira*, 920 F. Supp. 553, 555 (S.D.N.Y. 1996) (noting that holders of only general bank accounts "can have no interest in particular assets forfeited" and therefore no standing to contest the forfeiture "unless they have already secured a judgment against the debtor and perfected a lien against a particular item") (*citing United States v. BCCI Holdings (Luxembourg), S.A.*, 46 F.3d 1185, 1191 (D.C. Cir. 1995)), *aff'd* 105 F.3d 833(2d Cir. 1997); *United States v. $79,000 in Account No. 2168050/6749900 at the Bank of N.Y.*, No. 96 Civ. 3493 (MBM), 1996 U.S. Dist. LEXIS 16536, at *12–13 (S.D.N.Y. Nov. 6, 1996) ("Claimants cannot establish standing if these accounts were general accounts because even one who deposits funds in an account registered in his own name loses title to those funds as soon as they are deposited" and absent any showing of actual dominion or control over the funds lacks sufficient interest in the accounts to contest their forfeiture).

Thus, even were Webb capable of demonstrating that the player accounts he opened with Full Tilt Poker and Absolute Poker were "special" rather than "general" in nature in the sense that the funds he gave the Poker Companies were intended to be used for a specific purpose and for which he paid Defendants additional compensation, his argument would nevertheless fail, given that under New York law, the bailor-bailee relationship that is established when an individual entrusts money to another—be it a bank or, as in this case, a poker company—to be used for a specific purpose is destroyed by the deposit of that money with a third party. *United States v. Khan*, No. 97–6083, 1997 U.S. App. LEXIS 31870 (2d Cir. Nov. 10, 1997); *Chilewich Partners v. M.V. Alligator Fortune*, 853 F. Supp. 744, 756 (S.D.N.Y. 1994). Hence, the fact that Full Tilt Poker and Absolute Poker deposited Webb's money in general bank accounts means

4

that, unlike the holder of a "special" bank account, Webb cannot establish the existence of a bailment and the specific interest in the forfeited property that such a bailment would entail. Instead, under New York law, Webb must be considered a general creditor to the poker companies with whom he established his player accounts, and as such, without standing to contest the forfeiture of their assets. *Ribadeneira*, 920 F. Supp. at 555.

Webb argues, in the alternative, that he has standing to contest the civil forfeiture under the equitable doctrine of constructive trust. This argument also fails, however, given Webb's inability to demonstrate several of the elements generally required before New York courts will impose a constructive trust. First, Webb cannot establish the existence of the confidential or fiduciary relationship that "[m]ost frequently...triggers the equitable considerations leading to the imposition of a constructive trust." *Sharp v. Kosmalski*, 40 N.Y.2d 119, 121-122 (N.Y. 1976). "Purely commercial transactions do not give rise to a fiduciary relationship." *In re Koreag, Controle et Revision S.A.*, 961 F.2d 341, 353 (2d Cir. 1992). Although Webb argues that Defendants' promises to him—to safeguard his money and to segregate it from their accounts—created a bailor-bailee relationship and the fiduciary duties that such a relationship implies, this argument is unpersuasive, for the reasons outlined in the previous paragraph.

Webb also cannot trace the funds that would be subject to the trust to the money he deposited into his online player accounts. "It is hornbook law that before a constructive trust may be imposed, a claimant to a wrongdoer's property must trace his own property into a product in the hands of the wrongdoer." *United States v. Benitez*, 779 F.2d 135, 140 (2d Cir. 1985). Because Full Tilt Poker and Absolute Poker deposited Webb's money into general bank accounts, and did not keep it segregated from other players' accounts—or for that matter, from the companies' own assets—Webb cannot demonstrate that any of the money seized by the Government is

actually his. This mitigates strongly against the recognition of a constructive trust. *United States v. Peoples Benefit Life Ins. Co.*, 271 F.3d 411, 416 (2d Cir. 2001) (finding the fact that "the property allegedly subject to the constructive trust (the Reserve Fund) is not readily identified as or traceable to the property subject to forfeiture (Frankel's Property)... to weigh[] strongly against recognizing a constructive trust"); *United States v. Schwimmer*, 968 F.2d 1570, 1583 (2d Cir. 1992) (denying the imposition of a constructive trust in part because "[t]he District Court made no finding in this case that any of the property ordered forfeited was traceable to the commissions held in constructive trust" and in fact "none of the petitioners assert either title to or interest in any specific asset in the combined forfeiture pool").

Finally, and most importantly, Webb cannot demonstrate that other legal remedies available to him are inadequate. *Khan*, 1997 U.S. App. LEXIS 31870, at *7 (2d Cir. Nov. 10, 1997) ("[A] constructive trust, as a remedy of equity, is not appropriate when remedies exist at law and elsewhere."). Full Tilt Poker customers who, like Webb, lost access to the money stored in their online poker accounts have filed a number of lawsuits against the company to recover their lost funds. Three of these suits are currently proceeding before this Court.[1] Webb has provided no reason why he cannot file a similar lawsuit against Full Tilt Poker and Absolute Poker or, alternatively, join plaintiffs in one of the existing suits. Given the existence of these parallel proceedings, we do not find that equity favors the imposition of a constructive trust.

We therefore conclude that Webb does not have standing to contest the Government's seizure of the Poker Companies' assets. Accordingly, we grant the Government's motion to strike Webb's claim. We also grant the Government's motion to dismiss Webb's counterclaim. Whether or not a claimant in a civil forfeiture has the right to file a counterclaim against the

---

[1] The three cases currently pending before the Court are: *Segal v. Bitar*, 11 Civ. 4521; *Jetha v. Filco*, 11 Civ. 4521; and *Lawson v. Full Tilt Poker*, 11 Civ. 6087.

government—as Webb contends and the United States disputes—there is no question that someone, like Webb, who is *not* a claimant in a civil forfeiture action and not otherwise a party to the litigation, has no right to assert a counterclaim. *See* Fed. R. Civ. P. 13 (discussing the circumstances under which parties to the litigation may assert counterclaims).

## II. Conclusion

For the foregoing reasons, the Government's motion to strike Webb's claim is GRANTED. The motion to dismiss Webb's counterclaim is also GRANTED.

SO ORDERED.

Dated: May 7, 2012
      New York, NY

_____
U.S.D.J.