UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -x
                                    :
UNITED STATES OF AMERICA,
                                    :
            Plaintiff,
                                    :
        - v. -                          11 Civ. 2564 (LBS)
                                    :
POKERSTARS, et al.
                                    :
            Defendants;
                                    :
ALL RIGHT, TITLE AND INTEREST IN
THE ASSETS OF POKERSTARS, et al.;   :

            Defendants-in-rem.  :
- - - - - - - - - - - - - - - - - -x


**MEMORANDUM OF LAW IN SUPPORT OF
THE GOVERNMENT'S MOTION TO STRIKE THE CLAIM AND
<u>COUNTERCLAIM OF THE COMMONWEALTH OF KENTUCKY</u>**


                            PREET BHARARA,
                            United States Attorney for the
                            Southern District of New York

Sharon Cohen Levin
Michael D. Lockard
Jason H. Cowley
Assistant United States Attorneys

- of counsel -

## Table of Contents

PRELIMINARY STATEMENT.. . . . . . . . . . . . . . . . . . . 1

BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . 2

    A.   The Criminal Indictment of Isai Scheinberg and Others
        for various gambling, fraud, and money laundering
        offenses . . . . . . . . . . . . . . . . . . . . . 2

    B.   The In Rem Forfeiture and Civil Money Laundering
        Complaint.. . . . . . . . . . . . . . . . . . . . . 5

    C.   Kentucky's Unresolved Action in State Court.. . . . . 7

    D.   Kentucky's Claim, Answer and Counterclaim . . . . . 10

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . 11

I.   KENTUCKY LACKS CONSTITUTIONAL STANDING TO FILE A CLAIM.. 11

    A.   Relevant Law. . . . . . . . . . . . . . . . . . . 11

    B.   Discussion. . . . . . . . . . . . . . . . . . . . 14

II.  THE COUNTERCLAIM SHOULD BE DISMISSED . . . . . . . . . 15

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . 18

## PRELIMINARY STATEMENT

The Government respectfully submits this memorandum of law in support of its motion, pursuant to Rule 12(b) and (c) of the Federal Rules of Civil Procedure and Rule G(8)(c) of the Supplemental Rules for Admiralty and Maritime Claims, to strike the claim and counterclaim filed in this <u>in rem</u> forfeiture action by the Commonwealth of Kentucky ("Kentucky" or "Claimant").  The defendants <u>in rem</u> in this matter include, among others, all right title and interest in the assets of several online gambling businesses, PokerStars, Absolute Poker, and Full Tilt Poker (the "Poker Companies").

Kentucky filed a claim on September 30, 2011, asserting an interest in the domain names of the Poker Companies and on October 21, 2011, Kentucky filed an answer to the <u>in rem</u> portion of the Complaint as well as a counterclaim for costs and attorneys' fees.  Kentucky's claim of ownership -- that it is the "true and bona fide owner" of the domain names and "entitled to possession" of them is based on Kentucky's "prior seizure" of the domain names in connection with a seizure warrant issued in Kentucky state court proceedings.  Despite Kentucky's assertion of having "seized" the Poker Companies' domain names, however, it is uncontested that Kentucky has not obtained a judgment for the domain names and has never even successfully executed its state-court seizure warrant.  Indeed, the domain names were under the complete control of the Poker Companies and used by them as

alleged in the Amended Complaint right up until this action was commenced and the United States took possession of the domain names by serving an Arrest Warrant in Rem issued by the Honorable Robert W. Sweet, United States District Judge, on the domain name registry for the domain names. Kentucky, in other words, has no ownership interest in the domain names; has never exercised possession, dominion, or control over them; and thus lacks standing to assert a claim in this action.

Additionally, Kentucky's counterclaim for costs and attorneys' fees has no basis in law and is barred by sovereign immunity.

**BACKGROUND**

**A.    The Criminal Indictment of Isai Scheinberg and Others for Various Gambling, Fraud, and Money Laundering Offenses**

On or about March 10, 2011, a superseding indictment, S3 10 Cr. 336 (LAK) (the "Indictment") was filed under seal in the Southern District of New York, charging Isai Scheinberg, Raymond Bitar, Scott Tom, Brent Beckley, Nelson Burtnick, Paul Tate, Ryan Lang, Bradley Franzen, Ira Rubin, Chad Elie, and John Campos with conspiring to violate the Unlawful Internet Gambling Enforcement Act ("UIGEA"), 31 U.S.C. § 5363, in violation of Title 18, United States Code, 371; violating the UIGEA; operating illegal gambling businesses, in violation of Title 18, United States Code, Sections 1955 and 2; conspiring to commit wire fraud and bank fraud, in violation of Title 18, United States Code,

