# EXHIBIT 3

1  COLLOT GUERARD
   cguerard@ftc.gov
2  J. RONALD BROOKE, JR.
   Jbrooke@ftc.gov
3  JANICE L. KOPEC
   jkopec@ftc.gov
4  DOTAN WEINMAN
   dweinman@ftc.gov
5  Federal Trade Commission
   600 Pennsylvania Avenue, NW, Room 288
6  Washington, DC 20580
   202-326-3338 (Guerard)
7  202-326-3484 (Brooke)
   202-326-2550 (Kopec)
8  202-326-3049 (Weinman)
   202-326-3395 (facsimile)
9
   BLAINE T. WELSH
10 blaine.welsh@usdoj.gov
   Assistant United States Attorney
11 Nevada Bar No. 4790
   333 Las Vegas Blvd. South, Suite 5000
12 Las Vegas, NV 89101
   702-388-6336
13 702-388-6787

14 *Attorneys for Plaintiff Federal Trade Commission*

15
16                    UNITED STATES DISTRICT COURT
                       FOR THE DISTRICT OF NEVADA
17

| | |
|---|---|
| 18  FEDERAL TRADE COMMISSION, | Case No. 2:10-cv-02203-MMD-GWF |
| 19  Plaintiff, | PLAINTIFF FTC'S RESPONSE SUPPORTING THE RECEIVER'S MOTION FOR ORDER CLARIFYING PRELIMINARY INJUNCTION ORDER AND FOR FURTHER INSTRUCTIONS REGARDING SCOPE OF RECEIVERSHIP DEFENDANTS UNDER PRELIMINARY INJUNCTION ORDER AND REPORT OF RECEIVER'S FINANCIAL RECONSTRUCTION AND GRANTING RELIEF FROM LOCAL RULE 66-5 PERTAINING TO NOTICE TO CREDITORS (D.E. 580) |
| 20  v. | |
| 21  JEREMY JOHNSON, *et al.* | |
| 22  Defendants. | |

27
28  FTC Response to Receiver's Motion to Clarify [DE 580]
    *FTC v. Jeremy Johnson, et al.*

1      Plaintiff Federal Trade Commission ("FTC") files this memorandum to highlight
2 additional evidence of defendant Jeremy Johnson's efforts to hide and dissipate millions of
3 dollars through transactions with inter-tangled shell companies and Johnson associates, including
4 those companies and individuals listed in Attachment A to the Receiver's Motion for Order
5 Clarifying Preliminary Injunction, Etc. ("Receiver's Motion") [D.E. 580]. To aid the Receiver
6 in recovering these funds and other Johnson assets, the FTC fully supports the Receiver's
7 Motion. After briefly summarizing the procedural history of this case, this memorandum
8 highlights evidence not cited in the Receiver's motion that further evidences the need for the
9 requested relief. This evidence includes emails, documents, and declarations of third parties that
10 show that: (1) Johnson hid his ownership and control over three companies that processed
11 online poker transactions – Triple Seven, LP, Powder Monkeys, LLC, and Mastery Merchant,
12 LLC; (2) Johnson is the *de facto* owner of Flying High Enterprises, LLC (a shell company
13 created to place recurrent charges on consumers' credit card accounts); (3) Johnson is the *de
14 facto* owner of New Horizon's Finance, Inc., and its assets which include a trailer park; (4)
15 Johnson is the *de facto* owner of a Robinson 44 helicopter and $2 million that was held in an
16 escrow account; (5) Sheree Vowell has repatriated poker processing funds from an offshore
17 bank; and (6) Global Media 7, Inc., is just another shell entity with titular owners created for the
18 apparent purpose of hiding assets.
19      Given the wealth of evidence uncovered by the Receiver and the FTC demonstrating that
20 Johnson has, via half-truths and omissions, attempted to conceal and shield millions of dollars of
21 assets that should rightfully be marshaled by the Receiver to ultimately redress his victims, the
22 Court should grant the Receiver's Motion in full, including, but not limited to, clarifying and
23 confirming that pursuant to this Court's preliminary injunction order ("PI Order") [DE 130] the
24 various entities listed in Attachment A to the Receiver's Motion are Receivership entities, and
25 that the assets of the various entities and individuals listed in Attachment A to the Receiver's
26 Motion are property of the Receivership.

FTC Response to Receiver's Motion to Clarify [DE 580]
*FTC v. Jeremy Johnson, et al.*      2

## I. Procedural History

(1) In December 2010, the FTC filed its Complaint [DE 1] alleging that defendants engaged in a massive deceptive and unfair Internet-based marketing scheme between 2006 and 2010, causing more than $275 million in unreimbursed consumer harm.

