```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -x
UNITED STATES OF AMERICA,          :
            Plaintiff,
                                   :
      - v -
                                   :
POKERSTARS, et al.
                                   :
            Defendants;
                                   :
                                         11 Civ. 2564 (LBS)
ALL RIGHT, TITLE, AND INTEREST IN  :
THE ASSETS OF POKERSTARS, et al.;
                                   :
            Defendants-in-rem.
                                   :

                                   :
- - - - - - - - - - - - - - - - - -x
```

**MEMORANDUM OF LAW IN SUPPORT OF GOVERNMENT'S MOTION FOR ENTRANCE OF STIPULATED ORDER OF SETTLEMENT AND ORDER FOR THE INTERLOCUTORY SALE OF PROPERTY**

PREET BHARARA,
United States Attorney for the
    Southern District of New York


Sharon Cohen Levin
Jason H. Cowley
Michael D. Lockard
Assistant United States Attorneys

- of counsel -

**Table of Contents**

PRELIMINARY STATEMENT.. . . . . . . . . . . . . . . . . . . . . . . 1

BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    A.    The Criminal Indictment of Isai Scheinberg and Others for various gambling, fraud, and money laundering offenses . . . . . . . . . . . . . . . . . . 3

    B.    The In Rem Forfeiture and Civil Money Laundering Complaint.. . . . . . . . . . . . . . . . . . . . . . 5

    C.    The Claims of Kentucky and Avoine . . . . . . . . . . 7

    D.    The Proposed Settlement With Certain Absolute Entities. . . . . . . . . . . . . . . . . . . . . . . 8

DISCUSSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

The Proposed Forfeited Absolute Assets Should be Sold to Avoid Further Depreciation of the Value of the Property.. . . . . . . 9

    A.    Relevant Law. . . . . . . . . . . . . . . . . . . . . 9

    B.    Discussion. . . . . . . . . . . . . . . . . . . . . 10

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**PRELIMINARY STATEMENT**

The Government respectfully submits this Memorandum of Law in support of its motion, pursuant to Rule G(7) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, for (1) the entrance of the proposed stipulated order of settlement between the Government and certain of the Absolute-Poker entities (these Absolute Poker entities collectively, the "Absolute Poker Settlement Group," and the proposed settlement, "Absolute Settlement," attached to the Declaration of AUSA Jason H. Cowley as Exhibit A); and (2) an order permitting the United States Marshals Service (the "USMS") to seize and conduct an interlocutory sale of all assets of the Absolute Poker Settlement Group (the "Proposed Forfeited Absolute Assets"), with the net proceeds generated by such sale to be held by the Government as substitute res for ongoing litigation with the two claimants – Avoine - Servico De Consultadoria E Marketing, LDA ("Avoine") and the Commonwealth of Kentucky ("Kentucky") – who have asserted an interest in the Proposed Forfeited Absolute Assets, or such other relief as the Court may deem to be just and proper.  Kentucky and the Absolute Poker Settlement Group consents to this motion.  Avoine opposes the motion.

Since the date of filing of the Amended Complaint, the Proposed Forfeited Absolute Assets have remained in the custody of Absolute Poker, with the exception of any funds held in

accounts that were restrained as part of the restraining order entered in United States v. Scheinberg, et al., S3 10 Cr. 336 (LAK) on or about April 18, 2011.  The Government and the Absolute Poker Settlement Group have entered in a proposed Stipulation of Settlement (the Absolute Settlement), which provides for the forfeiture of the Proposed Forfeited Absolute Assets to the United States.

Kentucky and Avoine, however, have also asserted ownership interests in the Proposed Forfeited Absolute Assets. Specifically, Avoine asserts an interest in all assets of Absolute Poker, while Kentucky asserts an interest in certain Absolute Poker-related domain names – specifically, absolutepoker.com and ultimatebet.com (the "Absolute Domains").

