# Exhibit B

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
———————————————————— X

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No. 11-CV-2564 (LBS) |
| Plaintiff, | : | |
| v. | : | **DECLARATION OF** |
| POKERSTARS, et al, | : | **JAIME D'ALMEIDA** |
| Defendants, | : | |
| ALL RIGHT, TITLE AND INTEREST IN THE ASSETS OF POKERSTARS, et al. | : | |
| | : | |
| Defendants-in-rem. | : | |

———————————————————— X

    Jaime d'Almeida, deposes and says, and pursuant to Title 28, United States Code, Section 1746, declares, under penalty of perjury, that the following is true and correct:

1. Duff & Phelps, LLC ("Duff & Phelps") has been retained by the U.S. Department of Justice in connection with the above-captioned action. Duff & Phelps Corporation (NYSE: DUF) is a leading provider of independent financial advisory and investment banking services, principally in the areas of valuation, transactions, financial restructuring and dispute consulting. Duff & Phelps Corporation has more than 1,200 employees worldwide through offices in North America, Europe and Asia. Duff & Phelps Corporation and its affiliated entities are collectively referred to in this affidavit as "D&P."

2. I am a professional with over 15 years of financial analysis experience, which includes advising clients in security and business valuation, valuation of intangible assets, solvency analysis, commercial disputes or litigation, corporate finance, mergers and acquisitions, investment decision making, performing independent fundamental research and due

diligence, strategic planning and financial analysis. I hold an M.B.A. from F.W. Olin Graduate School of Business at Babson College, where I am also an Adjunct Lecturer for the M.B.A program in the Finance Department. I hold a B.S. in Electrical Engineering and Engineering & Public Policy from Carnegie Mellon University, and I also hold the Accredited Senior Appraiser designation granted by the American Society of Appraisers ("ASA").

3. As a practitioner, I have analyzed hundreds of businesses and assets, including performing detailed studies of their historical and projected performance for purposes of valuation, Purchase Price Allocation (i.e., intangible assets valuations), solvency analysis, investment considerations, advising on financing strategy, merger and acquisition analysis, financial restructuring, dispute resolution, and other analyses. I have been involved with companies in several industries including but not limited to gaming and entertainment, manufacturing, distribution, life sciences, biotechnology, technology (hardware and software), financial services, professional services, utilities, and telecommunications.

4. Additionally, I have provided consulting and expert services to numerous attorneys and companies on matters of business modeling and projecting, valuation, solvency, damages, corporate finance, and other matters. I have given presentations on valuation and solvency to business groups and law firms.

5. My curriculum vitae is attached as Appendix A to this declaration.

6. I submit this declaration in connection with the Government's application for approval of: (a) the interlocutory sale of the assets of the Absolute Poker, Ultimate Bet, Absolute Entertainment, S.A., Blanca Games, Inc., Hoop & Javelin Holdings Limited, Lacrosse

Holdings Limited, Hoop Payment Solution Services Ltd., and Morning Bliss Overseas Ltd. (collectively, the "Absolute Poker Group"), and (b) the Stipulation and Order of Settlement with Respect to Absolute Poker (the "Settlement Agreement").

7. Pursuant to the Settlement Agreement, the Absolute Poker Group has agreed that all assets, including property of all kinds, real and personal, tangible and intangible, goodwill, right or non-physical resources of the Absolute Poker Group will be forfeited to the United States, for disposition according to law, pursuant to 18 U.S.C. § 981. Blanca Games, Inc. ("Blanca Games" or the "Company"), which principally operated the Absolute Poker companies, is a claimant to assets restrained, seized or referenced in the Verified First Amended Complaint ("Amended Complaint") in this action.

8. It is further my understanding that Avoine Serviço de Consultadoria e Marketing, LDA ("Avoine") has filed a claim in this action, asserting an interest as an "innocent owner" in certain of the assets the Absolute Poker Group has agreed to forfeit to the United States. It is my further understanding that Avoine objects to the interlocutory sale by the United States of any assets of the Absolute Poker Group until its claim is resolved.

