```
USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7-31-12
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA,

          Plaintiff,

      - v. -

POKERSTARS, et al.,

         Defendants;

ALL RIGHT, TITLE AND INTEREST IN
THE ASSETS OF POKERSTARS, et al.,

    Defendants-in-rem.

- - - - - - - - - - - - - - - - x

STIPULATION AND ORDER OF
SETTLEMENT REGARDING
POKERSTARS

11 Civ. 2564 (LBS)

        WHEREAS, on or about April 14, 2011, a verified complaint, 11 Civ. 2564 (LBS) (the "Complaint") was filed under seal in the United States District Court for the Southern District of New York seeking the forfeiture of, among other things, all assets of PokerStars, the Oldford Group Ltd., Rational Entertainment Enterprises Ltd., PYR Software Ltd., Stelekram Ltd., and Sphene International Ltd. (collectively the "PokerStars Companies," their assets collectively the "PokerStars Defendant Property") pursuant to Title 18, United States Code, Sections 1955(d), 981(a)(1)(A), and 981(a)(1)(C) (the PokerStars Defendant Property and together with the other *in rem* defendants named in the Complaint collectively, the "Defendant Property"), and seeking civil money laundering penalties pursuant to Title 18, United States Code, Section 1956 against the PokerStars Companies;

WHEREAS, on or about May 27, 2011, the United States provided notice of the filing of the Complaint to the PokerStars Companies by and through their counsel, David M. Zornow, Esq. of Skadden, Arps, Slate, Meagher & Flom LLP;

WHEREAS, on or about July 4, 2011, PYR Software Ltd. waived service of the Complaint and Summons;

WHEREAS, on or about July 5, 2011, the remaining PokerStars Companies waived service of the Complaint and Summons;

WHEREAS, on or about September 21, 2011, a verified amended complaint (the "Amended Complaint") was filed seeking the forfeiture of, inter alia, the Defendant Property and seeking civil money laundering penalties pursuant to Title 18, United States Code, Section 1956 against the PokerStars Companies;

WHEREAS, beginning on May 16, 2011, and for thirty consecutive days thereafter, pursuant to Rule G (4) (a) of the Supplemental Rules for Certain Admiralty and Maritime Claims and Asset Forfeiture Actions, plaintiff United States of America posted notice of the Verified Complaint against the defendants-in-rem on www.forfeiture.gov, the government internet site, and proof of publication was filed with the Clerk of the Court on November 22, 2011;

WHEREAS, on October 31, 2011, the Oldford Group Ltd., Rational Entertainment Enterprises Ltd., Sphene International Ltd., Stelekram Ltd, and PYR Software (collectively, the "PokerStars Claimant

Companies") filed verified claims for the PokerStars Defendant Property and certain other of the Defendant Property (the "PokerStars Claim");

WHEREAS, the PokerStars Companies, including the PokerStars Claimant Companies, admitting no wrongdoing in connection herewith, wish to resolve the forfeiture and civil money laundering claims against them and their assets and to acquire the Forfeited Full Tilt Assets (defined below) for the aggregate amount of approximately $731 million, as set forth herein;

WHEREAS, the PokerStars Companies and the United States agree that the settlement and forfeiture payment of approximately $731 million in connection with this settlement shall be paid in the following manner: the PokerStars Companies shall (1) forfeit to the United States a sum of $547 million pursuant to the schedule set forth in Paragraph 3 of this Order, and (2) within ninety (90) days of the Closing Date (defined below) make available for withdrawal by players, without any limitation other than as required by applicable law, all balances for non-U.S. players of the Full Tilt Group (defined in Exhibit A) as set forth in Paragraph 6 of this Order, in an amount believed to total approximately $184 million;

WHEREAS, victims of offenses alleged to have been committed by certain Full Tilt Group entities in the Amended Complaint (or related offenses) will have the opportunity to file petitions with U.S. Department of Justice, Asset Forfeiture and Money Laundering Section ("DOJ"), for remission of forfeiture, including with respect to the

3

Forfeited PokerStars Property (defined below), pursuant to Title 18, United States Code, Section 981 and Title 28, Code of Federal Regulations, Part 9, to seek compensation for their losses;

IT IS HEREBY STIPULATED, ORDERED AND AGREED, by and among Plaintiff United States of America, by its attorney Preet Bharara, United States Attorney, Assistant United States Attorneys, Sharon Cohen Levin, Michael D. Lockard, and Jason H. Cowley, of counsel; and the PokerStars Companies, by their counsel, Anand S. Raman, David M. Zornow, John K. Carroll, and Lawrence S. Spiegel, of Skadden, Arps, Slate, Meagher & Flom LLP:

### The Forfeiture and Settlement of Claims With Respect to PokerStars and the Transfer of the Forfeited Full Tilt Assets

1.   The PokerStars Companies agree to (a) settle the forfeiture and civil money laundering claims alleged in the Amended Complaint and (b) acquire from the United States certain assets forfeited by a separate Stipulation and Order to the United States by the Full Tilt Group (the "Forfeited Full Tilt Assets", set forth in Exhibit B) to be conveyed to the PokerStars Companies or their designees for the aggregate sum of approximately $731 million, as set forth below. The transfer of the Forfeited Full Tilt Assets from the United States to the PokerStars Companies or their designees (the "Asset Transfer") shall take place within six business days of the latter of the Court's entry of this Stipulation and Order and the forfeiture of the Full Tilt

4

Assets (the date of the Asset Transfer, the "Closing Date"), subject
to the terms of Paragraph 2.

