UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

UNITED STATES OF AMERICA,

                Plaintiff,                          11-CV-2564 (KMW)
                                                                **<u>OPINION AND ORDER</u>**

     v.

POKERSTARS, et al.,

                Defendants,


ALL THE RIGHTS, TITLE AND INTEREST IN
THE ASSETS OF POKERSTARS, et al.,

                Defendants-in-rem.
-------------------------------------------------------------X

KIMBA M. WOOD, District Judge:

      In April 2011, the United States Attorney's Office for the Southern District of New York

commenced this *in rem* forfeiture action against the three leading internet poker companies doing

business in the United States—PokerStars, Full Tilt Poker, and Absolute Poker/Ultimate Bet—

and certain of their officers. The Complaint seeks the forfeiture of all right, title, and interest in

the assets of these companies, pursuant to 18 U.S.C. §§ 1955(d) and 981(a)(1)(A) and (C).

      In September 2011, Cardroom International, LLC ("Cardroom"), a Florida corporation

that offers online poker gaming, filed a claim asserting an interest in up to $30 million of the

assets seized in the forfeiture action. (Cardroom Claim, [Doc. No. 62]). The Government

subsequently moved to strike Cardroom's claim, (Mot. to Strike, [Doc. No. 205]), and in

response, Cardroom sought leave to amend, (Opp'n to Mot. to Strike, [Doc. No. 253]).

      For the reasons discussed below, the Government's motion to strike Cardroom's claim is

GRANTED, and Cardroom's request to amend its claim is DENIED.

## I.    BACKGROUND

### A.  *The Origins of the Civil Forfeiture Action*

During the last decade, the three leading online poker companies doing business in the United States were PokerStars, Full Tilt Poker ("Full Tilt"), and Absolute Poker/Ultimate Bet (collectively, the "Poker Companies"). The Poker Companies all provided real-money gambling through their websites to United States customers. (Consolidated Mem. of Law in Supp. Gov't Mot. to Strike ("Renewed Mot. to Strike"), 3 [Doc. No. 317]). However, because they were not permitted to open United States bank accounts to receive the proceeds of these activities, the Poker Companies instead did business through several privately held corporations and other entities. *Id.*

In March 2011, the Government brought a criminal indictment charging certain officers of the Poker Companies with violations of the Unlawful Internet Gambling Enforcement Act, ("UIGEA"), 31 U.S.C. § 5363, and other laws.[1] *Id.* In conjunction with the criminal prosecution, the Government also filed an *in rem* forfeiture action and a civil money laundering complaint, seeking forfeiture of all right, title, and interest in the assets of the Poker Companies (collectively, the "Defendant Property"). *Id.* at 4.[2]

### B.  *Cardroom's Claim to the Defendant Property*

In September 2011, Cardroom filed a claim asserting an interest in an unspecified $30 million of Defendant Property. (Cardroom Claim, 1 [Doc. No. 62]). Cardroom's claim was based

---

[1] The indictment charged the individuals with violating the UIGEA; conspiring to violate the UIGEA, in violation of 18 U.S.C. § 371; operating illegal gambling businesses, in violation of 18 U.S.C. §§ 1952, 1955; conspiring to commit wire and bank fraud, in violation of 18 U.S.C. § 1349; and conspiring to launder money, in violation of 18 U.S.C. § 1956(h).

[2] As alleged in the Complaint, the Defendant Property is subject to forfeiture (1) pursuant to 18 U.S.C. § 1955(d), as property used in violation of the provisions of § 1955; (2) pursuant to 18 U.S.C. § 981(a)(1)(A), as property involved in transactions and attempted transactions in violation of §§ 1956 and 1957; and (3) pursuant to 18 U.S.C. § 981(a)(1)(C), as property constituting or derived from proceeds traceable to (a) violations of § 1955, and (b) a conspiracy to commit wire fraud and bank fraud.

