USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4/28/17

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

UNITED STATES OF AMERICA,

        Plaintiff,

v.

POKERSTARS, et al.,

        Defendants,

ALL THE RIGHTS, TITLE AND INTEREST IN
THE ASSETS OF POKERSTARS, et al.,

        Defendants-in-rem.
-------------------------------------------------------------X

11-CV-2564 (KMW)
**OPINION AND ORDER**

KIMBA M. WOOD, District Judge:

In April 2011, the Government commenced this *in rem* forfeiture action against the three leading internet poker companies doing business in the United States—PokerStars, Full Tilt Poker, and Absolute Poker/Ultimate Bet—and certain of their officers. The Complaint sought forfeiture of all right, title, and interest in the assets of these companies, pursuant to 18 U.S.C. §§ 1955(d) and 981(a)(1)(A) and (C).

In September 2011, Cardroom International, LLC ("Cardroom"), a Florida corporation that offers online poker gaming, filed a claim asserting an interest in up to $30 million of the assets seized in the forfeiture action. (Cardroom Claim, [Doc. No. 62]). The Government subsequently moved to strike Cardroom's claim, (Mot. to Strike, [Doc. No. 205]), and in response, Cardroom sought leave to amend, (Opp'n to Mot. to Strike, [Doc. No. 253]), which the Court denied, finding undue delay and bad faith. On August 19, 2016, this Court granted the Government's motion to

1

strike Cardroom's claim. (August 19th Opinion & Order, [Doc. No. 334]). Judgment was entered on August 25, 2016. [Doc. No. 336]. Cardroom now files both a motion for a "new trial" and a motion to alter the judgment. [Doc. Nos. 339, 340]. For the reasons discussed below, the Court DENIES Cardroom's motion for a "new trial," and DENIES its motion to alter the judgment.

## I. BACKGROUND

### A. *The Origins of the Civil Forfeiture Action*

The Government forfeiture action at issue stems from a criminal prosecution of the three leading online poker companies doing business in the United States: PokerStars, Full Tilt Poker ("Full Tilt") and Absolute Poker/Ultimate Bet (collectively, the "Poker Companies"). In March of 2011, the Government filed a criminal indictment charging certain officers of the Poker Companies with violations of the Unlawful Internet Gambling Enforcement Act, ("UIGEA"), 31 U.S.C. § 5363, and other laws.[1] In conjunction with the criminal prosecution, the Government also filed an *in rem* forfeiture action and a civil money laundering complaint, seeking forfeiture of all right, title, and interest in the assets of the Poker Companies (collectively, the "Defendant Property"). *Id.* at 4.[2]

### B. *Cardroom's Claim to the Defendant Property*

In September of 2011, Cardroom filed a claim asserting an interest in an unspecified $30 million of Defendant Property. (Cardroom Claim at 1 [Doc. No. 62]). Cardroom's claim was based on its expectation of an "inevitable judgment" in its favor in a case filed on the same day in

---

[1] The indictment charged the individuals with violating the UIGEA; conspiring to violate the UIGEA, in violation of 18 U.S.C. §§ 1952, 1955; conspiring to commit wire and bank fraud, in violation of 18 U.S.C. § 1349; and conspiring to launder money, in violation of 18 U.S.C. § 1956(h).

[2] As alleged in the Complaint, the Defendant Property is subject to forfeiture (1) pursuant to 18 U.S.C. § 1955(d), as property used in violation of the provisions of § 1955; (2) pursuant to 18 U.S.C. § 981(a)(1)(A), as property involved in transactions and attempted transactions in violation of §§ 1956 and 1957; and (3) pursuant to 18 U.S.C. § 981(a)(1)(C), as property constituting or derived from proceeds traceable to (a) violations of § 1955, and (b) a conspiracy to commit wire fraud and bank fraud.