Section 1349; and conspiring to launder money, in violation of
Title 18, United States Code, Section 1956(h).[1]

      As set forth in the Indictment, from at least in or
about November 2006, the three leading internet poker companies
doing business in the United States were PokerStars, Full Tilt
Poker, and Absolute Poker/Ultimate Bet (collectively, "the Poker
Companies").  (Ind. ¶ 1).  PokerStars, headquartered in the Isle
of Man, provided real-money gambling through its website,
pokerstars.com, to United States customers.  PokerStars did
business through several privately held corporations and other
entities.  (Ind. ¶ 4).  Full Tilt Poker, headquartered in
Ireland, provided real-money gambling through its website,
fulltiltpoker.com, to United States customers.  Full Tilt Poker
did business through several privately held corporations and
other entities.  (Ind. ¶ 5).  Absolute Poker, headquartered in
Costa Rica, provided real-money gambling through its websites,
absolutepoker.com and ultimatebet.com, to United States
customers.  Absolute Poker did business through several privately
held corporations and other entities.  (Ind. ¶ 6).

---

[1] Defendants Bradley Franzen, Brent Beckley, Ira Rubin,
Ryan Lang, and John Campos each have pleaded guilty to offenses
arising out of the conduct alleged in the Indictment and the
Complaint.  On June 28, 2012, a Superseding Indictment, S8 10 Cr.
336 (LAK), was returned charging Bitar and Burtnick with, inter
alia, defrauding Full Tilt Poker players in addition to the
offenses charged in the S3 Indictment.

As described in the Indictment, because internet
gambling businesses such as those operated by the Poker Companies
were illegal under United States law, internet gambling
companies, including the Poker Companies, were not permitted by
United States banks to open bank accounts in the United States to
receive proceeds from United States gamblers.  Instead, the
principals of the Poker Companies operated through various
deceptive means designed to trick United States banks and
financial institutions into processing gambling transactions on
the Poker Companies' behalf.  (Ind. ¶ 16).

For example, as described more fully in the Indictment,
the defendants, and others, worked with and directed others to
deceive credit card issuers and to disguise poker payments made
using credit cards so that the issuing banks would process the
payments.  (Ind. ¶¶ 17-18).  These deceptive and fraudulent
practices included, for example, creating phony non-gambling
companies that the Poker Companies used to initiate the credit
card charges (Ind. ¶ 19), and creating pre-paid cards designed
for United States gamblers to use to transfer funds to the Poker
Companies and other gambling companies, with the purpose of the
cards disguised by fake internet web sites and phony consumer
"reviews" of the cards making it appear that the cards had some
other, legitimate, purpose.  (Ind. ¶ 20).

4

In addition, as described more fully in the Indictment, the defendants, and others, worked with and directed others to develop another method of deceiving United States banks and financial institutions into processing their respective Poker Companies' internet gambling transactions through fraudulent e-check processing. (Ind. ¶ 21). The Poker Companies used poker processors to establish payment processing accounts at various United States banks and disguised from the banks the fact that the accounts would be used to process payments for internet poker transactions by making the transactions appear to relate to phony internet merchants. (Ind. ¶¶ 22-26).

## B.    The In Rem Forfeiture and Civil Money Laundering Complaint

On or about April 14, 2011, this action was commenced by the filing of a sealed in rem forfeiture and civil money laundering complaint (the "Complaint"). The Complaint sought the forfeiture of all right, title and interest in the assets of the Poker Companies, including but not limited to certain specific properties set forth in the Complaint. As alleged in the Complaint, the defendants-in-rem are subject to forfeiture (1) pursuant to Title 18, United States Code, Section 1955(d), as properties used in violation of the provisions of Section 1955; (2) pursuant to Title 18, United States Code, Section 981(a)(1)(C), as properties constituting or derived from proceeds traceable to violations of Section 1955; (3) pursuant to Title

5

18, United States Code, Section 981(a)(1)(C), as properties constituting or derived from proceeds traceable to a conspiracy to commit wire fraud and bank fraud; and (4) pursuant to Title 18, United States Code, Section 981(a)(1)(A), as properties involved in transactions and attempted transactions in violation of Sections 1956 and 1957, or property traceable to such property.  The Complaint also sought civil monetary penalties for money laundering against the Poker Companies and the entities that operated those companies for the conduct laid out above.