(2) In January 2011, the FTC filed an emergency motion for a temporary restraining order and order to show cause why a preliminary injunction should not issue [DE 17, 43-1], accompanied by 18 volumes of exhibits [DE 20 through DE 41-12].

(3) On January 13, 2011, the Court issued a temporary restraining order [DE 44] that, *inter alia*, froze the assets of the corporate defendants and Johnson, and appointed Robb Evans & Associates, LLC ("Robb Evans") as temporary receiver over the corporate defendants and over Johnson's assets.

(4) On February 10, 2011, the Court held a full-day hearing on the FTC's request for a preliminary injunction. After considering voluminous briefs and exhibits, and providing extended time to defendants for briefing and arguments of counsel, the Court issued a PI Order [DE 130] in which it found, *inter alia*, that there was good cause to believe that defendants had engaged and were likely to engage in law violations, that the FTC was likely to prevail on the merits of the action, that there was good cause to believe that irreparable harm would result from defendants' ongoing law violations, and that irreparable harm would result to the Court's ability to grant final monetary relief absent a freeze on the assets of Johnson and the corporate defendants.

(5) The PI Order continued the freeze on the assets of Johnson and the corporate defendants and appointed Robb Evans as permanent receiver for their assets [DE 130, Section XIV]. The PI Order required all defendants to submit to the FTC and the Receiver financial statements disclosing all assets under their control or held for their benefit, as well as tax returns for the three most recent years [DE 130, Section VIII].

FTC Response to Receiver's Motion to Clarify [DE 580]
*FTC v. Jeremy Johnson, et al.*            3

(6) On February 3, 2012, the Receiver filed its Report of Financial Reconstruction (Receiver's Second Report") [D.E. 464], detailing evidence supporting the Receiver's conclusion that "Jeremy Johnson shifted, without independent consideration, revenue sources that channeled tens of millions of dollars from his entities to entities and individuals that he controlled and with whom he colluded" and detailing how "revenue totaling approximately $51.4 million was re-routed to many other companies and individuals" [DE 464, p. 3][1] in addition to the more than $50 million Johnson realized from the IWorks scheme as previously reported by the Receiver in his Report filed on February 8, 2011 ("Receiver's First Report") [DE 127].

(7) On May 30, 2012, the Receiver filed his Motion for Order Clarifying Preliminary Injunction Order and for Further Instructions Regarding Scope of Receivership Defendants Under Preliminary Injunction Order, Etc. [DE 580]

## II. Further Evidence and Information Supporting the Receiver's Findings.

As noted in the conclusions of Receiver's Second Report, since 2009, Johnson has been engaged in a long campaign of asset concealment, including transferring millions of dollars of assets to newly-formed entities nominally owned by associates (such as Jason Vowell and Todd Vowell) and family members. In support of the Receiver's Motion, the FTC highlights six of Johnson and his associates apparent attempts at asset concealment and dissipation.

### A. Johnson is the *De Facto* Owner of Poker Processing Entities.

Johnson is the *de facto* owner of a number of entities that processed online poker transactions. These companies include Triple Seven, LP, Powder Monkeys, LLC, and Mastery Merchant, LLC ("Poker Processing Entities"). On paper, the Poker Processing Entities were managed and owned by Jason and Todd Vowell. Emails from the Vowells, however, tell a

---

[1] This included: (1) nearly $25 million routed to stock trading accounts at TD Ameritrade; (2) approximately $2.7 million routed to an offshore bank account in Cypress; and (3) approximately $6.7 million transferred from I Works to several entities owned by Todd Vowell and Jason Vowell.

FTC Response to Receiver's Motion to Clarify [DE 580]
FTC v. Jeremy Johnson, et al.                                 4

different story. For instance, in a March 29, 2010 email to defendant Scott Leavitt, Jason Vowell, admits that he is afraid that if he displeases Johnson, Johnson will shut him off from Triple Seven.[2] Furthermore, in a February 17, 2012 email to Blaze Processing, a company that connects merchants in need of credit card processing with payment processors and banks, Jason Vowell explains, that he cannot provide any banking information concerning Triple Seven without Johnson's approval.[3] Likewise, in an October 8, 2010 email, Todd Vowell requests Johnson's permission to speak directly with Sunfirst Bank staff in charge of processing the online poker-related charges in connection with a reserve account.[4]

**B. Johnson is the *De Facto* Owner of Flying High Enterprises.**

In June 2010, four months after Johnson learned of the FTC's investigation, he arranged to "sell" the IWorks billing portfolios to Flying High Enterprises and Cerberus Management, two entities created by the Vowells. These billing portfolios consisted of the account information of consumers who defendants had tricked into signing up for negative option continuity plans which included recurring monthly billing to the consumers' credit cards or bank accounts. By selling the portfolios, Johnson could claim that he was no longer collecting funds from defrauded consumers.