Many of these assets, including, for example the Absolute Domains, the database of players for Absolute Poker, and certain other intellectual property will likely continue to substantially decrease in value if not sold soon.  In order to address this concern, the Government now moves for the entry of the Absolute Settlement, forfeiting the Absolute Poker Settlement Group's interest in the Absolute Assets, and for an Interlocutory Order of Sale permitting the sale of the Proposed Forfeited Absolute Assets.  Any and all net proceeds realized from the sale of the Proposed Forfeited Absolute Assets would, pursuant to Rule G(7)(b)(iv) of the Supplemental Rules for Admiralty or Maritime

Claims and Asset Forfeiture Actions, be held in "an interest-bearing account maintained by the United States pending the conclusion of the forfeiture action" as it relates to Kentucky and Avoine.

## BACKGROUND

**A.   The Criminal Indictment of Isai Scheinberg and Others for Various Gambling, Fraud, and Money Laundering Offenses**

On or about March 10, 2011, a superseding indictment, S3 10 Cr. 336 (LAK) (the "Indictment") was filed under seal in the Southern District of New York, charging Isai Scheinberg, Raymond Bitar, Scott Tom, Brent Beckley, Nelson Burtnick, Paul Tate, Ryan Lang, Bradley Franzen, Ira Rubin, Chad Elie, and John Campos with conspiring to violate the Unlawful Internet Gambling Enforcement Act ("UIGEA"), 31 U.S.C. § 5363, in violation of Title 18, United States Code, 371; violating the UIGEA; operating illegal gambling businesses, in violation of Title 18, United States Code, Sections 1955 and 2; conspiring to commit wire fraud and bank fraud, in violation of Title 18, United States Code, Section 1349; and conspiring to launder money, in violation of Title 18, United States Code, Section 1956(h).

As set forth in the Indictment, from at least in or about November 2006, the three leading internet poker companies doing business in the United States were PokerStars, Full Tilt Poker, and Absolute Poker/Ultimate Bet (collectively, "the Poker Companies").  (Ind. ¶ 1).  PokerStars, headquartered in the Isle

of Man, provided real-money gambling through its website, pokerstars.com, to United States customers.  PokerStars did business through several privately held corporations and other entities.  (Ind. ¶ 4).  Full Tilt Poker, headquartered in Ireland, provides real-money gambling through its website, fulltiltpoker.com, to United States customers.  Full Tilt Poker did business through several privately held corporations and other entities.  (Ind. ¶ 5).  Absolute Poker, headquartered in Costa Rica, provided real-money gambling through its websites, absolutepoker.com and ultimatebet.com, to United States customers.  Absolute Poker did business through several privately held corporations and other entities.  (Ind. ¶ 6).

As described in the Indictment, because internet gambling businesses such as those operated by the Poker Companies were illegal under United States law, internet gambling companies, including the Poker Companies, were not permitted by United States banks to open bank accounts in the United States to receive proceeds from United States gamblers.  Instead, the principals of the Poker Companies operated through various deceptive means designed to trick United States banks and financial institutions into processing gambling transactions on the Poker Companies' behalf.  (Ind. ¶ 16).

For example, as described more fully in the Indictment, the defendants, and others, worked with and directed others to

4

deceive credit card issuers and to disguise poker payments made using credit cards so that the issuing banks would process the payments.  (Ind. ¶¶ 17-18).  These deceptive and fraudulent practices included, for example, creating phony non-gambling companies that the Poker Companies used to initiate the credit card charges (Ind. ¶ 19), and creating pre-paid cards designed for United States gamblers to use to transfer funds to the Poker Companies and other gambling companies, with the purpose of the cards disguised by fake internet web sites and phony consumer "reviews" of the cards making it appear that the cards had some other, legitimate, purpose.  (Ind. ¶ 20).

In addition, as described more fully in the Indictment, the defendants, and others, worked with and directed others to develop another method of deceiving United States banks and financial institutions into processing their respective Poker Companies' internet gambling transactions through fraudulent e-check processing.  (Ind. ¶ 21).  The Poker Companies used poker processors to establish payment processing accounts at various United States banks and disguised from the banks the fact that the accounts would be used to process payments for internet poker transactions by making the transactions appear to relate to phony internet merchants.  (Ind. ¶¶ 22-26).