9. In connection with this declaration I reviewed publicly-available information and held discussions with:
   - Paul Leggett, Chief Operating Officer, Blanca Games
   - Jerry Bernstein, Blank Rome LLP, counsel to Blanca Games

10. On April 15, 2011, the Government instituted the instant forfeiture action relating to Blanca Games, and other internet poker operators. Almost immediately thereafter, Blanca Games

effectively ceased its gaming operations. More recently, Blanca Games's Absolute-Poker related gaming license with the Kahnawake Gaming Commission lapsed.

11. During the period since Blanca Games effectively ceased its gaming operations in April 2011, certain assets of the Absolute Poker Group have begun to deteriorate in value. Prior to that date, Blanca Games' Absolute Poker and Ultimate Bet businesses, combined, represented one of the top ten online poker gaming companies in the world (based on number of players and active cash games). The value of Absolute Poker and Ultimate Bet included their brands, trademarks, Domain Names, customers lists and software technology (together the "intangible assets"). As time passes with no play on either site, the value of the intangible assets diminishes. It is well understood that the value of intangible assets deteriorates over time. Absolute Poker and Ultimate Bet's intangible assets are precisely the types of assets that would be valued for accounting purposes in the context of a Purchase Price Allocation and amortized over time, recognizing that the value of these assets deteriorates over time.

12. For example, as of April 2011, Blanca Games maintained an updated player list for the more than six million players worldwide who frequented the Absolute Poker and Ultimate Bet sites. This player list is essentially Blanca Games' confidential customer list. It includes demographic information, as well as performance information such as games played, winnings, and frequency of games played. This player list will have value to operators of competing internet poker sites located outside the United States, where such activity is legal. However, such a player list is of value to another operator only to the extent it is current and accurate. Thus, the value of Blanca Games' player list to a potential purchaser diminishes as time passes, as the list becomes increasingly outdated.

13. Similarly, the software technology underlying both Absolute Poker and Ultimate Bet has been developed over a ten year period and represents the core logic underlying the various games and features previously available on the Absolute Poker and Ultimate Bet sites. The software technology includes load support, reporting features, shuffling algorithms, security features, cross-platform support (i.e., both Mac and PC), and logic for various games types. As time passes the value of the software technology reduces as it gets closer to the end of its remaining useful life. As new games become popular, operating systems change, and security improvements are available the value of the existing software technology reduces.

14. In short, if liquidation of the Absolute Poker Group's assets is blocked at this time, these intangible assets will continue to deteriorate in value.

_____
Jaime C. d'Almeida, ASA

Sworn to me before this

___ day of July 2012

_____
Notary Public



REGINA M. GAYNOR
Notary Public
COMMONWEALTH OF MASSACHUSETTS
My Commission Expires
May 16, 2019

# Appendix A

# APPENDIX A





225 Franklin Street, 21st Floor
Boston, Massachusetts 02110
Tel: 617.378.9445
Fax: 617.830.6052
Cell: 617.799.4413
jaime.dalmeida@duffandphelps.com

## JAIME C. D'ALMEIDA

| | |
|---|---|
| **Position** | Director, Duff & Phelps, LLC |
| **Education** | M.B.A. – Entrepreneurship, FW Olin Graduate School of Business<br>Babson College<br><br>B.S. – Electrical Engineering/Engineering & Public Policy<br>Carnegie Mellon University |
| **Professional Affiliations** | Adjunct Lecturer, Babson College, F. W. Olin Graduate School of Business<br><br>Accredited Senior Appraiser, American Society of Appraisers |
| **Professional Summary** | Jaime d'Almeida is a Director in the Boston office of Duff & Phelps, and is part of the Dispute and Legal Management Consulting Practice. Jaime has managed over 100 valuation engagements, and has over 15 years of experience in economic and valuation analysis and consulting.<br><br>Jaime participates in projects providing financial, economic and business advice to clients in connection with litigation and other disputes related to shareholder and appraisal rights, preference and fraudulent conveyance actions, breach of contract, fidelity and fraud investigations, merger and acquisition disputes, patent, and copyright and trademark disputes.  Jaime has been involved in numerous dispute matters and has advised clients on a wide variety of topics including: asset-backed securities, business valuation, solvency, financial analysis, fairness opinions, commercial and economic damages, and analysis of complex financial structures.  Prior to joining Duff & Phelps, Jaime was a Senior Manager at Ernst & Young in their Valuation and Business Modeling group. In prior positions he was a Manager of Economic and Regulatory Policy for Cable & Wireless' operating companies in the Caribbean region. In that role he developed product profitability analyses, valuation models and economic cost models for business and regulatory applications in the telecommunications industry. He also participated in negotiations of liberalization agreements with international governments, set up regulatory regimes, and developed regulatory strategy. Prior to Cable & Wireless, Jaime was a Consultant at National Economic Research Associates where he provided litigation and regulatory support in the telecommunications industry on topics including antitrust analysis, economic cost models, damage estimations, market entry issues, and economic analyses of modernizing telecommunications networks. Jaime has also worked at the Massachusetts Department of Public Utilities as an analyst in the telecommunications sector. |