2.   The PokerStars Companies shall forfeit a sum of $547
million (the "Forfeited PokerStars Property"), to be transferred to the
United States Marshals Service as follows: (i) A first payment of $225
million (the "First Payment") shall be paid within six business days
of the Court's entry of this Stipulation and Order.  The Asset Transfer
shall not take place and shall not be legally cognizable unless and until
the First Payment is made in a timely manner.  (ii) A second payment
of $125 million shall be paid not later than one year from the Closing
Date.  (iii) A third payment of $100 million shall be paid not later
than two years from the Closing Date.  (iv) A fourth and final payment
of $97 million shall be paid not later than three years from the Closing
Date.

3.   The United States will confirm receipt of the First
Payment by filing a notice on the docket in this matter.

4.   Upon the United States' receipt of the payments
described in Paragraph 2 of this Stipulation and Order, such funds
comprising each payment shall be deemed forfeited to the United States
for disposition according to law, including Title 18, United States Code,
Section 981.

5.   The PokerStars Companies, within ninety days of the
Closing Date, shall make available for immediate cash withdrawal,
without limitation or restriction other than as required by any

5

applicable law, the online poker account balances of all non-U.S. players of the Full Tilt Group, as of June 29, 2011, which are believed to total approximately $184 million.  Upon making such balances available for immediate withdrawal without limitation or restriction, the PokerStars Companies shall provide to the United States, for filing on the docket in this matter, a verification that this has been completed. The PokerStars Companies shall not assume any liability of the Full Tilt Group other than those explicitly provided in this Paragraph.  To the extent that Raymond Bitar, Howard Lederer, Rafael Furst, Christopher Ferguson, or Nelson Burtnick are non-U.S. players of the Full Tilt Group, PokerStars shall not make available for withdrawal the online poker account balances for any of these five individuals, and will not reimburse them in any way.

6.   The PokerStars Companies shall provide the United States with full access to all records of the Full Tilt Group which will be transferred to the PokerStars Companies as part of the Asset Transfer for three months following the Closing Date and the United States shall be permitted to make images or copies of any such records. The United States will be given continued access beyond this period to the Full Tilt Group's database for the purposes of extracting information necessary to effectuate a remission process pursuant to Title 18, United States Code, Section 981(d) and (e) and 28 C.F.R., Part 9 for the Full Tilt Group's former U.S. players, the administration of which shall be the sole responsibility of the United States.  For avoidance of doubt,

PokerStars will assume no responsibility or liability for the repayment of the Full Tilt Group's former U.S. players and will not be responsible for the accuracy of the records of the Full Tilt Group including those included in the Asset Transfer.

7.   In the event that the PokerStars Companies fail to timely make any of the payments described in Paragraph 2 or fail to comply with paragraphs 5 or 6, this action may be reinstated against the PokerStars Companies and the PokerStars Defendant Property, with the statute of limitations for any such actions or claims being tolled from the date on which the Court enters this Stipulation and Order, and all right, title, and interest in the Forfeited Full Tilt Assets shall be returned to the United States.

8.   The PokerStars Companies are hereby barred from asserting any claim against the United States or any of its agents and employees (including, without limitation, the Federal Bureau of Investigation ("FBI") and the United States Attorney's Office for the Southern District of New York ("USAO-SDNY")) in connection with or arising out of the United States' seizure, restraint, and/or constructive possession of the PokerStars Defendant Property or the Forfeited PokerStars Property including, without limitation, any claim that the United States did not have probable cause to seize and/or forfeit the PokerStars Defendant Property or the Forfeited PokerStars Property, that the PokerStars Companies are a prevailing party or that

7

the PokerStars Companies are entitled to attorneys' fees or any award of interest.

9.   The PokerStars Companies hereby withdraw all claims and/or petitions for remission in this action and agree that they shall not file any claims or petitions for remission relative to the Forfeited PokerStars Property, or any action or motion seeking to collaterally attack the seizure, restraint, or forfeiture of the Forfeited PokerStars Property, nor shall they assist others in filing any such claims, petitions, actions, or motions. For avoidance of doubt, the PokerStars' Companies withdrawal of all claims pursuant to this Paragraph shall include their withdrawal of any claims to the accounts that are listed in paragraphs M-O of the claim submitted on October 31, 2011 by the PokerStars Companies.

10.   The PokerStars Companies represent that they are the sole owners of the funds comprising the Forfeited PokerStars Property, and agree to hold harmless the United States and any and all of its agents and employees (including, without limitation, the FBI and the USAO-SDNY) from any and all third-party claims in connection with or arising out of the United States' seizure, restraint, and/or constructive possession of the funds comprising the Forfeited PokerStars Property.

11.   This Stipulation and Order of Settlement shall in no way be deemed an admission of any wrongdoing, culpability, liability, or guilt on behalf of the PokerStars Companies or any of their respective agents, officers or employees, past and present. Further, this

8

Stipulation and Order of Settlement shall in no way constitute any reflection upon the merits of the claims and defenses asserted respectively by the United States and the PokerStars Companies.

12.   Upon the First Payment, and subject to the terms of Paragraph 7, the *in rem* forfeiture action against the PokerStars Defendant Property and the civil money-laundering claims against the PokerStars Companies shall be dismissed with prejudice.  Accordingly, this Stipulation and Order of Settlement fully and finally resolves this action as to the PokerStars Companies and the PokerStars Defendant Property.  For avoidance of doubt, the PokerStars Defendant Property includes all assets in bank accounts held in the name of the PokerStars Companies, but does not include the assets held in any other bank accounts, and expressly does not include the assets in the accounts listed in paragraphs M-O of the claim submitted on October 31, 2011 by the PokerStars Companies.