on its expectation of an "inevitable judgment" in its favor in a case filed on the same day in California state court against PokerStars and Full Tilt (the "California Action").[3] *Id.* at 2. In the California Action, Cardroom alleged damages of at least $30 million, and, in its claim in *this* proceeding, sought to have those damages satisfied out of the Defendant Property. *Id.*

However, Cardroom later conceded that its claim to the Defendant Property was "contingent" and was "not at this time enforceable." (Cardroom Answer ¶ 3, [Doc. No. 79]). The Government subsequently moved to strike Cardroom's claim on the basis that it was premised on a hypothetical future judgment, rather than an interest in any specific res that was part of the Defendant Property. (Mot. to Strike, 1-2).

### C. *The Stipulation and Comprehensive Settlement Agreement*

In the meantime, the Government had been working toward reaching a comprehensive settlement agreement with the Poker Companies that would involve, among other things, the transfer of certain assets that had been seized as part of the Defendant Property. (Renewed Mot. to Strike, 7). In anticipation of this agreement, the Government entered into a stipulation with Cardroom (the "Stipulation"), in which the Government agreed to hold $30 million as a substitute res for the forfeited assets that were the subject of Cardroom's claim because the Government's motion to strike was still pending. (Sanai Decl., Ex. B, [Doc. No. 252]). The Stipulation stated that the Government's anticipated settlement with the Poker Companies involved the forfeiture of "certain assets" of Full Tilt and the transfer of those assets to PokerStars. *Id.* at 20-21. The Stipulation also provided that Cardroom "consent[ed] to the

---

[3] In the California Action, Cardroom alleged that PokerStars and Full Tilt Poker had violated the Racketeer-Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1964 *et seq.*, through "illegal and anti-competitive" actions that prevented Cardroom and other software companies from entering the online poker market. (Renewed Mot. to Strike, 6). The California Action has since been dismissed with prejudice. *Id.* at 7.

forfeiture" of the Full Tilt assets in exchange for the Government's agreement to hold $30

million as a substitute res. *Id.* at 21. The Stipulation was signed in July 2012.

### D. *Cardroom's Response to the Motion to Strike*

In August 2012, Cardroom responded to the Government's motion to strike. (Opp'n to

Mot. to Strike, [Doc. No. 253]). In its response, Cardroom made no effort to address the

arguments raised by the Government's motion to strike, or to defend the merit of its original

claim premised on the California Action. *See id.* Instead, Cardroom advanced an entirely new

theory as to why it was entitled to $30 million of Defendant Property, and sought leave to amend

its claim. *See id.*

Cardroom's new theory was based on an agreement signed in 2003 between Cardroom's

predecessor-in-interest and Full Tilt's predecessor-in-interest (the "2003 Agreement") to settle a

dispute over the ownership of a piece of software (the "Software"). *Id.* at 3-5. According to

Cardroom, the 2003 Agreement provided, among other things, that (1) the two parties would

become joint owners of the copyright in the Software, and (2) neither party could transfer its

interests under the agreement unless the recipient agreed in writing to abide by the terms of the

2003 Agreement (the "Transfer Restriction"). *See id.*; (Cardroom Opp'n to Gov't Consolidated

Mot. to Strike ("Cardroom Opp'n"), 3-5 [Doc. No. 319]).

Cardroom's new theory alleged that the Government violated the Transfer Restriction

when it transferred Full Tilt's forfeited assets—including its joint interest in the Software—to

PokerStars as part of the comprehensive settlement agreement without requiring PokerStars to

agree in writing to abide by the terms of the 2003 Agreement. (Cardroom Opp'n, 4). According

to Cardroom, the completion of this transfer voided Full Tilt's interest in the Software, and

Cardroom became the sole owner of the copyright in the Software. However, because the

Software had already been transferred to PokerStars, Cardroom argued that it was instead entitled to the entire $30 million substitute res. *Id.* 5-6.