2

California state court against PokerStars and Full Tilt (the "California Action").[3] Cardroom alleged damages of at least $30 million in the California Action, and sought to have those damages satisfied out of the proceeds of the Government's *in rem* forfeiture action. *Id.*

However, Cardroom later conceded that its claim to the Defendant property was "contingent" and was "not at this time enforceable." (Cardroom Answer ¶ 3, [Doc. No. 79]). The Government subsequently moved to strike Cardroom's claim on the basis that it was premised on a hypothetical future judgment, rather than an interest in any specific res that was part of the Defendant Property. (Mot. To Strike, 1-2 [Doc. No. 203]). In August 2012, Cardroom responded to the Government's motion to strike. (Opp'n to Mot. to Strike, [Doc. No. 253]). In its response, Cardroom made no effort to address the arguments raised in the Government's moving papers, or to defend the merit of its original claim premised on the California Action. *See id.* Instead, Cardroom advanced an entirely new theory as to why it was entitled to $30 million of Defendant Property, and sought leave to amend its claim. *See id.* It argued that the Government's violation of a 2003 contractual transfer restriction (the "Transfer Restriction") between Cardroom's predecessor-in-interest and Full Tilt's predecessor-in-interest rendered Cardroom a valid claimant to the $30 million. *Id.*

### C. Opinion and Order Granting Motion to Strike

On August 19, 2016, this Court granted the Government's motion to strike. It held that Cardroom lacked standing to claim the funds, both under the applicable statutes and under Article III of the United States Constitution. This Court held that Cardroom's original claim, based on its expectation of securing a judgment against Full Tilt and PokerStars in the California Action, was

---

[3] In the California Action, Cardroom alleged that PokerStars and Full Tilt Poker had violated the Racketeer-Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1964 *et seq.*, through "illegal and anti-competitive" actions that prevented Cardroom and other software companies from entering the online poker market. (Renewed Mot. To Strike, 6). The California Action has since been dismissed with prejudice. *Id.* at 7.

3

"plainly insufficient to establish Cardroom's standing as a Plaintiff." (O & O at 7). Furthermore, the Court held that, in the unlikely event that Cardroom did obtain a judgment in that Action, such a judgment did not establish an interest in a particular, specific asset that was required in order to assert a valid claim to Defendant property. *Id.* Even in the event of a judgment, Cardroom would be, at best, a general unsecured creditor with no standing in the instant *in rem* forfeiture action. *Id.*

The Court then addressed Cardroom's new contractual claim, for which it sought leave to amend. Cardroom asserted a right to Defendant Property based on the Government's purported violation of a 2003 Transfer Restriction agreement between Cardroom's predecessor-in-interest and Full Tilt's predecessor-in-interest, which prohibited the parties from transferring their interest in certain copyrighted software. *Id.* at 4. Cardroom claimed that the Government violated the Transfer Restriction when it transferred Full Tilt's forfeited assets—including its joint interest in the software—to PokerStars as part of a comprehensive settlement agreement, without requiring PokerStars to agree in writing to abide by the written terms of the Transfer Restriction. *Id.* To find such a violation, the Court would be required to read the Transfer Restriction to apply in perpetuity, as Cardroom argued it did. *Id.* at 8. However, the Court held that the Transfer Restriction was "much more logically read" to have expired years earlier, and to have no application to the Government's transfer of the $30 million Cardroom claimed. *Id.* at 8-9. The Court also held that Cardroom would have no claim to the Defendant property even if the Court did employ Cardroom's interpretation of the Transfer Agreement; Cardroom would, at most, "be limited to a suit for breach of contract." *Id.* at 9.

The Court denied Cardroom's request for leave to amend on the additional grounds of undue delay and bad faith. The Court found that Cardroom had no plausible excuse for its failure to address the Government's alleged breach of Transfer Agreement in its first filing. *Id.*

### D. Motion for a new trial

Cardroom now moves for a "new trial" under Federal Rule of Civil Procedure 59(b). Cardroom also conditionally moves to alter judgment under Federal Rule of Civil Procedure 59(e) "if this Court denies [the] motion for a new trial." Cardroom claims that amendment of this Court's previously entered judgment is necessary in order for Cardroom to appeal the August 19th Opinion and Order.

## II. LEGAL STANDARD

### A. Time Period for Filing a Rule 59 Motion

A motion for a new trial is governed by Rule 59 of the Federal Rules of Civil Procedure, which provides that a court may grant such a motion after both a jury trial and a bench trial. Fed. R. Civ. P. 59(a). Cardroom moves for a "new trial" even though there was never a trial in this matter in the first place. As the Government notes in its Memorandum of Law in Opposition to Cardroom's motion, "although styled as a motion for a new trial, Cardroom's filing is more accurately described as a motion for reconsideration. ..." (Mem. in. Opp'n at 2 [Doc. No. 344]). The Court agrees, and notes that Cardroom may have chosen to file a motion for a new trial because it was time-barred from filing a motion for reconsideration.