On April 15, 2011, the Honorable Robert W. Sweet, United States District Judge, issued an Arrest Warrant in Rem for the domain names "Pokerstars.com," "Fulltiltpoker.com," "Absolutepoker.com," "Ultimatebet.com," and "Ub.com" (the "Defendant Domain Names").  The Arrest Warrant in Rem (attached as Ex. A) was served on the domain name registry (and one domain name registrar) for the Defendant Domain Names, preventing their further use by the Poker Companies until each of them executed a Domain Name Use Agreement with the United States prohibiting the use of each Poker Company's domain name for further real-money internet gambling in the United States.  (D.E. 10, 11, 12).

On or about September 21, 2011, before Kentucky filed their claim, answer and counterclaim, the United States filed an Amended Complaint in this action, adding additional fraud allegations against Full Tilt Poker and the members of its Board

of Directors.

C.    **Kentucky's State Forfeiture Action**

On or about September 18, 2008, the Commonwealth of Kentucky filed an <u>in rem</u> Civil Action, <u>Commonwealth of Kentucky</u> <u>ex rel. J. Michael Brown, Secretary, Justice and Public Safety</u> <u>Cabinet</u> v. <u>141 Internet Domain Names</u>, 08-CI-1409 (Franklin Circuit Court, Division II) (the "Kentucky Action"), against 141 internet domain names, including the Defendant Domain Names.  A copy of the complaint filed in the Kentucky Action is attached hereto as Exhibit B.  The complaint in the Kentucky Action alleges generally that the 141 internet domain names are subject to forfeiture pursuant to Kentucky laws which prohibit online internet gambling.

On or about September 18, 2008, a judge of the Franklin Circuit Court issued an "Order of Seizure of Domain Names" (the "Franklin Circuit Court Seizure Order") authorizing the seizure of the 141 domain names, including the Defendant Domain Names. Attached hereto as Exhibit C is a copy of the Franklin Circuit Court Seizure Order.  This order authorized Kentucky to attempt to seize the Defendant Domain Names but did not automatically confer possession or ownership of the Defendant Domain Names. Notwithstanding the Franklin Circuit Court Seizure Order, Kentucky never successfully executed the order with respect to the Defendant Domain Names or exercised any dominion or control

7

over them.  The Defendant Domain Names remained in the possession
and control of the Poker Companies for two-and-a-half years
following the issuance of the Franklin Circuit Court Seizure
Order and continued to be used for illegal activities until the
United States seized them pursuant to the Arrest Warrant in Rem.

Kentucky asserts that it is the registrant for the
Defendant Domain Names and that it exercises dominion and control
over them pursuant to the Franklin Circuit Court Seizure Order
(See D.E. 78 ("Answer") ¶¶ 64, 76, 85, 86, 91), but also admits
that the Poker Companies continued to use the Defendant Domain
Names to conduct unlawful internet gambling in the United States
up until the filing of the original Complaint in April 2011.
(Compare Compl. ¶¶ 1, 13, 53-64 (Pokerstars.com), 65-76
(Fulltiltpoker.com), 77-84 (Absolutepoker.com), & 85-91
(Ultimatebet.com and Ub.com) with Answer ¶¶ 1, 13, 54-59 & 65,
66-72 & 77; 78-81; 87-90).

For example, Kentucky alleges with respect to
ultimatebet.com that "on September 25, 2008 the registrar,
GoDaddy.com, submitted the Registrar Certificate to the
Commonwealth for filing with the Franklin Circuit Court,
explicitly for the purpose of placing the domain
[ultimatebet.com] under the dominion and control of that Court,
where it remained as of the date of seizure by Plaintiff herein"
(Answer ¶¶ 85-86), but also admits that visitors to the website

affiliated with ultimatebet.com were simply rerouted to ub.com, where they could engage in playing online poker offered by Absolute Poker.  (<u>Compare</u> Compl. ¶¶ 85-89 <u>with</u> Answer ¶¶ 86-90). Similarly, with respect to fulltiltpoker.com Kentucky alleges that "the domain registration [alleged in the Complaint] should have reflected the Commonwealth of Kentucky as the registrant for the domain" pursuant to the Franklin Circuit Court Seizure Order. (Answer ¶ 76).  Not only did Full Tilt Poker continue to use the domain name, but on October 22, 2009, the Chancery Division of the British and Wales High Court in the United Kingdom issued an Order for an Injunction and Declaratory Relief declaring that the United Kingdom would not recognize or enforce the Franklin Circuit Court Seizure Order and enjoining Safenames, Ltd., the U.K. registrar, not to transfer fulltiltpoker.com.   <u>Pocket Kings Ltd.</u> v. <u>Safenames Ltd. & Commonwealth of Kentucky</u>, [2009] EWHC (Ch) 2529.