In reality, though, Johnson sold the billing portfolios to himself. While the purchasers of the billing portfolios were ostensibly companies controlled by the Vowells, John Hafen, and Lloyd Melling, at least one of the companies (and probably both) were controlled by Johnson. Johnson's control over Flying High is evidenced by the declaration of Ms. Danielle Darlene Andersen, an online poker player. As noted in the Receiver's Second Report, in December 2010, Flying High Enterprises transferred $65,000 to a bank in Portugal at the direction of

---

[2] *See* Declaration of Reeve Tyndall in Support of the FTC's Response Supporting the Receiver's Motion ("Tyndall Declaration") attached as Exhibit 1 ¶ 8(a).

[3] *Id.* at ¶ 8(b).

[4] *Id.* at ¶ 8(c).

FTC Response to Receiver's Motion to Clarify [DE 580]
*FTC v. Jeremy Johnson, et al.*      5

Johnson.[5] In 2012, the FTC identified Ms. Andersen as the recipient of the $65,000. In a sworn declaration filed with this memorandum, Ms. Andersen explains that Johnson transferred the $65,000 as part of a "staking" arrangement, whereby Johnson provided Ms. Andersen with additional financial backing in return for a percentage of any winnings.[6] According to Ms. Andersen, in December 2010, Johnson further "staked" her with an additional $110,000 in cash under the same staking arrangements.[7] Additionally, it was Ms. Andersen's understanding that all $175,000 was Johnson's money.[8]

Ms. Andersen's declaration is corroborated by two emails: (1) a November 12, 2010 email Johnson forwarded to Todd Vowell in which Ms. Andersen directs Johnson to transfer the money to a Portugese bank account in the name of Joao Vide Barbosa; and (2) a November 24, 2010 email from Johnson directing Todd Vowell to send the $65,000 to the Portugese bank account in the name of Joao Vide Barbosa, that Todd Vowell then forwarded to Jason Vowell.[9]

### C. Johnson is the *De Facto* Owner of New Horizons Finance, Inc.

Johnson is the *de facto* owner of New Horizons Finance, Inc., ("New Horizons") a Utah company that is supposedly owned by Johnson's brother, defendant Andy Johnson, and managed by defendant Kevin Pilon. The Receiver's First Report noted that Johnson appeared to be the true owner of New Horizons.[10] New Horizon's principal asset appears to be the Beaver Dam

---

[5] See Tab 17 of the Appendix of Exhibits (Tabs) to Report of Receiver's Financial Reconstruction [DE 465 p. 75].

[6] See Declaration of Danielle Darlene Andersen attached as Exhibit 3.

[7] Id. ¶ 3.

[8] Id. ¶ 4.

[9] See Tyndall Declaration ¶ 11.

[10] Among other things, the Receiver's First Report noted that New Horizons had transferred more than $2.2 million to IWorks, Johnson, and Johnson's company, Zibby, LLC, in the form of outside service expenses, and that loans to New Horizons from IWorks and Johnson were classified by New Horizons as capital contributions. [DE 127 p. 13.]

FTC Response to Receiver's Motion to Clarify [DE 580]
FTC v. Jeremy Johnson, et al.                               6

Trailer Park in Mohave County, Arizona.[11] While Johnson did not identify New Horizons or any of its assets as being owned by him or owned for his benefit on the signed Financial Statement he file pursuant to the Temporary Restraining Order, documents obtained by the FTC show that Johnson clearly considers himself to be the owner of New Horizons and all of its assets.[12] Between November 2007 and July 2010, Johnson claimed ownership of a Beaver Dam Trailer Park valued at $300,000 in numerous signed statements of net worth.[13] Furthermore, in a July 16, 2009 email, Johnson told a Town & Country bank official that "I also have a trailer park in Beaver Dam."[14] Furthermore, as discussed in more detail below, Johnson had revenues generated through the leasing of various aircraft sent to a New Horizon's bank account. The FTC has found nothing to suggest that Johnson sold his interest in New Horizons.