**B.     The In Rem Forfeiture and Civil Money Laundering Complaint**

On or about April 14, 2011, the United States commenced the instant action against the Defendant Property by filing, under seal, a Verified Complaint, 11 Civ. 2564 (LBS) in the United States District Court for the Southern District of New York, seeking the forfeiture of certain properties, including all assets of Absolute Poker (the "Absolute Poker Assets"), pursuant to Title 18, United States Code, Sections 1955(d), 981(a)(1)(A), and 981(a)(1)(C), and seeking civil money laundering penalties pursuant to Title 18, United States Code, Section 1956 against, inter alia, Absolute Poker, Ultimate Bet, SGS Systems Inc., Trust Services Ltd., Fiducia Exchange Ltd., Blue Water Services Ltd., Absolute Entertainment, S.A. and Blanca Games, Inc. of Antigua (collectively, "Absolute Poker").  Subsequently, on or about September 22, 2011, a verified amended complaint in this action (the "Amended Complaint") was filed seeking the forfeiture of, inter alia, all assets of Absolute Poker, and seeking civil money laundering penalties pursuant to Title 18, United States Code, Section 1956 against Absolute Poker.

On or about October 31, 2011, Blanca Games, Inc., on behalf of itself and Absolute Poker, SGS Systems Inc., Trust Services Ltd., Fiducia Exchange, Ltd., Blue Water Services Ltd., and Absolute Entertainment, S.A., filed a claim asserting an interest in the Absolute Poker Assets.

**C.   The Claims of Kentucky and Avoine**

On or about September 30, 2011, Kentucky filed a claim (the "Kentucky Claim") with respect to, inter alia, absolutepoker.com and ultimatebet.com (the Absolute Domains). (Docket Entry 59).[1]  The Kentucky Claim asserts that Kentucky is "the true and bona fide sole owner of the [Absolute Domains] . . . and entitled to possession, and that no other person is the owner of or entitled to possession of the" Absolute Domains. Kentucky Claim at 1 (emphasis added).  The Claim further stated that Kentucky "is the owner of the domain names by virtue of its prior seizure of said domain names, in that certain in rem civil forfeiture action, styled Commonwealth of Kentucky, ex rel. J. Michael Brown, Secretary Justice and Public Safety Cabinet v. 141 Internet Domain Names, 08-CI-1409."  Claim at 1-2.  On or about October 21, 2011, Kentucky filed an answer to the Complaint. (Docket Number 78).

On or about January 5, 2012, Avoine filed a claim (the "Avoine Claim") for what appears to be the Absolute Poker Assets in their entirety.  (Docket Number 150).  The Avoine Claim is premised on the assertion that the assets of an entity named SGS (BVI) Inc. were assigned to Avoine in or about 2007.  Avoine

---

[1] Kentucky has not asserted an interest in the domain name ub.com, which is also named as defendant <u>res</u> in the Complaint.

Claim at 1. On or about March 9, 2012, Avoine filed its answer. (Docket Number 168).

On or about July 9, 2012, the Government filed a motion to strike the Avoine Claim (D.E. 197).

**D.   The Proposed Settlement with Certain Absolute Entities**

The Government and certain entities affiliated with Absolute Poker have entered into a proposed settlement regarding this action (the Absolute Settlement). The following entities affiliated with Absolute Poker are parties to the Absolute Settlement:

1. Absolute Poker
2. Ultimate Bet
3. Absolute Entertainment, S.A.
4. Blanca Games, Inc.
5. Hoop & Javelin Holdings Limited
6. Lacrosse Holdings Limited
7. Hoop Payment Solution Services Ltd.
8. Morning Bliss Overseas Ltd.

(Collectively, the "Absolute Poker Settlement Group"). The Absolute Settlement provides for the forfeiture of all assets of the Absolute Poker Settlement Group (the "Proposed Forfeited Absolute Assets").