**Selected Dispute Experience**

- California Superior Court, provided trial and deposition testimony and submitted Expert Report on the valuation of common stock in an internet software and services company with a complex capital structure, *Kenneth Barton v. RPost International Limited, et al.* (YC061581).

- New York Supreme Court, provided trial testimony and submitted Expert Report on the valuation of preferred securities issued by an automotive industry supplier emerging from Chapter 11 bankruptcy, *Deutsche Bank Securities et al., v. Lexington Drake L.P. et al.* (603051/2008).

- Delaware Court of Chancery, provided deposition testimony and submitted Expert and Rebuttal Expert reports on the valuation of preferred and common stock in a health services company, *In Re Levinhar, et al. v. MDG Medical, Inc.* (C.A. No. 4301-VCS).

- Delaware Court of Chancery, submitted Expert Report on the valuation of a commercial and residential power services firm, *In Re McBride America, Inc. a Delaware corporation, Assignor, To: LH Limited, LLC, Assignee* (C.A. No. 5472-VCN).

- Retained as testifying expert in an arbitration concerning the value of a landfill operation in Massachusetts (settled before testimony).

- United States Bankruptcy Court, Southern District of New York, Expert and Rebuttal Expert Reports of Dr. Steven Pomerantz regarding red flags or warning signs under the customs and practices of the investment management industry. *Irving H. Picard, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, v. Saul B. Katz et al.* (11-CV-03605 (JSR) HBP).

- Federal Court of Australia (Sydney), Expert and Reply Reports of James K. Finkel regarding risks, attributes and customary practices associated with synthetic collateralized debt obligations ("CDO"s).

- Provided consulting services related to performance of residential mortgages and residential mortgage backed securities ("RMBS") in the context of an RMBS dispute.

- North Carolina Superior Court, Expert and Rebuttal Reports of Paul Marcus regarding damages arising from a post-purchase dispute over representations and warranties related to certain customers of a company in the power protection industry.

- United States Bankruptcy Court, District of Delaware, Expert Report of Tim Luehrman with respect to valuation and solvency analyses of a company in the commercial real estate industry.

- Delaware Court of Chancery, Expert Report of John Levitske regarding damages arising from a post-purchase dispute over representations and warranties related to the customer base of a company in the oil and gas field services industry.

- United States District Court, Northern Division of Georgia, Expert Report of Tim Luehrman with respect to valuation and solvency analyses in a fraudulent conveyance claim of a company in the energy industry.

- Lipper Convertibles L.P. NASD Arbitration. Arbitration proceeding regarding hedge fund valuation practices.

- United States District Court Southern District of New York, John R. Black v. Harlan S. Levinson, Expert Report of Mark Gallagher regarding the valuation of damages of a company in the home furnishings industry.

- CPR Institute for Dispute Resolution Arbitral Tribunal, Rebuttal Affidavit of William E. Taylor in Arbitration V between BellSouth Telecommunications and Supra Telecommunications & Information Systems.