13.   Within forty-five days of the Closing Date, Isai Scheinberg shall withdraw from, and shall not serve in, any management or director role at any of the PokerStars Companies (thereafter to include any entity or entities that will own or operate any of the Forfeited Full Tilt Assets) or their present or future affiliates.  This provision is subject to revisiting by the parties to this Stipulation and Order without further order from this Court upon the resolution of United States v. Isai Scheinberg, S3 10 Cr. 336 (LAK) (S.D.N.Y.).

9

14.   The PokerStars Companies are prohibited from employing or otherwise hiring Raymond Bitar, Howard Lederer, Rafael Furst, Chris Ferguson, and Nelson Burtnick.

15.   The PokerStars Companies, and their present or future affiliates are precluded from offering online poker for real money play in the United States until if and when it becomes permissible to do so under relevant law.

16.   Nothing in this Stipulation and Order of Settlement is intended to or shall limit the PokerStars Companies and their present or future affiliates from offering real-money online poker to individuals within the United States (including under the PokerStars or the Full Tilt Group's brands) if and when it becomes permissible to do so under relevant law.

17.   Upon the First Payment, the Domain Name Use Agreement entered between the United States and the PokerStars Companies, dated April 19, 2011 shall be terminated.

18.   Upon the First Payment, the Arrest Warrant *In Rem* entered in this matter on April 15, 2011, shall be amended to no longer apply to the following domain: pokerstars.com. The Arrest Warrant *In Rem* shall remain in effect in all other regards not related to the PokerStars Group and any of its assets (except as otherwise will be ordered by the Court).

19.   Upon the First Payment, the Court's Order of September 1, 2011, restraining certain funds held in an account at Bank Hapoalim in Luxembourg shall be terminated.

20.   Upon the First Payment, the United States will submit an application to the Court in United States v. Scheinberg, S3 10 Cr. 336 (LAK) (S.D.N.Y.) requesting that the Restraining Order entered in that action be amended to no longer apply to any accounts held in the name of the PokerStars Companies. In the event that the Court does not enter an Order fully amending the Restraining Order, (i) the amount due to the United States under Paragraph 3 shall be adjusted; (ii) the PokerStars Companies will agree to the forfeiture of funds in the relevant accounts listed in the Restraining Order equal to the amount of the adjustment; and (iii) the PokerStars Companies will assist the United States in transferring funds in such accounts, in an amount equal to the amount of the adjustment, to an account in the United States designated by the United States.

### Additional Provisions

21.   The parties hereby waive all rights to appeal or to otherwise challenge or contest the validity of this Stipulation and Order of Settlement.

22.   Each party shall bear its own costs and attorneys' fees.

23.   The signing of this Stipulation and Settlement Order does not constitute a consent to jurisdiction by the PokerStars Companies, other than for the purpose of enforcing this Stipulation and Settlement Order.

11

24.   The signature pages of this Stipulation and Order of Settlement may be executed in one or more counterparts, each of which will be deemed an original but all of which together will constitute one and the same instrument. Signature pages may be by fax and such signatures shall be deemed as valid originals.

AGREED AND CONSENTED TO:

PREET BHARARA
United States Attorney
Southern District of New York

By: _____      ___7/27/12___
    Sharon Cohen Levin      (For)              DATE
    Michael D. Lockard
    Jason H. Cowley
    Assistant United States Attorneys
    (212) 637-1060/2193/2479
    Counsel for Plaintiff

[ADDITIONAL SIGNATURES ON NEXT PAGE]

12

POKERSTARS, OLDFORD GROUP LTD., RATIONAL ENTERTAINMENT ENTERPRISES LTD., PYR SOFTWARE LTD., STELEKRAM LTD., and SPHENE INTERNATIONAL LTD.

By: _____   July 27, 2012
      Anand S. Raman (admitted pro hac vice)   DATE
      Skadden, Arps, Slate, Meagher & Flom LLP
      1440 New York Avenue, NW
      Washington, DC 20005
      (202) 371-7019

      David M. Zornow
      John K. Carroll
      Lawrence S. Spiegel
      Skadden, Arps, Slate, Meagher & Flom LLP
      Four Times Square
      New York, NY 10036
      (212) 735-2890/4155/2280

      Counsel for PokerStars, Oldford Group
      Ltd., Rational Entertainment Enterprises
      Ltd., Pyr Software Ltd., Stelekram Ltd.,
      and Sphene International Ltd.