The Government subsequently responded to Cardroom's new theory and request to amend its claim, arguing that Cardroom's request should be denied on the grounds of undue delay, bad faith, and futility. (Reply in Supp. Mot. to Strike, 11-13 [Doc. No. 259]).

## II.    LEGAL STANDARD

Civil forfeiture actions are governed by the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions (the "Supplemental Rules"). *See* Fed. R. Civ. P. Supp. R. A(1)(B); Fed. R. Civ. P. Supp. R. G(1); *United States v. Cambio Exacto, S.A.*, 166 F.3d 522, 526, n.3 (2d Cir. 1999). Pursuant to the Supplemental Rules, the Government may move to strike a claim at any time before trial if the claimant lacks standing. Fed. R. Civ. P. Supp. R. G(8)(c)(i)(B). This challenge may be presented as a motion for judgment on the pleadings, Fed. R. Civ. P. Supp. R. G(8)(c)(ii)(B); the standard for granting such motion is the same as for a motion under Federal Rule of Civil Procedure 12(b)(6). *See* Fed. R. Civ. 12(c); *Johnson v. Rowley*, 569 F.3d 40, 43 (2d Cir. 2009) (quoting *Morris v. Schroder Capital Mgmt. Int'l*, 445 F.3d 525, 529 (2d Cir. 2006)). Thus, to survive the Government's motion to strike, Cardroom must plead facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007).

## III.    DISCUSSION

### A.  *Cardroom Lacks Standing Based on its Original Claim*

A claimant seeking to challenge a civil forfeiture must have standing under both the statute(s) governing his or her claim and under Article III of the United States Constitution.[4]

---

[4] A claimant must follow the procedural steps outlined in Supplemental Rule G to establish statutory standing. *United States v. All Right, Title & Interest in Prop., Appurtenances & Improvements Known as 479*

*Cambio Exacto*, 166 F.3d at 526 (citing *United States v. $515,060.42 in U.S. Currency*, 152 F.3d 491, 497 (6th Cir. 1998)). The burden is on the claimant to show that she or he has standing. *United States v. $182,980.00 in U.S. Currency*, No. 97-CV-8166, 1998 WL 307059, at *2 (S.D.N.Y. June 11, 1998) (Cote, J.) (citing *Mercado v. U.S. Customs Serv.*, 873 F.2d 641, 644 (2d Cir. 1989)).

In order to establish constitutional standing, a claimant must show that she or he has an adequate interest in the forfeitable property. In general, this standard is met when a claimant demonstrates an ownership or possessory interest in the seized property, because such interests are almost always injured when property is seized. *See Cambio Exacto*, 166 F.3d at 527.[5] "[A]n interest 'in' property must be an interest in a *particular, specific asset*, as opposed to a general interest in an entire forfeited estate or account." *United States v. Ribadeneira*, 105 F.3d 833, 836 (2d Cir. 1997) (emphasis added); *see also* Fed. R. Civ. P. Supp. R. G(5)(a)(i) ("The claim must identify the specific property claimed."). "Without such an interest [in a specific asset], the claimant lacks standing to challenge the forfeiture." *United States v. All Assets Held at Bank Julius Baer & Co.*, 772 F. Supp. 2d 191, 198 (D.D.C. 2011).

An *in personam* judgment does not create an interest in "specific property," and therefore does not establish a claimant's standing in an *in rem* forfeiture action. *Id.* at 199. Rather, the holder of an *in personam* judgment is a general unsecured creditor, and federal courts have repeatedly held that "an unsecured creditor has no standing to contest the forfeiture of seized property." *United States v. One 1965 Cessna 320C Twin Engine Airplane*, 715 F. Supp. 808, 812

---

*Tamarind Drive, Hallendale, Fla.*, No. 98-CV-2279, 2011 WL 1045095, at *3 (S.D.N.Y. Mar. 11, 2011) (Cote, J.) (citing *Cambio Exacto*, 166 F.3d at 526). "'Strict compliance' with the Supplemental Rules is 'typically required' for standing." *Id.* (quoting *Cambio Exacto*, 166 F.3d at 529).
    [5] However, neither ownership nor possession is necessary for standing, so long as a claimant can demonstrate an "injury direct enough and sufficient enough to sustain standing." *Cambio Exacto*, 166 F.3d at 527.