Parties are permitted file a motion for a new trial no more than 28 days after the entry of judgment. Fed. R. Civ. P. 59(b). Although Federal Rule of Civil Procedure 59 does not actually mention motions for reconsideration, the Local Rules of the Southern District of New York allow for such a motion. Under Local Rule 6.3, parties are permitted to file a motion for reconsideration no more than 14 days after the entry of judgment. The Court entered judgment relating to the assets at issue on August 25, 2016 [Doc. No. 336]. Cardroom thus had until September 9, 2016 to file a

motion for reconsideration, and until September 22, 2016 to file a motion for a new trial. It filed the instant motion on September 22, 2016.

### B. *Motion for New Trial Standard*

Judges in this District have, in some instances, permitted parties to file a motion for a new trial even though a trial never occurred. *See Ionian Shipping Co. v. Tyson Shipping Co.,* 49 F.R.D. 334, 336 (S.D.N.Y.1969) (Croake, J) ("the concept of a 'new trial' used in Rule 59 has been interpreted to encompass the rehearing of a motion."); *Foster v. Does*, 1991 WL 123959, at *1 (S.D.N.Y. July 1, 1991) (Stewart, J.) (quoting *Ionian Shipping*). *See also* 11 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 2804 at 35 ("The concept of a new trial under Rule 59 is broad enough to include a rehearing of any matter decided by the court without a jury.").

Although it may be inappropriate to permit what is tantamount to a motion for reconsideration to be filed beyond the deadline set in this Court's Local Rules, the Court will assume, only arguendo, that it can be done. The appropriate standard is thus that for assessing a motion for reconsideration, governed by Local Civil Rule 6.3.

### C. *Motion for Reconsideration Standard*

The standard applied in reviewing a motion for reconsideration is almost identical to that for a motion for a new trial, with the exception that, where there has been no trial, the Court does not consider the "verdict," the "jury instruction," or "damages." The court in both instances is guided by the same basic legal principles, and maintains the same chief goal of preventing a miscarriage of justice. *See Parrish v. Sollecito,* 253 F.Supp.2d 713, 715 (S.D.N.Y. 2003) ("Reconsideration may be granted to correct clear error [or to] prevent manifest injustice." (Marrero, J.) (citing *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.,* 956 F.2d 1245, 1255 (2d Cir.1992))).

As is the case with a motion for a new trial, "reconsideration of a previous order is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *In re Health Mgmt. Sys., Inc. Sec. Litig.*, 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000) (Berman, J.) (internal quotation marks omitted). And as is the case with a motion for a new trial, a movant under Local Civil Rule 6.3 must show clear error. Specifically, to prevail on a motion for reconsideration under Local Civil Rule 6.3, "the moving party must demonstrate controlling law or factual matters put before the court on the underlying motion that the movant believes the court overlooked and that might reasonably be expected to alter the court's decision." *Montanile v. Nat'l Broad. Co.*, 216 F. Supp. 2d 341, 342 (S.D.N.Y. 2002) (Marrero, J.). A motion for reconsideration should not be granted where the moving party seeks solely to relitigate an issue already decided. *See Range Road Music, Inc. v. Music Sales Corp.*, 90 F.Supp 2d 390, 391-92 (S.D.N.Y 2000) (holding that motions for reconsideration "must be narrowly construed and strictly applied in order to discourage litigants from making repetitive arguments on issues that have been thoroughly considered by the court."). Similarly, a motion for reconsideration may not be used to advance new facts, issues or arguments not previously presented to the Court. *Davidson v. Scully*, 172 F. Supp. 2d 458, 461 (S.D.N.Y 2001) (Leisure, J.).

### III. DISCUSSION

Cardroom asks this Court to revisit its August 19th Order for three reasons. First, it argues that this Court misinterpreted California contract law in holding that the Government's actions with respect to the 2003 Transfer Restriction did not entitle Cardroom to Defendant property. (Mot. for new Trial at 1). Cardroom next argues that new case law from the United States Supreme Court changes civil forfeiture law to its advantage. *Id.* at 2. Last, Cardroom argues that the Court's denial

7

of leave to amend due to undue delay and bad faith "is not supported by admissible evidence." *Id.* All three arguments are without merit.