On or about February 29, 2012, Kentucky moved in the Kentucky Action for the entry of an Order of Forfeiture with respect to 132 of the 141 internet domain names listed in the Kentucky Action Complaint.  A copy of Kentucky's motion is attached hereto as Exhibit D.  Kentucky specifically excluded the Domain Names from their motion stating, in footnote 1, that "the Commonwealth does not move for forfeiture of . . . pokerstars.com, fulltiltpoker.com, absolutepoker.com and

ultimatebet.com, *seized by the United States in the Southern District of New York*.  The Commonwealth has appeared and made claim in that matter and elects to defer disposition of those domains at this time."  (Ex. D at 2) (emphasis added).

On or about March 8, 2012, a judge of the Franklin Circuit Court issued an Order of Forfeiture of Domain Defendants (the "Kentucky Order of Forfeiture").  The Kentucky Order of Forfeiture does not include the Domain Names.  A copy of the Kentucky Order of Forfeiture is attached hereto as Exhibit E.

On or about April 6, 2012, Kentucky executed a stipulation, a copy of which is attached hereto as Exhibit F.  In the stipulation, Kentucky stipulated "that the Order of Forfeiture applies only to the domain names listed on Exhibit A attached to the Order of Forfeiture of Domain Defendants and entered by the Franklin Circuit Court, Division II, on March 8, 2012."  The Defendant Domain Names are not included.

**D.   Kentucky's Claim, Answer and Counterclaim**

On or about September 30, 2011, Kentucky filed a claim with respect to the Defendant Domain Names.  (D.E. 59 (the "Claim")).  The Claim asserts that Kentucky is "the true and bona fide sole owner of the property [the Defendant Domain Names] and entitled to possession, and that no other person is the owner of or entitled to possession" of the Defendant Domain Names.  (Claim at 1).  The Claim further contends that Kentucky "is the owner of

10

the domain names by virtue of its prior seizure of said domain names, in that certain <u>in rem</u> civil forfeiture action [the Kentucky Action]."  (<u>Id.</u> at 1-2).

On or about October 21, 2011, Kentucky filed its Answer, which included allegations labeled affirmative defenses and a counterclaim for costs, pre- and post-judgment interest, and attorneys' fees.  In its Answer, Kentucky admits that the Domain Names were used by the Poker Companies to conduct illegal activity from at least in or around November 2006 through in or about April 2011, a full two-and-a-half years after the Order of Seizure of Domain Names.  (Answer at 3).

**ARGUMENT**

**I.   KENTUCKY LACKS CONSTITUTIONAL STANDING TO FILE A CLAIM**

**A. Relevant Law**

"In order to contest a governmental forfeiture action, claimants must have both standing under the statute or statutes governing their claims and standing under Article III of the Constitution as required for any action brought in federal court."  <u>United States</u> v. <u>Cambio Exacto, S.A.</u>, 166 F.3d 522, 526 (2d Cir. 1999).  Standing is a threshold issue.  If the claimant lacks standing, the court lacks jurisdiction to consider his challenge of the forfeiture.  The burden of proof to establish sufficient standing rests with the claimant.  <u>Mercado</u> v. <u>U.S. Customs Service</u>, 873 F.2d 641, 644 (2d Cir. 1989); <u>United States</u>

11

v. One 1986 Volvo 750T, 765 F. Supp. 90, 91 (S.D.N.Y. 1991);
United States v. One 1982 Porsche 928, 732 F. Supp. 447, 451
(S.D.N.Y. 1990) (abbreviated title).  Where the claimant's own
allegations are insufficient to demonstrate standing, a motion to
strike his claim should be granted.  See United States v. $38,570
U.S. Currency, 950 F.2d 1108, 1111-13 (5th Cir. 1992) ("Unless
claimant can first establish his standing he has no right to put
the government to its proof").

     For statutory standing, a claimant in a civil
forfeiture proceeding must comply with the procedures laid out in
Supplemental Rule G.  For Article III standing, "a litigant must
allege a 'distinct and palpable injury to himself,' fairly
traceable to the 'putatively illegal conduct of the defendant,'
and likely to be redressed by the requested relief."  Torres v.
$36,256.80, 25 F.3d 1154, 1157 (2d Cir. 1994)(quotations and
citations omitted).