**D. Johnson Was the True Owner of a Robinson 44 Helicopter**.

Although not listed on his court-ordered financial statement,[15] Johnson owned or controlled a Robinson 44 helicopter with the tail number 34BK ("34BK").[16] The FTC has attached to this memorandum the sworn declaration of Ryan Daniel, a helicopter pilot that Johnson met in Haiti.[17] According to Mr. Daniel, in July 2010, Johnson asked Mr. Daniels if he would fly to Chicago and perform a pre-purchase inspection of 34BK.[18] Johnson told Mr. Daniels that he had

---

[11] *See* Tyndall Declaration ¶ 6(a).

[12] *Id.* at ¶ 12.

[13] *Id.* at ¶¶ 4, 5.

[14] *Id.* at ¶ 6(b). Furthermore, an August 3, 2010 email from Kevin Pilon to Johnson confirms that the Beaver Dam trailer park referenced in the statements of net worth and Johnson's July 16, 2009 email is the same piece of property supposedly owned by New Horizons. *Id.* at ¶ 7(a).

[15] *Id.* at ¶ 12.

[16] It appears that this helicopter was sold in late 2011.

[17] Declaration of Ryan Daniels ("Daniels Declaration") at ¶ 2 attached as Exhibit 4.

[18] *Id.* at ¶ 4.

FTC Response to Receiver's Motion to Clarify [DE 580]
*FTC v. Jeremy Johnson, et al.*         7

$2 million in an escrow account, and if Mr. Daniels confirmed that 34BK was in good shape, Johnson would purchase the aircraft by having $260,000 (the sale price) released from the escrow account.[19] Johnson told Mr. Daniels that he planned on buying 34BK, putting it under the name of Scud Runner, LLC, and leasing it out to third parties.[20] Johnson also told Mr. Daniels that he planned to use funds in the escrow account to purchase a bigger Robinson R66 helicopter.[21] According to Mr. Daniels, after he inspected 34BK and contacted Johnson, Johnson arranged for the money to be released to purchase 34BK.[22] After the purchase of 34BK, Johnson continued to refer to 34BK as his helicopter.[23] And, documents supplied by one of the individuals who leased 34BK shows that the lease payments were sent to a bank account in the name of Johnson's company New Horizons.[24]

### E. Sheree Vowell Has Repatriated Hundreds of Thousands of Dollars Of Poker Processing Funds Previously Sent Offshore.

It is clear that Johnson has directed that millions of dollars of assets be sent offshore. As noted in the Receiver's Second Report, more than $2.7 million of Poker Processing Entity money has been transferred to an offshore bank account in the name of Triple Seven, Inc., at FBME Bank Limited, in Nicosia, Cyprus. *See* Receiver's Second Report [DE 464 p. 70]. Furthermore, as noted in the Declaration of Brick Kane in Support of the Receiver's Motion, Johnson was personally notified by the Pacific Coast Bankers Bank, a correspondent bank that

---

[19] *Id.*

[20] *Id.* at ¶ 5.

[21] *Id.*

[22] *Id.* at ¶ 7.

[23] *Id.* ¶¶ 7, 8.

[24] *See* Tyndall Declaration at ¶ 10.

FTC Response to Receiver's Motion to Clarify [DE 580]
*FTC v. Jeremy Johnson, et al.*          8

handled overseas wire transfers for Sunfirst Bank, of these offshore wire transfers to the Triple Seven, Inc. account at FBME Bank.[25]

Now, documents obtained by the FTC show that Sheree Vowell (Todd Vowell's wife) has apparently repatriated thousands of dollars in poker processing funds from Cyprus. Bank records that Sheree Vowell provided to Blaze Processing show that on April 15, 2010, the Triple Seven, Inc. account at FBME Bank wired $180,000 to Ms. Vowell's personal Wells Fargo account.[26]

### F. Global Media 7, LLC Is Just Another Shell Company Created By Jason Vowell Presumably to Hide Assets From the Receiver's Investigation.

In his Motion, the Receiver suspects that Jason Vowell has continued to create shell companies, including Global Media 7, LLC, a limited liability company formed on January 31, 2012, in order to hide assets. The Receiver's suspicions are confirmed by Darin Hunt, the titular head of Global Media 7 since February 7, 2012.[27] As noted in the sworn declaration of FTC Investigator Tyndall attached to this memorandum, Mr. Hunt told FTC staff that he was not the real owner or manager of Global Media 7 and that he did not know what it did.[28] Mr. Hunt further stated that he had only signed the Global Media 7 documents as a favor to Jason Vowell.[29]

This Court appointed a Receiver to untangle the web of various entities created and used by Johnson and his co-defendants. This web can only be untangled by bringing the companies and

---

[25] *See* Exhibit 4 to the Declaration of Brick Kane in Support of the Receiver's Motion ("Kane Declaration"). [DE 581-1 p. 46]

[26] *See* Tyndall Declaration ¶ 9(a).