The Proposed Forfeited Absolute Assets include the following:

       1.    The following domain names: "Absolutepoker.com;" "Ultimatebet.com;" and "Ub.com;"

       2.    Funds on deposit at various financial institutions held in the name of the Absolute Poker Settlement Group;

       3.    Receivables owed by various entities to the Absolute Poker Settlement Group;

       4.    Various hardware assets owned by the Absolute Poker Settlement Group; and

       5.    Various registered patents, other intellectual property, trademarks, and trade names of the Absolute Poker Settlement Group.

## DISCUSSION

**The Proposed Forfeited Absolute Assets Should Be Sold To Avoid Further Depreciation of the Value of the Property**

**A.   Relevant Law**

The interlocutory sale of defendant <u>rem</u> is permitted by Rule G(7) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, Federal Rules of Civil Procedure ("Rule G(7)"), which provides in part that "on motion by a party or a person having custody of the property, the court may order all or part of the property sold if . . . the property is perishable or at risk of deterioration, decay, or injury by being detained in custody pending the action . .."  Rule G(7)(b)(i)(A).  The proceeds of the sale "are a substitute res

subject to forfeiture in place of the property that was sold." Rule G(7)(b)(iv).  "The proceeds must be held in an interest bearing account maintained by the United States pending the conclusion of the forfeiture action."  Id.  "The purpose of an interlocutory sale of property in a civil forfeiture action is to preserve the monetary value of the seized property."  United States v. $1,133,648.97 seized from Bank of Hawaii, 2008 WL 687337, at *3 (D. Hawai'i March 11, 2008).  "The interlocutory sale does not require a showing of a likelihood of success on the merits."  Id., citing Rule G(7)(b).

**B.   Discussion**

An interlocutory sale of the Proposed Forfeited Absolute Assets in essential to avoid their depreciation.  In relation to this matter, the Government has retained Duff & Phelps LLC ("Duff & Phelps"), a leading provider of, among other things, corporate asset valuation.  Jaime d'Almeida, a Director at Duff & Phelps, has provided a declaration relating to the Proposed Forfeited Absolute Assets (the "d'Almeida Declaration," attached as Exhibit B to the Declaration of AUSA Jason H. Cowley).  As explained in the d'Almeida Declaration, the value of the intangible assets of the Absolute Poker Settlement Group will continue to decline in value the longer that the Absolute Poker-branded business does not operate.  d'Almeida Declaration ¶ 11.  As d'Almeida explains:

> It is well understood that the value of intangible assets deteriorates over time. Absolute Poker and Ultimate Bet's intangible assets are precisely the types of assets that would be valued for accounting purposes in the context of a Purchase Price Allocation and amortized over time, recognizing that the value of these assets deteriorates over time.

Id.  As d'Almeida explains, this includes specifically the player list for Absolute Poker and software technology affiliated with Absolute Poker.  Id. at ¶ 12-13.

On the other side of the ledger, the interlocutory sale of the Proposed Forfeited Absolute Assets does not prejudice Avoine.  On the contrary, by selling the Proposed Forfeited Absolute Assets before further deterioration of their value during the pendency of this litigation, the liquidation will result in more money being held as substitute res for their claims.

**CONCLUSION**

For the reasons set forth above, the Government respectfully requests that the Court (1) enter the Absolute Settlement; and (2) enter an order authorizing the United States Marshals Service to take custody of the Absolute Assets and conduct an interlocutory sale of those assets. A proposed order is attached hereto.

Dated:   New York, New York
         July 31, 2012

                              Respectfully submitted,

                              PREET BHARARA
                              United States Attorney for the
                              Southern District of New York
                              Attorney for the Plaintiff
                              United States of America


                         By:     /s/
                              Sharon Cohen Levin
                              Michael D. Lockard
                              Jason H. Cowley
                              Assistant United States Attorney
                              (212) 637-1060/2193/2479