- United States Bankruptcy Court, Northern District of Illinois, Eastern Division Telesphere Liquidating Trust vs. Francesco Galesi, Adv. Proc. Nos. 95 A 1051 & 99 A 131: expert opinion of William E. Taylor regarding the condition of alternative operator service provider and 900 service markets.
- United States District Court, District of Nevada (Case No. CV-S-99-1796-KJD(RJJ) on behalf of Broadwing Communications Services, Inc., affidavit of William E. Taylor regarding damages from alleged misuse of trade secret information.
- Expert Report: Shared Tenant Service Provider Market Penetration Analysis, William E. Taylor, on behalf of Bell Atlantic.

**Select Advisory Experience**

- Advised examiner with respect to valuation and solvency of Lehman Brothers on behalf of the examiner appointed by the US Bankruptcy Court while acting as the lead financial advisor. Focused on asset-based securities, equity and debt instruments, liquidity and capital structure.
- Consulted a major consumables firm on solvency and litigation implications of a potential spin-off of certain assets.
- Consulted government agency on the value of an online gaming business.
- Valued the total equity of numerous private companies, included private equity and venture capital backed companies, and allocated value to each class of stock using contingent claims analysis. Includes companies across multiple industries.
- Valued intellectual property and intangible assets such as customer relationships, brand names, technologies, and IPR&D in connection with post-transaction purchase price allocations across multiple industries.
- Valued technology and industrial businesses for the purpose of goodwill impairment testing under SFAS 142.
- Performed valuation analyses for various reporting units of a diversified manufacturing and services company (with $40 billion in revenue) in connection with impairment testing pursuant to SFAS 142.
- Prepared valuation analysis of intellectual property, including life science patents, for counsel of multinational life sciences company ($1.5 billion in revenue) for purposes of a proposed transaction.
- Prepared third-party valuation analyses as mediator for a dispute involving a retail sporting goods firm.
- Prepared sell-side advisory valuation analysis of total invested capital of a chemicals manufacturer for purposes of strategic planning.
- Prepared sell-side valuation analyses of high tech patent portfolio for purposes of evaluating an offer.
- Prepared sell-side valuation analyses of patent applicable to the construction and engineering industry for purposes of strategic planning.

**Select Regulatory Experience**

- Before the Federal Communications Commission, WC Docket No. 03-135, Iowa Telecommunications Service, Inc., Tariff FCC No. 1, cost model for the forward-looking costs of interstate switched access.

- Rebuttal Declaration of Timothy J. Tardiff on the use of the HAI, Release 5.3 Model for unbundled network elements costs, prepared for filing with the California Public Utilities Commission on behalf of SBC California, Application Nos. 01-02-024, 01-02-035, 02-02-031, 02-02-032, and 02-03-002.

- Canadian Radio-Television and Telecommunications Commission (Public Notice CRTC 2001-37) on behalf of Aliant Telecom Inc., Bell Canada, MTS Communications Inc., and Saskatchewan Telecommunications: "Price Cap Review and Related Issues."

- Surrebuttal Testimony of Howard Shelanski and Timothy J. Tardiff on economic principles for determining the costs of unbundled network elements, prepared for filing with the Federal Communications Commission on behalf of Verizon-Virginia, CC Docket Nos. 00-218, 00-249, and 00-251.

- Before the Massachusetts Department of Telecommunications and Energy, testimony on behalf of Verizon New England Inc. d/b/a/ Verizon Massachusetts, regarding benefits of alternative regulation in Massachusetts since adoption of price cap plan.

- The New Jersey Board of Public Utilities (Docket No. TO01020095), on behalf of Verizon-New Jersey, panel testimony regarding subsidies and measurement of economic cost.

- Prepared for Inforcomm Development Authority of Singapore, "White Paper on Rate Rebalancing Methodology."

- Delaware Public Service Commission (PSC Docket No. 00-205), on behalf of Bell Atlantic-Delaware, direct testimony regarding intercarrier compensation for Internet-bound traffic in arbitration with Focal Communications Group

- Pennsylvania Public Utility Commission (Docket Nos. A-310200F0002, A-311350F0002, A-310222F0002, A-310291F0003), on behalf of Bell Atlantic Corporation and GTE Corporation, rebuttal testimony of William E. Taylor regarding economic issues raised in the proposed merger of Bell Atlantic and GTE.