SO ORDERED:

_____
HONORABLE LEONARD B. SAND
UNITED STATES DISTRICT JUDGE

July 31, 2012
DATE

Exhibit A – The Full Tilt Group

The Full Tilt Group shall mean the Full Tilt -affiliated and -controlled companies identified below:

- a. BT Management
- b. Dromane Limited
- c. Filco (Holdings) Limited
- d. Filco Limited
- e. Fitzroche Limited
- f. Graybel Limited
- g. Irolo (Italy) Limited
- h. Kolyma Corporation AVV
- i. Ludus Limited (Cyprus)
- j. Media Management GmbH
- k. My West Nook Limited
- l. Oxalic Limited
- m. Orinic Limited
- n. Pocket Kings Consulting Limited
- o. Pocket Kings Limited
- p. Ranston Limited
- q. Real Media LLC
- r. Rekop Limited
- s. Rosbull Limited
- t. Rullan Joyce Limited
- u. Tiltproof Limited

v.   Tiltware LLC

w.   Tiltware Merchandise Services, LLC

x.   Vantage Limited

## EXHIBIT B - THE FORFEITED FULL TILT ASSETS

The Forfeited Full Tilt Assets as this term is used in the Stipulation and Order of Settlement shall mean the following assets, properties, contractual rights, goodwill, going concern value, rights and claims of the Full Tilt Group relating to the Full Tilt Group's business, wherever situated and of whatever kind and nature, real or personal, tangible or intangible, whether or not reflected on the books and records of any member of the Full Tilt Group including the assets listed in the tables below that are required to operate the Full Tilt Group business in a manner consistent with its operations prior to April 15, 2011 (other than the Excluded Assets (as defined below) listed below):

1    accounts receivable of or monies owed to the Full Tilt Group outstanding on or after the day on which the forfeiture of the Forfeited Full Tilt Assets shall become effective including, but not limited to, the accounts receivable listed in the chart labeled 'Accounts Receivable' below;

2    all gaming data and history relating to the Full Tilt Group business, including all computer records, database, operating reports, and reconciliation files whether in electronic form or otherwise;

3    all tangible property of the Full Tilt Group including but not limited to the assets listed in the chart labeled 'Tangible Assets' below;

4    all documents that are used in, held for use in or intended to be used in, or that arise primarily out of, the Full Tilt Group business, including documents relating to the products, services, marketing, advertising, promotional materials, intellectual property, personnel files for employees and consultants, accounting records and all files, customer files and documents (including credit information), supplier lists, records, literature and correspondence, copies of agreements with third parties, wherever located but not including original certificates of incorporation and minute books of any of the Full Tilt Group entities;

5    all rights of the Full Tilt Group under non-disclosure or confidentiality, non-compete, or non-solicitation agreements with employees, contractors, consultants and agents of the Full Tilt Group or with third parties to the extent relating to the Full Tilt Group business or the Forfeited Full Tilt Assets (or any portion thereof) or that were executed in connection with the due diligence of potential acquirers of any of the Forfeited Full Tilt Assets;

6    all rights of the Full Tilt Group under or pursuant to all warranties, representations and guarantees made by suppliers, manufacturers and contractors to the extent relating to products sold, or services provided, to FTP or to the extent affecting any of the Forfeited Full Tilt Assets;

7    any and all cash and cash equivalents including all bank accounts held in the Full Tilt Group name and any and all deposits with suppliers or government authorities including, but not limited to, the cash amounts listed in the chart labeled 'Cash' below;

8    all intellectual property of the Full Tilt Group including without limitation: any and all classes and types of patents, utility models and design patents and applications for these classes and types of patent rights and all disclosures relating thereto (and any patents that issue as a result of those patent applications), and any renewals, reissues, re-examinations, extensions, continuations, continuations-in-part, divisions and substitutions relating to any of the patents and patent applications, as well as all related foreign patent and patent applications that are counterparts to such patents and patent applications, trade marks  and unregistered marks and service marks and the goodwill associated therewith, registered designs, utility models, design rights, topography rights, copyrights (including "look-and-feel" and including copyright in computer programs, software and website and television contents), including moral rights and any other rights in works of authorship, and any registrations and

applications for registration thereof, software (including source code, executable code, tools and related documentation), database rights and data collections (including knowledge databases, hands history databases, customer lists and customer databases), whether registered or unregistered, and any applications for registration therefor, inventions, know-how, trade secrets, confidential information, business or trade names, domain names, and all other intellectual property and neighbouring rights and rights of a similar or corresponding character, enforceable anywhere in the world (whether or not the same are registered or capable of registration) and all applications for, or for the protection of, any of the foregoing, all rights to collect royalties and proceeds in connection with the foregoing, all claims, causes of action and rights to sue or recover and claim damages arising out of or related to the past, present or future infringement or misappropriation or passing-off of or unfair competition related to any of the foregoing, and all copies and tangible embodiments of any of the foregoing (in whatever form or medium) including but not limited to the assets listed in the chart labeled 'Intangible Assets' below;

9      all other intangible assets associated with the Full Tilt Group business;

10     customer and supplier lists and databases from the inception of the Full Tilt Poker business;

11     all pending and potential claims of the Full Tilt Group against any third party including, but not limited to, the claims listed in the chart labeled 'Pending and Potential Claims' below; and

12     any other assets of the Full Tilt Group used in the operation of the Full Tilt Group business as at the date hereof and prior to April 15, 2011, that are not expressly listed as Excluded Assets.