(E.D. Ky. 1989); *see also United States v. 105,800 Shares of Common Stock of FirstRock Bancorp, Inc.*, 830 F. Supp. 1101, 1117 (N.D. Ill. 1993); *United States v. 127 Shares of Stock in Paradigm Mfg., Inc.*, 758 F. Supp. 581, 583 (E.D. Cal. 1990) (collecting cases).

      Cardroom's original claim was based on its expectation of securing a judgment against PokerStars and Full Tilt in the California Action. *See* (Renewed Mot. to Strike, 5-6). Such an interest is plainly insufficient to establish Cardroom's standing as a claimant here. At the time that it filed its claim, Cardroom was not even the holder of an *in personam* judgment against PokerStars and Full Tilt. Its claim was based solely on its expectation of obtaining such a judgment in the future, an outcome that is unlikely given that its suit has been dismissed.[6] *See id.* 5-7 n.3. Moreover, even if Cardroom had prevailed in the California Action, the resulting *in personam* judgment would be insufficient to confer standing, because it would not create an interest in any specific asset. *See Bank Julius Baer*, 772 F. Supp. 2d at 199. Cardroom thus lacks standing to assert a claim to Defendant Property.[7]

### B. Cardroom's Motion to Amend Is Futile and Brought in Bad Faith

      Under Federal Rule of Civil Procedure 15(a)(2), leave to amend a pleading shall be "freely given . . . when justice so requires."[8] However, leave to amend may be denied in circumstances of undue delay, bad faith, or dilatory motives on the part of the movant; where there would be undue prejudice to the opposing party; or where amendment would be futile. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *United States v. Premises Known as 281 Syosset Woodbury Road, Woodbury, N.Y.*, 791 F. Supp. 61, 64-65 (E.D.N.Y. 1992) (applying this

---

[6] Cardroom has appealed the dismissal of its suit, and that appeal is currently pending. (Cardroom Opp'n, 6).

[7] Because the Court concludes that Cardroom lacks constitutional standing to bring its claim, the Court does not address whether or not Cardroom has statutory standing pursuant to Supplemental Rule G.

[8] A motion to amend a claim in a civil forfeiture action is governed by Federal Rule of Civil Procedure 15. Fed. R. Civ. P. Supp. R. G(1) cmt. (2006) ("Rule G [which governs forfeiture actions] . . . does not address pleading amendments. Rule 15 applies, in light of the circumstances of a forfeiture action.").

standard in the context of a civil forfeiture claim). The decision of whether to grant leave to amend is "within the sound discretion of the court." *John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp.*, 22 F.3d 458, 462 (2d Cir. 1994) (citing *Foman*, 371 U.S. at 182).

    1. <u>Futility</u>

Cardroom seeks leave to amend its claim based on a new theory of standing, namely that the transfer of the Software as part of the Government's comprehensive settlement with the Poker Companies violated the terms of the 2003 Agreement, and that Cardroom became the sole owner of the Software as a result of that violation. *See* (Cardroom Opp'n, 2-6).

However, Cardroom's request to amend its claim is futile for two reasons. First, the Court disagrees with Cardroom's reading of the Transfer Restriction in the 2003 Agreement. The relevant portion states:

> For a period commencing on the Effective Date and ending on the second anniversary of the Effective Date, neither [party to the contract] may assign, license or transfer any of its rights to the Software or the Intellectual Property Rights related thereto; provided however, that (i) either party may assigns [sic] its rights in connection with a sale of all or substantially all of the assets of such party, and (ii) either party may assign or license its rights to an Affiliate of such party, provided, further, that the transferee of such rights agrees in writing to comply with the obligations set forth in this Agreement.