Cardroom's first argument is squarely prohibited by the law governing motions for reconsideration. Cardroom contends that both its and this Court's interpretation of the Transfer Restriction in the 2003 Agreement are "grammatically and logically plausible," and that it should be permitted to submit parol evidence that would prove that the Agreement was meant to function in the way that Cardroom suggests. *Id.* at 5. This is precisely the argument that this court rejected in its August 19th Order. *Id.* at 6. The Court thoroughly considered California contract law when it found no ambiguity in interpreting the Transfer Restriction agreement. Although Cardroom attempts to direct the Court's attention to additional, purportedly relevant, provisions of the California Civil Code, consideration of those provisions does not change the Court's previous holding that Cardroom lacks both Constitutional and statutory standing to make a claim to Defendant Property. Cardroom has presented no "overlooked" information that would necessitate a reinterpretation of the Transfer Restriction.

Cardroom next argues that the Supreme Court's recent ruling in *Luis v. United States*, 136 S. Ct. 1083 (2016), bears on Cardroom's right to Defendant property. This claim is also baseless. *Luis* did not change the law with regard to third party claims in civil forfeiture actions. *Luis* considered whether the Government's pre-trial restraint of untainted assets violated a defendant's Sixth Amendment right when the asset seizure rendered her unable to obtain her counsel of choice. *Id.* Cardroom has not shown that *Luis* has any applicability to its claim. Whereas *Luis* involved the seizure of untainted assets, Defendant property was involved in, and/or constituted the proceeds of, criminal activity. The Court in *Luis* noted numerous times throughout its opinion that pretrial restraint of tainted assets remains constitutional. *Id.* at 1090. The "relevant difference," the Court

noted, "consists of the fact that the property here is untainted." *Id.* The Supreme Court also made no mention of the holding's applicability outside of the context of the Sixth Amendment. Once again, Cardroom plainly asks the Court to reconsider a decision with which it disagrees without presenting any evidence that might reasonably affect this Court's determination. Furthermore, although Cardroom now argues that *Luis* should factor into the Court's calculus, *Luis* is not "new law," given that it was decided five months before the Court issued its August 19th order. Cardroom made no prior attempt to notify the Court of the decision. This renders Cardroom's attempt to call attention to *Luis* not only irrelevant, but also untimely.

Last, Cardroom argues that this Court erred in denying leave to amend. It challenges the Court's finding of undue delay and bad faith with regard to Cardroom's decision to abandon its original claim to Defendant Property and instead focus on the Government's alleged violation of the Transfer Restriction. Cardroom now asserts that it could not have apprised the Court of the existence of the 2003 Transfer Restriction because the original copy of the agreement, at the time, was in the custody of the United States government. This contention is also baseless. The fact that the Government, as part of its investigation, possessed what Cardroom appears to argue was the only copy of the agreement in no way corrects Cardroom's error in raising an entirely new claim in its reply to the Government's motion to strike. Cardroom, at a minimum, knew of the existence of the agreement at the time of its briefing, and could have made its argument even in the unlikely event that it did not possess, and could not obtain, a copy of the document.

Cardroom's related assertion that it failed to address its original claim in its reply brief because "there were several cases percolating through the federal system that offered resolution of the issues," (Mot. for new Trial at 2), similarly provides no support for its motion for a new trial (or for reconsideration). The fact that a potentially relevant issue of law might have remained

9

does not excuse Cardroom's failure to make mention of that issue, or of any conflicting interpretations among various courts. Cardroom had an obligation to bring all facts and law it deemed relevant to the attention of the Court in its opposition to the Government's motion to strike, and it failed to do so.

## IV. **CONCLUSION**

For the reasons stated above, Defendant's motion for a new trial is DENIED. The Court denies Cardroom's concomitant motion to amend judgment, as no amendment is necessary in order for Cardroom to appeal. The Clerk of the Court is directed to enter final judgment and close this case. All pending motions are moot.

SO ORDERED.

Dated: New York, New York
April 27, 2017

*Kimba M. Wood*
Kimba M. Wood
United States District Judge

10