     In a forfeiture action, "ownership and possession
usually satisfy Article III's standing requirement because 'an
owner or possessor of property that has been seized necessarily
suffers an injury that can be redressed at least in part by the
return of the seized property.'"  Cambio Exacto, S.A., 166 F.3d
522 at 527 (quoting United States v. $515,060.42, 152 F.3d 491,
497 (6th Cir.1998)).  See also United States v. $321,470.00, U.S.
Currency, 874 F.2d 298, 303 (5th Cir. 1989).  "If the claimant

cannot show a sufficient interest in the property to give him Article III standing there is no case or controversy, in the constitutional sense, capable of adjudication in the federal courts." United States v. New Silver Palace Restaurant, Inc., 810 F. Supp. 440, 442 (E.D.N.Y. 1992) (internal quotation marks, alterations, and citations omitted).

A bare legal interest, however, without actual dominion or control of the subject property is not enough to demonstrate standing to contest the forfeiture. "Possession of mere legal title by one who does not exercise dominion and control over the property is insufficient even to establish standing to challenge a forfeiture." United States v. Nava, 404 F.3d 1119, 1130 n.6 (9th Cir. 2005). See also Cambio Exacto, S.A., 166 F.3d 522 at 527 ("[w]e have, for example, denied standing to "straw" owners who do indeed "own" the property, but hold title to it for somebody else. Such owners do not themselves suffer an injury when the property is taken") (citation omitted); United States v. Premises & Real Prop. with Bldgs., Appurtenance & Improvements at 500 Delaware St., Tonawanda, New York, 113 F.3d 310, 312 (2d Cir. 1997) (father did not have standing to contest forfeiture of home where son grew marijuana because he was merely a straw owner who did not exercise possession); United States v. Premises Known as 526 Liscum Drive, 866 F.2d 213, 216 (6th Cir. 1988) ("Because claimant presented no evidence other than that title to the

13

property was in her name, the district court correctly found that
she had failed to satisfy her burden to establish standing to
challenge the forfeiture") (abrogated by United States v. Certain
Real Prop. Located at 16510 Ashton, Detroit, Wayne County, Mich.,
47 F.3d 1465, 1471 (6th Cir. 1995) (holding that straw owners of
*real* property have right to pre-seizure notice and hearing in
forfeiture action, in part because real property "can be neither
moved nor concealed") (citations omitted) (emphasis added));
United States v. One 1982 Porsche 928, Three-Door, License Plate
1986/NJ Temp./534807 (auto.), 732 F. Supp. 447, 451 (S.D.N.Y.
1990) ("While ownership may be proven by actual possession,
dominion, control, title and financial stake, the possession of
bare legal title to the res may be insufficient, absent other
evidence of control or dominion over the property") (quotations
and citations omitted); United States v. One 1981 Datsun 280ZX,
563 F. Supp. 470, 476 (E.D. Pa. 1983) (father did not have
standing to contest forfeiture of wrongdoer's car even though the
father held legal title to the car and kept it at his house
because the son was the only one who exercised dominion and
control over the car).

Moreover, a claimant alleging ownership cannot rest on a
conclusory assertion of their ownership interest.  "A claimant is
required to submit some additional evidence of ownership along
with his claim in order to establish standing to contest the

forfeiture." <u>Torres</u>, 25 F.3d at 1158 (quoting <u>United States</u> v. <u>$38,570</u>, 950 F.2d 1108, 1113 (5th Cir.1992)). <u>See also</u> <u>United States</u> v. <u>$557,933.89, More or Less, in U.S. Funds</u>, 287 F.3d 66, 78 (2d Cir. 2002) ("[A]n allegation of ownership and some evidence of ownership are together sufficient to establish standing to contest a civil forfeiture.") (quoting <u>Torres</u>, 25 F.3d at 1158); <u>United States v. 74.05 Acres of Land</u>, 428 F. Supp. 2d 57, 63 (D. Conn. 2006) (finding that claimant had standing because he demonstrated proof of ownership in addition to possession) (quoting <u>Torres</u>, 25 F.3d at 1158).