[27] *See* Kane Declaration [DE 581 ¶ 69].

[28] *See* Tyndall Declaration ¶ 3. Because Mr. Hunt had no knowledge of what the company he purportedly owns does, FTC staff are unable to confirm at this time the specific nature of the connection between Global Media 7 and the assets of Johnson.

[29] *Id.*

FTC Response to Receiver's Motion to Clarify [DE 580]
FTC v. Jeremy Johnson, et al.         9

the various assets the companies were created to hold and transfer under the control of the Receiver. Jason Vowell's continued creation of shell companies in the names of nominees, presumably to hold and transfer Johnson assets, further validates the Receiver's request for such relief.

## III. CONCLUSION

The FTC joins the Receiver's arguments regarding the scope of the receivership in this case. The receivership rightly includes all of the nominally-owned entities listed in Attachment A to the Receiver's Motion, as well as the assets of those nominally-owned entities and the individuals listed in Attachment A to the Receiver's Motion. Johnson should not be permitted to shield his assets by transferring them through a maze of corporate shells and to the accounts of his cronies. To allow Johnson to hide his assets would completely frustrate the Court's ability to grant full and effective final relief that reimburses consumers for the more than $275 million of harm inflicted by defendants.

Respectfully submitted,

Dated: July 9, 2012

/s/ *J. Ronald Brooke, Jr.*
Collot Guerard
J. Ronald Brooke
Janice Kopec
Dotan Weinman

Attorneys for Plaintiff FTC

FTC Response to Receiver's Motion to Clarify [DE 580]
*FTC v. Jeremy Johnson, et al.*            10

CERTIFICATE SERVICE

I hereby certify that I have on July 9, 2012 caused the foregoing document to be served via the ECF system on the following:

>Reza Sina, Esq.
>Sina Law Group
>801 S. Figueroa St. 12th Floor
>Los Angeles, CA 90017
>>*Attorney for defendant Scott Leavitt*
>
>Alan D. Boyack, Esq.
>Boyack & Boyack
>205 East Tabernacle, Suite 2
>St. George, UT   84770
>>*Attorney for defendants Terrason Spinks and Jet Processing*
>
>Michael P. Studebaker, Esq.
>Studebaker Law Office, LLC
>2550 Wasington Blvd., Suite 331
>Ogden, UT   84401
>>*Attorney for defendants Duane Fielding, Anthon Holdings Corp., and Network Agenda, LLC*
>
>John Christian Barlow
>444 East Tabernacle Street Building B Suite 201
>St. George UT 84770
>
>Adraina Pereyra
>8550 W. Desert Inn Road #102-124
>Las Vegas, NV 89117
>
>*Attorneys for corporate defendants: Big Bucks Pro, Inc., Blue Net Progress, Inc., Blue Streak Processing, Inc., Bolt Marketing, Inc., Bottom Dollar, Inc., Bumble Marketing, Inc., Business First, Inc., Business Loan Success, Inc., Cloud Nine Marketing, Inc., Cold Bay Media, Inc., Costnet Discounts, Inc., CPA Upsell, CS Processing, Inc., Cutting Edge Processing Inc., Diamond J. Media, Inc., EBusiness First, Inc., EBusiness Success, Inc., eCom Success, Inc., Elite Debit, Inc., Excess Net Success, Inc., Fiscal Fidelity Inc., Fitness for Life Inc., Fitness Processing, Inc., Funding Search Success Inc., Funding Success, Inc., GG Processing, Inc., GGL Rewards, Inc., Highlight Marketing, Inc., Hooper Processing, Inc., Internet Business Source, Inc., Internet Fitness, Inc., JRB Media, Inc., Internet Economy, Inc., IWorks, Inc., Inc., Life Styles for Fitness, Inc., Market Funding Solutions, Inc., Success Marketing, Inc., Mist Marketing, Inc., Money Harvest, Inc., Monroe Processing, Inc., Net Business Success, Inc., Net Commerce, Inc., Net Discounts, Inc., Net Fit Trends, Inc., Net Success, Inc., Optimum Assistance, Inc., Power Processing, Inc., Premier Performance, Inc., Pro Internet Services, Inc., Razor Processing, Inc., Rebate Deals, Inc., Revive Marketing, Inc, Simcor Marketing, Inc., Summit Processing, Inc, TranFirst, Inc., Tran Voyage, Inc., Unlimited Processing, Inc., and Xcel Processing, Inc. Andy Johnson, Loyd Johnston, Scott Muir, Bryce Payne, Kevin Pilon, Ryan Riddle and the Shell Corporations for these defendants*