- The New Jersey Board of Public Utilities (OAL DOCKET Nos. PUCOT 11269-97N, PUCOT 11357-97N, PUCOT 01186-94N AND PUCOT 09917-98N) on behalf of Bell Atlantic - New Jersey: economic issues regarding alleged subsidization of payphone services.

- Comisión Federal de Telecomunicaciones de México ("Cofetel"), "Economic Parameter Values in the Telmex Price Cap Plan," arbitrator's report on behalf of COFETEL and Telmex regarding the renewal of the price cap plan for Telmex.

- Before the Virgin Islands Public Service Commission, on behalf of the Virgin Islands Telephone Company: testimony of Kenneth Gordon regarding the Industrial Development Corporation tax benefit.

- Before the Vermont Public Service Board, on behalf of Bell Atlantic-Vermont: rebuttal testimony of Kenneth Gordon regarding economic consequences of granting CTC's request to allow assignment of BA-VT retail contracts without customer penalty or termination charges.

- Before the Virgin Islands Public Service Commission, on behalf of VITELCO: testimony of Kenneth Gordon on use of consultants by regulatory commissions; benefits of incentive regulation and treatment of tax benefits.

| | |
|---|---|
| **Presentations, Publications & Articles** | • "FDIC Professional Liability Claims: Lack of Ethics and Accountability or Poor Business Judgement," Duff & Phelps' Experts and Legal Management Insights, November 2011, with Terence Rodgers and William Hrycay.<br><br>• "Takeaways from Gallagher v. Commissioner," Duff & Phelps Client Alert, August 15, 2011.<br><br>• "Intellectual Property Valuation and Damages: Insights and Emerging Issues," June 2011.<br><br>• "From the Parlor to the Courtroom: The Use of A Company-Specific Risk Premium in Valuations," The Value Examiner, March/April 2011, with Seth Fliegler.<br><br>• "Stock Options: Valuations for Financial and Tax Reporting," presentation for graduate class at Babson College, October 19, 2010.<br><br>• "Churchill on Bilski," Duff & Phelps Client Alert, July 15, 2010, with Chris Bakewell.<br><br>• "Stock Option Valuations: What Survives Review," presentation at CPA Seminar, June 17, 2010.<br><br>• "The Madoff Mess One Year Later," presentation at the Massachusetts Continuing Legal Education, Inc., March 31, 2010.<br><br>• "Valuing Distressed Companies," presentation to Boston Bar Association, September 2009.<br><br>• "Verizon Delaware: Infrastructure Development 1993-2002," with William Taylor, July 17, 2003.<br><br>• Prepared for Compañía Dominican de Teléfonos (Codetel), "Telecommunications Industry in the Dominican Republic: An Assessment of Codetel's competitors and the competitive environment" confidential report, (with Agustin Ros, Christian Dippon, Wayne Olson and Enrique Torres), June 2003.<br><br>• Pennsylvania Public Utility Commission, on behalf of Bell Atlantic-Pennsylvania: A report entitled "Promises Fulfilled Again; Bell Atlantic-Pennsylvania's Infrastructure Development." November, 2002 (with William E. Taylor, and Charles J. Zarkadas).<br><br>• "Review of CostQuest Associates' Benchmarking Survey," with William Taylor, Greg Houston, Tom Hird, Augustine Ros, and Carol Osborne, May 2002.<br><br>• "The 'Specific Cost' Element Contained in Telstra's ULLS Price: A Report for Gilbert & Tobin and One Tel," with Greg Houston, Nina Shore, and Adrian Buckle, May 2001.<br><br>• "An Economic Evaluation of Network Cost Models" August 7, 2000. Report evaluating and explaining economic principles underlying Telcordia's SCIS and CCSCIS network cost models.<br><br>• Pennsylvania Public Utility Commission, on behalf of Bell Atlantic-Pennsylvania: A report entitled "Promises Fulfilled; Bell Atlantic-Pennsylvania's Infrastructure Development." Filed January 15, 1999 (with William E. Taylor, Charles J. Zarkadas, and Agustin J. Ros).<br><br>• "ISDN Incentives: Regulation and ISDN" with Kenneth Gordon, Harvard Information Infrastructure Project, October, 1998. |