## Account Receivable

| Description of Asset | Owned By |
| --- | --- |
| Debt owed by The Minsk Princess Hotel (Belarus) | Pocket Kings Limited |
| Debt owed by Media Mansion (the Czech Republic) | Pocket Kings Limited |
| All rights connected to the license application filed by Irolo (Italy) Limited for the award of an Italian remote gaming license. In particular, all rights of collection of that certain deposit made by Irolo (Italy) Limited or its affiliates for the benefit of the Bank of Italy in the amount of EUR 1,500,000 pursuant to paragraph 10 of the administrative rules for the award of the license and execution of the license agreement governing the above mentioned procedure. | Irolo (Italy) Limited |

## Tangible Assets

| Description of Asset | Owned By |
| --- | --- |
| **Equipment and Furniture** as listed in the Excel Workbook entitled "Fixed Asset Register Office & Leasehold 01.04.12" provided by the Full Tilt Group to the PokerStars Group on April 23, 2012, including, for example:<br><br>- Furniture<br>- Home Cinema systems<br>- Sofa(s)<br>- Televisions and screens<br>- Storage units and bins | Pocket Kings Limited |

| | |
|---|---|
| - Filing and storage cabinets<br>- Desks, tables, stools, chairs<br>- Shelving | |
| **Leasehold Improvements** as listed in the Excel Workbook entitled "Fixed Asset Register Office & Leasehold 01.04.12" provided by the Full Tilt Group to the PokerStars Group on April 23, 2012, including, for example:<br><br>- Office, board room, common room fit outs<br>- Flooring and tiling<br>- Reception desk<br>- Glass partitions | Pocket Kings Limited |
| **Computer Assets/Hardware**:<br>as listed in the Excel Workbooks entitled "Fixed Asset Register Office & Leasehold 01.04.12" and "FA List Apr 2012" provided by the Full Tilt Group to the PokerStars Group on April 23, 2012, including, for example:<br><br>- Screens<br>- Desktops and laptops<br>- Phones<br>- Printers<br>- Servers<br><br>Hardware as listed in the Excel Workbook entitled "FA List Apr 2012" provided by the Full Tilt Group to the PokerStars Group on April 23, 2012 including, for example the following locations:<br><br>- Cherrywood, Dublin<br>- C&W data centre, Guernsey<br>- France data centre<br>- IXN (Interxion) data centre, Dublin<br>- MIT (Continent8) data centre, Kahnawake | Pocket Kings Limited<br><br>Filco Limited<br><br>Rekop Limited<br><br>Kolyma Corporation A.V.V.<br><br>Irolo (Italy) Limited |
| **Documents and Media:**<br><br>All books, documents, user manuals, drawings, CDs, DVDs and other portable storage devices that contain copyright material whether held in digital form or otherwise including, but not limited to master tapes containing television content, discs that contain proprietary software and all documentation related to the development of such software, including without limitation the software listed in the Excel Workbook entitled "ProductMetaData_20120425" as well as all Source Code Materials (as defined below).<br><br>**Source Code Materials** shall mean true and complete copies, as they exist on the date hereof, whether in eye-readable or machine-readable form (without the need for any external modification), of: (i) the source code of the software, and (ii) | Pocket Kings Ltd. (to the extent the owner is My West Nook Limited, My West Nook shall also take all required actions under this Stipulation and Order of Settlement) |

| | |
|---|---|
| such materials, documentation, specifications, manuals, user guides, promotional material, internal notes and memos, technical documentation, drawings, flow charts, diagrams, test plans and test reports, configuration files, database schemas, architecture documents, source language statements, demo disks, benchmark test results, and other written materials related to, or used or produced in, or for, the development or support of the Software, which are necessary and sufficient to enable a reasonably skilled programmer to understand, compile, integrate, test, operate, use, reproduce, debug, modify, maintain, support and enhance the software without reference to any other person or documentation. | |

**Intangible Assets**

| Description of Asset | Owned By |
|---|---|
| **Proprietary Software** and all rights therein and documentation related to the development of such software as listed in the Excel Workbook entitled "ProductMetaData_20120425" provided by the Full Tilt Group to the PokerStars Group on April 25, 2012. | Pocket Kings Limited (to the extent the owner is My West Nook Limited, My West Nook shall also take all required actions under this Stipulation and Order of Settlement). |
| **Domain Names** – list of c. 10,000 domain names, as listed in the Excel Workbooks entitled "Domain Names europeandomaincentre.com", "Domain Names Full Listing 20120426" and "Domain Names Kolyma Pocket Kings 20120426" provided by the Full Tilt Group to the PokerStars Group on April 26, 2012, excluding any domain name which incorporates the name or nickname of any member of Tiltware LLC as listed in the Excel Workbooks entitled "Domain Names Tiltware Members 20120705" provided by the Transferors or their representatives to the Transferee's representatives on July 5, 2012 (collectively "**Excluded Domain Names**"). | Tiltware LLC and/or Kolyma Corporation A.V.V by means of SafeNames WhoIs Privacy (masking service based in the UK); Pocket Kings Limited |
| **Goodwill** The goodwill associated with the intellectual property rights of the Full Tilt Group. | Pocket Kings Limited (to the extent the owner is any other company within the Full Tilt Group, any such company shall also take all required actions under this Stipulation and Order of Settlement). |
| **Databases** (including the data contained in such databases): as listed in the Excel Workbook entitled " Full Tilt - Data Containers - 2012-Apr-26" provided by the Full Tilt Group to the PokerStars Group on April 26, 2012, and including without limitation: Financial accounts databases | Pocket Kings Limited except for the player databases. Filco Limited; Orininc Limited; Oxalic Limited; Vantage Limited (player databases and all data, records and history related to players for all countries |

| | |
|---|---|
| FTDW – Full Tilt transactional data warehouse (marketing/business intelligence)<br><br>MDM – marketing database<br><br>Astra database<br><br>"STU" business intelligence monitor<br><br>Player databases and all data, records and history related to players and any backup databases (including specifically that certain backup copy of the players database made on May 29, 2011). | except France).<br><br>Rekop Limited (player database of French players and all data, records and history related to players). |