(Magdo Decl., Ex. 6 [Doc. No. 318-6]). Cardroom argues that this clause (1) imposes an absolute ban on transfers for a period of two years from the Effective Date of the contract, and (2) imposes further conditions, that apply in perpetuity, (a) restricting transfers to the two enumerated circumstances, and (b) requiring the transferee(s) of any rights to agree in writing to comply with the terms of the 2003 Agreement. *See* (Sur-Reply in Opp'n to Renewed Mot. to Strike, 7-8 [Doc. No. 323]). But this clause is much more logically read to impose a set of conditions on transfers *during the first two years only*, with all transfer restrictions expiring at the

end of the two-year period. *See* (Renewed Mot. to Strike, 21).[9] Under this reading, the provision requiring a transferee's consent to the terms of the 2003 Agreement expired in 2005, and thus has no application to the Government's transfer of the Software to PokerStars.

Second, even if Cardroom were correct that the Transfer Restriction applies in perpetuity, Cardroom's remedy would be limited to a suit for breach of contract. Cardroom argues that "the legal remedy for a transfer of co-owned copyrights is either a suit for damages or a rescission of the agreement granting the co-ownership interest." (Cardroom Opp'n, 5) (citing 3 Melville B. Nimmer and David Nimmer, *Nimmer on Copyright* § 10.15[A] (2013) ("Nimmer")). However, rescission is available as a remedy only for a *material* breach.[10] Nimmer § 10.15[A][3]; *see also Schoenberg v. Shapolsky Publishers, Inc.*, 971 F.2d 926, 932 (2d Cir. 1992). A material breach is one "so substantial and fundamental as to strongly tend to defeat the object of the parties in making the contract." *Graham v. James*, 144 F.3d 229, 237-38 (2d Cir. 1998) (quoting *Septembertide Publ'g, B.V. v. Stein and Day, Inc.*, 884 F.2d 675, 678 (2d Cir. 1989)); *see also Canfield v. Reynolds*, 631 F.2d 169, 178 (2d Cir. 1980) (a material breach is one that goes "to the root of the contract"); *Nolan v. Williamson Music. Inc.*, 300 F. Supp. 1311, 1317 (S.D.N.Y. 1969) (Edelstein, J.) (a material breach is "equivalent [to] a total failure in the performance of the

---

[9] The language and structure of the clause inform the Court's reading. The words "provided however" imply that the following conditions represent qualifications on the two-year restriction, rather than separate and independent restrictions. The use of a semi-colon, rather than a period, supports this reading because it indicates that the two clauses are connected to one another, rather than distinct and separate restrictions.

The words "provided further" imply that the following condition represents a *further* qualification on the two conditions that appear immediately before, or possibly a qualification on the second condition only. This "provided further" clause is separated from the previous two conditions by a comma, which implies an even stronger connection between the two than does a semi-colon. This punctuation lends additional support to the interpretation that the "provided further" clause qualifies the immediately preceding conditions, rather than representing a separate and distinct obligation under the contract.

By contrast, Cardroom's proposed reading ignores and inverts the relationships created by the punctuation and language of the clause, without explanation.

[10] Rescission can also be appropriate in two situation that Cardroom does not allege here: (1) where the breach is willful, *Graham v. James*, 144 F.3d 229, 237-38 (2d Cir. 1998), and (2) where there is a breach of a condition precedent, Nimmer § 10.15[A][1]-[2].

contract") *aff'd sub nom. Nolan v. Sam Fox Publ'g Co.*, 499 F.2d 1394 (2d Cir. 1974). Because rescission is an extraordinary remedy, the party asserting a right to rescission bears the burden of proving that it is entitled to such drastic relief. *See Graham*, 144 F.3d at 238.