### B.   Discussion

Kentucky has not demonstrated an interest in the Defendant Domain Names sufficient to establish constitutional standing.  Despite its conclusory assertion of ownership, Kentucky does not in fact have ownership of the Defendant Domain Names and has never exercised any actual possession, dominion, or control over the them.  As discussed above, Kentucky has filed an action in its own courts seeking the forfeiture of the Defendant Domain Names under Kentucky law, but has not obtained a judgment. The Kentucky state court has also issued an order of seizure for the Domain Names, but Kentucky has never actually seized them and, indeed, Kentucky admits that the Poker Companies continued to use the Defendant Domain Names as alleged in the Complaint for more than two-and-a-half years after the issuance of the Franklin

Circuit Court Seizure Order.

Because Kentucky has neither an ownership interest nor any actual possession, dominion, or control over the Defendant Domain Names, it lacks standing.  The Franklin Circuit Court Seizure Order, which was not successfully executed, provides even less basis to claim standing than bare legal title conferred standing to the claimants in <u>Nava</u>, 500 Delaware St., or One 1982 Porsche 928.

Because Kentucky has failed to establish ownership or possession of the Domain Names, it lacks Article III standing, and the Court should strike its claim.

## II.  THE COUNTERCLAIM SHOULD BE DISMISSED

Because Kentucky lacks standing to file a claim in this matter, it is not a party to this action and its counterclaim should also be dismissed.  But Kentucky's counterclaim would have to be dismissed in any event.

First, Kentucky's counterclaim fundamentally misapprehends the nature of this <u>in</u> <u>rem</u> proceeding.  It is the property of the Poker Companies, among others, that constitutes the defendants-<u>in</u>-<u>rem</u> in this action.  Kentucky is a claimant, not a defendant, and cannot counterclaim against the United States.[2]  "A counterclaim is an action brought by a defendant

---

[2]  While certain persons and entities have been named as in personam defendants in regard to civil money allegations, Kentucky is not among them.

against the plaintiff.  Whatever the claimants' pleading is, it
is not properly a counterclaim." United States v. $10,000.00 in
U.S. Funds, 863 F. Supp. 812, 816 (S.D. Il. 1994); see also
United States v. "Lady with a Parrot" by Nahl, 92-C-6427, 1992 WL
293287, *1 (N.D. Ill. Oct. 13, 1992) (striking counterclaim in
forfeiture action as improper).

        Second, sovereign immunity bars Kentucky's
counterclaim.  As the court explained in United States v. All
Right, Title and Interest in the Real Property and Buildings
Known as 228 Blair Avenue, Bronx, New York:

> It is well established that the United States
> Government has sovereign immunity and,
> consequently, can be sued only to the extent
> it consents to be sued, and only in the
> manner established by law.  Thus,
> counterclaims against the United States can
> be maintained only where the Government has
> consented or waived its immunity from suit on
> that claim.  . . .  Initiation of a
> forfeiture action does not constitute a
> waiver of sovereign immunity.

821 F. Supp. 893, 899 (S.D.N.Y. 1993) (citing United States v.
Mitchell, 445 U.S. 535, 538 (1980)).  See also United States v.
Lockheed L-188 Aircraft, 656 F.2d 390 (9th Cir. 1979) (government
did not waive sovereign immunity in filing an in rem forfeiture
action so the district court's dismissal of counterclaim asserted
under Tucker Act affirmed); United States v. 8,800 Pounds of
Powdered Egg White, 04 Civ. 76 (RWS), 2007 WL 2955571, *7 (E.D.
Mo. Oct. 5, 2007) (same); United States v. $10,000.00 in U.S.

Funds, 863 F. Supp. at 816 (S.D. Il. 1994) (court barred FTCA counterclaim stating "that the mere fact that the government is the plaintiff and has brought the forfeiture action does not constitute a waiver of sovereign immunity and authorize the bringing of a counterclaim").

Finally, neither 18 U.S.C. § 983 nor the Supplemental Rules for Admiralty and Maritime Claims, Rule G, provide for counterclaims in civil forfeiture proceedings.

## **CONCLUSION**

For the foregoing reasons, the Government respectfully requests that the Court enter an order striking the claim and counterclaim of Kentucky for lack of standing and also strike its counterclaim as barred by sovereign immunity and as unauthorized by statute.

Dated: New York, New York
       July 16, 2012

                              Respectfully submitted,

                              PREET BHARARA
                              United States Attorney for the
                              Southern District of New York


                      By: _____/s/_____
                              Sharon Cohen Levin
                              Michael D. Lockard
                              Jason H. Cowley
                              Assistant United States Attorney
                              (212) 637-1060/2193/2479