FTC Response to Receiver's Motion to Clarify [DE 580]
FTC v. Jeremy Johnson, et al.                                         11

      Gary Owen Caris, Esq.
      Lesley Anne Hawes, Esq.
      McKenna Long & Aldridge LLP
      300 South Grand Avenue, 14th Floor
      Los Angeles, CA 90071
          *Attorneys for the Receiver*

      Jeremy Johnson
      529 S. Woods View Circle
      St. George, UT 84770
          *Defendant (Pro se)*

via email on the following:
      William I. Rothbard, Esq.
      1217 Yale Street, Suite 104
      Santa Monica, CA 90404
      brothbard@roadruner.com
      Bill@FTCadlaw.com

      Theodore Monroe, Esq.
      The Law Offices of Theodore F. Monroe
      801 South Figueroa Street, Suite 1200
      Los Angeles, CA 90017
      monroe@tfmlaw.com
          *Attorneys for defendant Scott Leavitt*

and by first class mail, postage prepaid on July 10, 2012:

Loyd Johnston
Kings Court Lane
Washington, Utah 84780
    *Defendant (Pro se)*

Andy Johnson
3641 Vista View Cir.
Santa Clara, Utah 84765
    *Defendant (Pro se)*

Scott Muir
618 Draper Heights Ways
Draper, Utah 84020
    *Defendant (Pro se)*

Bryce Payne
2399 East Bella Rosa Circ.
Saint George, UT 84790
    *Defendant (Pro se)*

Kevin Pilon
1975 East 1060 North

FTC Response to Receiver's Motion to Clarify [DE 580]
*FTC v. Jeremy Johnson, et al.*     12

1  Saint George, UT 84770
    *Defendant (Pro se)*

2

3  Ryan Riddle
446 East 1410 South
Washington, UT 84780

4      *Defendant (Pro se)*

5  **SPECIAL NOTICE PARTIES -- MAIL**

6  by first class mail, postage prepaid on July 10, 2012:

7  Sharla Johnson
529 Woods View Circle

8  S1. George, UT 84770

9  James D. Gilson, Esq.
Callister Nebeker & McCullough APC

10  10 East South Temple, Suite 900
Salt Lake City, UT 84133

11  *Attorney Kerry and Barbara Johnson*

12  Jason Vowell
573 South Woods View Circle

13  S1. George, UT 84770

14  Aaron D. Randall
Hughes, Thompson, Randall & Mellen, P.C.

15  187 North 100 West
Saint George, UT 84770

16

17  Matt Lewis, Esq.
Zachary Wiseman, Esq.
Ray Quinney & Nebeker

18  36 South State Street, Suite 1400
Salt Lake City, UT 84111

19  *Attorneys for the Vowell Parties (Not Including Jason and Dionna Vowell),*
*Brett Andreason, Mountain Financial, LLC and*

20  *Chateau Circle, LLC*

21  V. Lowry Snow
Jonathan P. Wentz

22  Snow Jensen & Reece
912 West 1600 South, Ste. B200

23  St. George, UT 84770
*Attorney for Liahona Youth Academy, Executive Auto Group, Inc.,*

24  *Executive Auto Sales, Inc., and Virgin Properties, LLC*

25  Jen Geiger
FDIC

26  25 Jessie Street, Suite 1400
San Francisco, CA 94105

27

28  FTC Response to Receiver's Motion to Clarify [DE 580]
*FTC v. Jeremy Johnson, et al.*       13

```
 1  Dionna Vowell
    647 Arrowhead Trail
 2  Santa Clara, UT 84765-5598

 3  James W. McConkie III, Esq.
    Prince, Yeates & Geldzahler
 4  175 East 400 South, Suite 900
    Salt Lake City, UT 84111
 5  Attorney for John Hafen, Lilhaf Holdings, LLC,
    and Tiburon Enterprises, LLC
 6
 7                          /s/ J. Ronald Brooke, Jr.
```

FTC Response to Receiver's Motion to Clarify [DE 580]
*FTC v. Jeremy Johnson, et al.*          14