| **Patents and Inventions:**<br><br>All inventions, ideas, concepts, know-how, designs and features, whether or not reduced to practice or described or specified in detail or implemented within any product or offering, whether disclosed to the Poker Stars Group or not, and including without limitation the following:<br><br>   (a) An invention entitled "Player-entry assignment and ordering" and all applications for registration filed in respect of this invention and any patents granted on such applications, including without limitation the following:<br><br>      EPO patent application no. 10250085.7<br><br>      UK patent application no. 1022044.0<br><br>      Bahamas patent application (no number provided; no further information available)<br><br>      PCT application no. PCT/IB2010/003383, by means of which the following applications were filed:<br><br>      (i)     Argentina patent application no. P110100156<br><br>      (ii)    Pakistan patent application no. 19/2011 (assumed to be based on PCT)<br><br>      (iii)   Taiwan patent application no. 100101858 (assumed to be based on PCT)<br><br>      (iv)   US patent application no. 13/006620<br><br>      (v)    Uruguay patent application no. 33192<br><br>      (vi)   EPO patent application no. 10843789.8<br><br>   (b) An invention entitled "Computer gaming device and method for computer gaming" and all applications for registration filed in respect of this invention and any | Pocket Kings Limited (to the extent the owner is My West Nook Limited, My West Nook shall also take all required actions under this Stipulation and Order of Settlement) |

| | |
|---|---|
| patents granted on such applications, including without limitation the following:<br><br>US patent application no. 11/316,573<br><br>PCT application no. PCT/US2006/039086, by means of which the following applications were filed:<br><br>(i)    Australia patent application no. 2006333559<br><br>(ii)   Canada patent application no. 2632291<br><br>(iii)  EPO patent application no. 06836201.1<br><br>(all listed under the name of Hold 'Em One, Inc. as the applicant (Assignee in the US)), | |
| **TMs**<br><br>The trademarks used in connection with the Full Tilt business, including those Trade Marks listed on Annex 1 to this Exhibit. | Pocket Kings Limited (to the extent the owner is My West Nook Limited, My West Nook shall also take all required actions under this Stipulation and Order of Settlement). |
| **Licenses**: the third party licenses granted to the entities within the Full Tilt Group listed in the Excel Workbook entitled HFNDOCS-#1622368-v1-FTP_software_licences_assignmentt.XLS provided by the PokerStars Group's representative to the Full Tilt Group representative on 9th July, 2012 (the **"Forfeited Licenses"**). | Pocket Kings Limited and other entities within the Full Tilt Group |

**Cash**

| Description of Asset | Owned By |
|---|---|
| Including (without limitation):<br><br>- All bank accounts held in the name of the Full Tilt Group.<br><br>- Any and all deposits with suppliers or governmental authorities.<br><br>- The funds listed in the Excel Workbook entitled "FTP Bank Account Reconciliation.xlsx" provided by the Full Tilt Group or their representatives to the PokerStars Group's representatives.<br><br>- Funds held in trust by US counsel in an amount of approximately US$1,428,225.80 received from Instadebit | Pocket Kings Limited<br><br>Filco Limited<br><br>Vantage Limited<br><br>Kolyma Corporation A.V.V.<br><br>Rekop Limited<br><br>Media Management GmbH<br><br>BT Management<br><br>Titlware LLC<br><br>Ranston Limited |

| | |
|---|---|
| | Irolo (Italy) Limited |
| Any funds received by the Full Tilt Group due to the release of that certain deposit with Energia Ireland relating to utilities servicing the Irish premises; which shall be held by the Full Tilt Group in current account. | Pocket Kings Limited |

## Pending and potential claims

| Description of Asset | Owned By |
|---|---|
| Pending legal proceedings commenced in Australia by Kolyma Corporation A.V.V. against Daniel Tzvetkoff, Intabill, Inc., BT Projects Pty Ltd. and Salvatore Sciacca<br><br>Potential claims against former payment processors of the Full Tilt Group including, but not limited to, Comtec Consulting Ltd, Solidpay and Inatec. | Kolyma Corporation A.V.V.<br><br>Any other entity of the Full Tilt Group |
| **Debt of professional poker players for repayment of loans previously granted to them**  as listed in the Excel Workbook entitled "Pro Loans revised – 19th Jul with Ray comments" provided by the Full Tilt Group or their representatives to the PokerStars Group's representatives. | Filco Limited; Orininc Limited; Oxalic Limited; Vantage Limited |

**Excluded Assets**

A.   Any documents protected by attorney-client or attorney work product privilege or protection.

B.   any rights, title or interest in any ownership interests (legal or beneficial) in any of the Full Tilt Group entities or in any other entity in which any of the Full Tilt Group entities has any ownership interest.

C.   all originals (or copies, to the extent originals do not exist) of minute books, stock ledgers, charters, operating agreements and other governing documents between each of the Full Tilt Group entities and its owners (beneficial or legal), and other corporate organizational documents of that type, provided that copies will be provided to the PokerStars Companies or their designees, including all the statutory books and statutory records of the Full Tilt Group entities.

D.   any email and other written correspondence of the Full Tit Group entities, both original, electronic and back-up copies, and the Microsoft exchange server and related servers that store such emails, excluding any emails or other correspondence with any players.

E.   any financial data of the Full Tilt Group entities, excluding any data relating to players.

F.   any and all rights, title and interest in the Bermuda property.

G.   any current intergroup agreements, including, without limitation, all consulting agreements between Ray Bitar and any of the Full Tilt Group entities, all of which shall be terminated at closing.

H.   all contracts and agreements of FTP other than employee agreements transferred by operation of law and the Forfeited Licenses.