Cardroom has not carried this burden. The Transfer Restriction does not go to the "root" of the 2003 Agreement, because it does not represent the "essential objective" of the agreement. *Cf. Nolan v. Sam Fox*, 499 F.2d at 1397 (the payment of royalties is an "essential objective" of a copyright licensing agreement). Rather, the purpose of the 2003 agreement was to resolve a dispute over the ownership of a piece of software in a way that would enable each party to exploit the Software to its own benefit. *See* (Opp'n to Mot. to Strike, 4-5 [Doc. No. 253]). Cardroom has failed to show why the alleged breach of the Transfer Restriction amounts to a "total failure in performance" under the contract or would "substantially defeat the purpose of the parties in entering into the contract." *See Graham*, 144 F.3d at 237; *Nolan v. Williamson Music, Inc.*, 300 F. Supp. at 1317. Accordingly, Cardroom is not entitled to rescission of the contract as a remedy.

Instead, Cardroom has shown—at most—a non-material breach of the 2003 Agreement, the remedy for which is a breach of contract suit. *Graham*, 144. F.3d at 237; *see also Spinelli v. Nat'l Football League*, 96 F. Supp. 3d 81, 125-26 (S.D.N.Y. 2015) (Sweet, J.) (collecting cases). And even were Cardroom to prevail in such a suit, the resulting judgment would not confer standing for Cardroom's claim to the Defendant Property. *See infra*, Part III.A.

In sum, because Cardroom would still lack standing to assert its claim under its new theory, amendment is futile.

2.  Bad Faith

Cardroom's request to amend is also denied on the grounds of undue delay and bad faith. The Government argues that Cardroom's failure to assert its interests under the 2003 Agreement in its original claim "smacks of undue delay, bad faith, and dilatory motive." (Reply in Supp. Mot. to Strike, 2 [Doc. No. 259]).

Courts have previously held that denial of leave to amend is proper when a party attempts to assert new facts or theories that it could have raised sooner. *See Lee v. Regal Cruises, Ltd.* 916 F. Supp. 300, 303-04 (S.D.N.Y. 1997) (Kaplan, J.), *aff'd* 116 F.3d 465 (2d Cir. 1997). This is particularly so "where it appears that a plaintiff's purpose in asserting a new claim is his or her anticipation of an adverse ruling on the original claims." *Bymoen v. Herzog, Heine, Geduld, Inc.*, No. 88-CV-1796, 1991 WL 95387, at *1 (S.D.N.Y. May 28, 1991) (Wood, J.); *see also Lee*, 916 F. Supp. at 304 (denying leave to amend when "circumstances suggest that the request for leave to amend reflects an evolutionary development in the plaintiffs' case").

Cardroom argues that it could not have asserted its claim any earlier for two reasons: (1) at the time it signed the Stipulation, Cardroom was unaware that the jointly-owned Software was one of the assets involved in the proposed transfer to PokerStars, and (2) Cardroom's interest arose only after the Software was transferred to PokerStars, allegedly in violation of the 2003 Agreement. *See* (Cardroom Opp'n, 7). However, Cardroom was aware of the basic facts underlying this new claim at the time it filed its original claim in 2011. Even if it could not have asserted this new claim in 2011, it could at least have apprised the Government and the Court of the basic nature of its interest in the Software and of the existence of the 2003 Agreement. In addition, Cardroom's complete failure to address its original, defective claim in any of its subsequent briefing lends support to the conclusion that this new claim has been asserted in

11

anticipation of an adverse ruling on its original claim. *See Bymoen*, 1991 WL 95387, at *1.

Accordingly, the Court finds that the request to amend is brought after undue delay, and in bad

faith.

## IV.    CONCLUSION

For the foregoing reasons, the Government's motion to strike Cardroom's claim is

GRANTED, and Cardroom's request for leave to amend its claim is DENIED. This Opinion and

Order resolves Docket entry 203.


SO ORDERED.


DATED:        New York, New York
              August 19, 2016

                                  _____/s/_____
                                         KIMBA M. WOOD
                                     United States District Judge