I.   Cash of the Full Tilt Group held in trust for the payment of attorneys' fees in connection with the following purposes which shall not exceed the following amounts:

| Law Firm | Amount | Purpose |
|---|---|---|
| Cozen O'Connor | USD 75,000 | Filing of motions to withdraw from open litigation in Los Angeles |
| Ifrah Law | USD 150,000 | Filing of motion to withdraw from open litigation/resolve class action litigation in New York, Las Vegas and Montreal |
| Collas Crill | GBP 75,000 | Winding down the Transferors which are incorporated in Aldereny |
| MOP | EUR 75,000 | Winding down the Transferors which are incorporated in Ireland |

J.      any and all benefits of the Asset Transfer Agreements.

Annex 1

**Table of Trademarks**

| | |
|---|---|
| 1 | **FULL TILT POKER** (word and design), registration no. 845254, registered in Benelux, classes 9, 28, 38, 41. |
| 2 | **HEADS UP POKER LE FACE-A-FACE** (word and design), registration no. 10/3774281, registered in France, classes 9, 28, 38, 41. |
| 3 | **FULL TILT POKER AKADEMIE.NET** (word and design), registration no. 302010062747, registered in Germany, classes 9, 16, 24, 28, 35, 38, 41, 42. |
| 4 | **R** (word and design), registration no. 302010003005, registered in Germany, classes 9, 28, 38, 41. |
| 5 | **Rush Poker** (word and design), registration no. 302010003006, registered in Germany, classes 9, 28, 38, 41. |
| 6 | **Full Tilt Poker** (word only), registration no. 30765158, registered in Germany, classes 9, 28, 38, 41. |
| 7 | **FULL Tilt POKER** (word and design), registration no. 30764543, registered in Germany, classes 9, 28, 38, 41. |
| 8 | **MEC** (word only), application no. 2557801, registered in the United Kingdom, classes 9, 16, 24, 28, 35, 38, 41, 42. |
| 9 | **FULL Tilt POKER** (word and design), registration no. 2554342, registered in the United Kingdom, classes 9, 16, 24, 28, 35, 38, 41, 42. |
| 10 | **FullTiltPoker.net Million Euro Challenge** (word only), registration no. 2554341, registered in the United Kingdom, classes 9, 16, 24, 28, 35, 38, 41, 42. |
| 11 | **Million Euro Challenge** (word only), registration no. 2554339, registered in the United Kingdom, classes 16, 24. |
| 12 | **RUSH POKER RUSHPOKER** (word only), registration no. 2553343, registered in the United Kingdom, classes 9, 16, 24, 28, 35, 38, 41, 42. |
| 13 | **Rush Poker** (word and design), registration no. 2553344, registered in the United Kingdom, classes 9, 16, 24, 28 35, 38, 41, 42. |
| 14 | **R** (word and design), registration no. 2553347, registered in the United Kingdom, classes 9, 16, 24, 28, 35, 38, 41, 42. |
| 15 | **FULL TILT GAMING** (word only), registration no. 2489493, registered in the United Kingdom, classes 9, 16, 21, 24, 28, 35, 38, 41, 42. |
| 16 | **Full Tilt Poker** (word only), registration no. 2465018, registered in the United Kingdom, |

| | classes 9, 16, 21, 24, 28, 35, 38, 41, 42. |
|---|---|
| 17 | **Fulltiltpoker** (word only), registration no. 2465022, registered in the United Kingdom, classes 9, 16, 21, 24, 28, 35, 38, 41, 42. |
| 18 | **Match The Pro** (word only), registration no. 9762411, registered in CTM, classes 9, 28, 38, 41. |
| 19 | **Full Tilt Poker Akademie.Net** (word and design), registration no. 9468208,registered in CTM, classes 9, 16, 24, 28, 35, 38, 41, 42. |
| 20 | **RUSH POKER** (word only), registration no. 9294109, registered in CTM, classes 16, 24, 35, 42. |
| 21 | **Full Tilt Poker** (word and design), registration no. 9295312, registered in CTM, classes 16, 24, 35, 42. |
| 22 | **RUSHPOKER** (word only), registration no. 9294133, registered in CTM, classes 16, 24, 35, 42. |
| 23 | **FullTiltPoker.net Million Euro Challenge** (word only), registration no. 9294976, registered in CTM, classes 16, 24, 35, 42. |
| 24 | **R** (word and design), registration no. 9295271, registered in CTM, classes 16, 24, 35, 42. |
| 25 | **RUSH POKER** (word and design), registration no. 9295171, registered in CTM, classes 16, 24, 35, 42. |
| 26 | **Full Tilt Poker** (word only), registration no. 9295015, registered in CTM, classes 16, 24, 35, 42. |
| 27 | **Million Euro Challenge** (word only), registration no. 9294901, registered in CTM, classes 16, 24. |
| 28 | **HEADS UP DAS POKER DUELL** (word and design), registration no. 8930703, registered in CTM, classes 9, 28, 38, 41. |
| 29 | **HEADS UP - DAS POKERDUELL** (word only), registration no. 8930612, registered in CTM, classes 9, 28, 38, 41. |
| 30 | **FullTiltPoker.net Million Euro Challenge**  (word only), registration no. 8930711, registered in CTM, classes 9, 28, 38,41. |
| 31 | **FullTiltPoker.net HEADS UP - DAS POKERDUELL** (word only), registration no. 8930695, registered in CTM, classes 9, 28, 38, 41. |
| 32 | **MEC** (word only), registration no. 8930729, registered in CTM, classes 28, 38, 41. |
| 33 | **Million Euro Challenge** (word only), registration no. 8930604, registered in CTM, classes 9, 28, 38, 41. |
| 34 | **RushPoker** (word only), registration no. 8821456, registered in CTM, classes 9 28 38 41. |

| 35 | **R** (word and design), registration no. 8816241, registered in CTM, classes 9 28, 38, 41. |
| 36 | **Rush Poker** (word and design), registration no. 8816225, registered in CTM, classes 9, 28, 38, 41. |
| 37 | **Rush Poker** (word only), registration no. 8816373, registered in CTM, classes 9, 28, 38, 41. |
| 38 | **Full Tilt Poker** (word only), registration no. 6335327, registered in CTM, classes 9 28 38 41. |
| 39 | **FULL Tilt POKER** (word and design), registration no. 6322127, registered in CTM, classes 9, 28, 38, 41. |
| 40 | **FULL TILT POKER** (word and design), registration no. 1335898, registered in Australia, class 9. |
| 41 | **RUSHPOKER** (word only), registration no. 1086087, registered in International Register – designating Russia, classes 16, 24, 35, 42. |
| 42 | **Full Tilt Poker** (word and design), registration no. 1090331, registered in International Register – designating Russia, classes 16, 24, 35, 42. |
| 43 | **RUSHPOKER** (word only), registration no. 1093643, registered in International Register – designating Russia, classes 16, 24, 35, 42. |
| 44 | **FullTiltPoker.net Million Euro Challenge** (word only), registration no. 1093716, registered in International Register – designating Russia, classes 16, 24, 35, 42. |
| 45 | **R** (word and design), registration no. 1094667, registered in International Register – designating Russia, classes 16, 24, 35, 42. |
| 46 | **Rush Poker** (word and design), registration no. 1095384, registered in International Register – designating Russia, classes 16, 24, 35, 42. |
| 47 | **Full Tilt Poker** (word only), registration no. 1099846, registered in International Register – designating Russia, classes 16, 24, 35, 42. |
| 48 | **RUSH POKER RUSHPOKER** (word only), registration no. GGGT7283, registered in Guernsey, classes 9, 16, 24, 28, 35, 38, 41, 42. |
| 49 | **Rush Poker** (word and design), registration no. GGGT7284, registered in Guernsey, classes 9, 16, 24, 28, 35, 38, 41, 42. |
| 50 | **R** (word and design), registration no. GGGT7285, registered in Guernsey, classes 9, 16, 24, 28, 35, 38, 41, 42. |
| 51 | **MEC** (word only), registration no. GGGT7286, registered in Guernsey, classes 9, 16, 24, 28, 35, 38, 41, 42. |
| 52 | **FullTiltPoker.net Million Euro Challenge** (word only), registration no. GGGT7349, registered in Guernsey, classes 9, 16, 24, 28, 35, 38, 41, 42. |

| 53 | **Million Euro Challenge** (word only), registration no. GGGT7516, registered in Guernsey, classes 9, 16, 24, 28, 35, 38, 41, 42. |
|----|---|
| 54 | **Full Tilt Poker** (word only), registration no. GGGT7287, registered in Guernsey, classes 9, 16, 24, 28, 35, 38, 41, 42. |
| 55 | **Full Tilt Poker** (word and design), registration no. GGGT7288, registered in Guernsey, classes 9, 16, 24, 28, 35, 38, 41, 42. |
| 56 | Trademark application for **FULL TILT POKER** (word only), filed in Russia, classes 9, 16, 24, 28, 35, 38, 41, 42. |
| 57 | Trademark application for **FULLTILTPOKER** (word only), filed in Russia, classes 9, 16, 24, 28, 35, 38, 41, 42. |
| 58 | Trademark application for **FULL TILT GAMING** (word only),  filed in Russia, classes 9, 16, 24, 28, 35, 38, 41, 42. |
| 59 | Trademark application for **RUSH POKER** (word only), filed in Russia, classes 9, 16, 24, 28, 35, 38, 41, 42. |
| 60 | Trademark application for **RUSHPOKER** (word only), filed in Russia, classes 9, 16, 24, 28, 35, 38, 41, 42. |
| 61 | Trademark application for **RUSH POKER** (word and design), filed in Russia, classes 9, 16, 24, 28, 35, 38, 41, 42. |
| 62 | Trademark application for **R** (word and design), filed in Russia, classes 9, 16, 24, 28, 35, 38, 41, 42. |
| 63 | Trademark application for **FullTiltPoker.net Million Euro Challenge** (word only), filed in Russia, classes 9, 16, 24, 28, 35, 38, 41, 42. |
| 64 | Trademark application for **Million Euro Challenge** (word only), filed in Russia, classes 9, 16, 24, 28, 35, 38, 41, 42. |
| 65 | Trademark application for **FULL TILT POKER** (word and design), filed in Russia, classes 9, 16, 24, 28, 35, 38, 41, 42. |
| 66 | Trademark application for **MEC** (word only), filed in Russia, classes 9, 16, 24, 28, 35, 38, 41, 42. |
| 67 | Trademark application no. 145488 for **FULL TILT POKER** (word and design), filed in Ukraine, classes 9, 16, 24, 28, 35, 38, 41, 42. |
| 68 | Trademark application no. 145489 for **Learn, chat and play with the pros"** (word only), filed in Ukraine, classes 9, 16, 24, 28, 35, 38, 41, 42. |
| 69 | Trademark application no. 145490 for **Вчіться, спілкуйтесь і грайте з профі** (translation:"Learn, chat and play with the pros") (word only), filed in Ukraine, classes 9, 16, 24, 28, 35, 38, 41, 42. |